JUDGE NATHAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## 19 CV 7346

------------------------------------------------------------------X        Index No.

HELEEN MEES,

                              Plaintiff,                    :        **VERIFIED COMPLAINT**

                                                            :        Jury Trial Demanded
        v.                                                  :        On all Issues
                                                            :
                                                            :
CITY OF NEW YORK                                            :
MANHATTAN DISTRICT ATTORNEY'S OFFICE                        :
CYRUS VANCE JR.                                             :
NITIN SAVUR                                                 :
JEANINE LAUNAY                                              :
SAMANTHA SCHOTT,                                            :
                              Defendants.                   :
------------------------------------------------------------------X

HELEEN MEES, being duly sworn, deposes and says:

### PURPOSE OF ACTION

1.      I am the plaintiff *pro se* in this action.  I commence this action for the purpose of seeking appropriate remedies and redress for violations of rights secured by the Fourteenth Amendment to the Constitution against the City of New York, Cyrus Vance Jr., Nitin Savur, Jeanine Launay, and Samantha Schott. Upon knowledge and otherwise upon information and belief, I allege as follows:

### JURISDICTION AND VENUE

2.      I have exhausted all remedies in New York State Court. *See Poventud v. City of N.Y.*, 750 F.3d 121 (2d Cir. 2014).

3.      This Court has original subject matter jurisdiction of this action as a Federal Question pursuant to 28 U.S.C. § 1331.

1

4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1983. The defendants violated my right to due process as secured under the Fourteenth Amendment to the Constitution:

(a)      the defendants willfully suppressed material exculpatory evidence that goes to my guilt or innocence or punishment;

(b)      the defendants thwarted me from moving the Manhattan Criminal Court to undo the Adjournment in Contemplation of Dismissal (ACD before it expired by running out the clock on me and telling me that the ACD could still be undone after it had expired and my case could be restored to the Court's calendar.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) as defendants' office and place of business are located in the Southern District of New York and most acts and events complained of occurred in this District.

## THE PARTIES

6.      Plaintiff HELEEN MEES is an economics professor, most recently at New York University's Wagner Graduate School of Public Service, a columnist, and the author of four books. I am a citizen of the Netherlands and a resident of New York at 30 Main Street, Apt. 11H, Brooklyn, NY 11201.

7.      Defendant CITY OF NEW YORK is located at City Hall, New York, NY 10007.

8.      Defendant MANHATTAN DISTRICT ATTORNEY'S OFFICE is responsible for the prosecution of violations of New York state laws and located at One Hogan Place, New York, NY 10013.

9.      Defendant CYRUS VANCE JR. is the District Attorney in the Manhattan District Attorney's Office, located at One Hogan Place, New York, NY 10013, and a U.S. citizen.

10.     Defendant NITIN SAVUR is Executive Assistant District Attorney in the Manhattan District Attorney's Office, located at One Hogan Place, New York, NY 10013, and a U.S. citizen.

11.     Defendant JEANINE LAUNAY is Deputy Chief of the Domestic Violence Unit in the Manhattan District Attorney's Office, located at One Hogan Place, New York, NY 10013, and a U.S. citizen.

12.     Defendant SAMANTHA SCHOTT is Assistant District Attorney in the Manhattan District Attorney's Office, located at One Hogan Place, New York, NY 10013, and a U.S. citizen.

## NATURE AND FACTS OF THE ACTION

13.     This action arises from the prosecution of me on charges of harassing Willem H. Buiter, the chief economist of Citigroup, professor at Columbia University, and fellow of the Council of Foreign Relations.

14.     I was a New York University economics professor, political commentator, author, and public figure in my country of origin, the Netherlands, when I was arrested on July 1, 2013, in New York City on various charges which stem from a complaint filed by my lover of four years, Willem H. Buiter ("Buiter"). Buiter incited the police to arrest me by making a series of false statements to the police and the Manhattan District Attorney's office, including that I harassed him by sending nude photos of myself.

15.     As a result of Buiter's false allegations, I spent four days in jail at Rikers Island and the matter was highly publicized all over the world, including on the front page of the New York Daily News. Following my arrest, I lost my job as a professor at New York University, all columns in international magazines and newspapers, as well as all speaking engagements and consulting jobs. Due to the publicity surrounding this matter, I have been unable to obtain gainful employment

3

and is left with virtually no sources of income. Because of all that has transpired since her arrest and prosecution, I suffer from posttraumatic stress disorder and dysthymia (chronic depression).

16.     In view of the substantial falsehoods in the criminal complaint, the Manhattan District Attorney's Office offered in March 2014 to discontinue the criminal prosecution by way of an Adjournment in Contemplation of Dismissal (ACD) pursuant to Criminal Procedure Law § 170.55. Primarily for financial reasons, I consented to the ACD, which was entered by the Honorable Steven Statsinger on March 10, 2014. *See* Exh. A.

17.     Even though the Manhattan District Attorney's Office acknowledged that there was no ground for my prosecution, Buiter continued his libelous campaign against me, repeating his false accusations in an elaborate public posting on Facebook of March 10, 2014. In April 2014, I filed an application in the U.S. District Court for the Southern District of New York for discovery use in a foreign proceeding pursuant to 28 U.S.C. § 1782, which Chief Justice Loretta Preska denied on May 6, 2014.

18.     On June 26, 2014, I filed a complaint against Buiter in the New York Supreme Court, Kings County, on various grounds, including defamation, false arrest, and intentional infliction of emotional distress. Buiter responded on October 6, 2014, with a motion to dismiss to which he attached 1,251 nude photos of me, claiming that she had sent him those photos. I saw the images for the very first time on October 13, 2014, when my attorney forwarded her "Exhibit L", which was an email with 4 PDF-files attached thereto containing 1,251 nude photos. Buiter was, however, unable to produce any of the hundreds of emails to which the photos were purportedly attached. Contrary to what Buiter had represented to the police and prosecution, the 1,251 nude photos were surreptitiously and illegally taken by Buiter himself during his intimate Skype interactions via Skype webcam with me.

4

19.     On October 20, 2014, my counsels, Ira D. London and Olav Haazen, sent a letter to Assistant District Attorney Samantha Schott to alert her to the fact that the Manhattan District Attorney's office had suppressed material exculpatory evidence that goes to my innocence or guilt. Schott did not respond to the letter. On October 28,2014, London and Haazen sent a letter to Manhattan District Attorney Cyrus Vance, demanding an investigation into the 1,251 images and an immediate dismissal of all the charges in the interest of justice.

20.     On November 18, 2014, my counsels Olav Haazen and Brooke Alexander met with Executive Assistant District Attorney Nitin Savur, who is a member of District Attorney Cyrus Vance's Executive Team. On February 10, 2015, Nitin Savur informed us that the charges would not be dismissed in the interest of justice. However, Savur told my counsels that I could come back if I had more evidence and that the case could still be reopened once it was scaled. *See* Exh. B. Savur also refused to produce any of the unlawful surveillance images that Buiter alleged he had handed to the police and prosecution even though we informed Savur that the photos constituted material exculpatory evidence. Savur made us file a FOIL request instead by which the Manhattan District Attorney's office only complied 11 months later, on December 1, 2015. The criminal file contained about 1200 unlawful surveillance images of me.

21.     Meanwhile, Buiter refused to produce the 1,251 unlawful surveillance images in JPEG-format of his own volition in the ongoing civil litigation. Only after the Court of Appeals for the Second Circuit overturned on July 17, 2015, the decision of Chief Judge Preska, Buiter was ordered on remand to hand over the 1,251 photo files in JPEG-format. *See Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015). After Buiter produced the JPEG files on October 23, 2015, my Dutch counsel commissioned forensic experts SBV Forensics to examine all 1,251 photographs and all forensically imaged computers that I had had in my possession since 2008.

22.     Based on this forensic analysis, SBV Forensics concludes in its report of April
2016, that it is a near certainty that I did not take the photographs, either with a phone, a standalone
camera or a webcam, and that it is beyond a reasonable doubt that I did not send the photographs
from any of her devices. Specifically, SBV Forensics concludes with respect to the photo files:

a.   Because the photos were produced in both PDF (1,388) and JPEG format (1,251), it
     can be determined through a comparison of MD5 hash values and "data carving" that
     Buiter in fact had more unique naked photos of Mees in his possession than he
     represented (1,288 instead of 1,251). Among both the PDFs and the JPEGs there were
     also many duplicates (pp. 3-6).

b.   Based on Mees's position in the photos, it is impossible that she manually took the
     photos herself. Because variations between successive pictures are mostly minor,
     which indicates only minimal intervals between them, it is also highly unlikely that the
     photos were taken in auto mode with a timer (pp. 6, 19-20).

c.   The format of the photos (640 pixels by 480 pixels, for a total of some 300,000 pixels)
     is inconsistent with the use of a digital camera. Images taken with digital cameras are
     measured in millions of pixel ("megapixels") (pp. 7, 19).

d.   The pictures' VGA resolution, however, consistent with the use of either a webcam or
     a mobile phone camera (pp. 7-8,19).

e.   The low number of EXIF metadata captured on the JPEG files is inconsistent, however,
     with the photos having been taken with a mobile phone. It is also inconsistent with the
     use of a digital camera. Both would have registered additional metadata, such as
     various characteristics of the camera lens or the brand and type of the phone used (pp.
     8, 19).

f.   The EXIF metadata that was found, e.g. data indicating that no flash was used, excludes the possibility that the photos were stills derived from video footage (which does not register any information on the use of a flash) (pp. 8, 19).

g.   The depth and camera angles of the photos are also consistent with the use of a webcam (pp. 7, 19).

h.   The picture files are consistent with still images taken during a live video chat on a platform like Skype. If the screenshots were taken on an Apple computer, however, such as used by Mees, Apple's operating system (Mac as X) would have saved them as PNG files-not, as is the case here, as IPEGs (pp. 8-9, 19).

i.   Photo Booth, which is a standard Apple application does save photos in JPEG format but the photos' metadata is inconsistent with the use of Photo Booth because such use would have automatically registered the application's name as an IPTC field in each file (p. 9).

j.   The photos have a resolution of 96 dpi, which is also not consistent with the use of Apple computers or digital cameras, which automatically generate images with resolution of 72 dpi. The photos' 96 dpi resolution is, however, consistent with the use of a Windows computer (which Mees believes Buiter uses exclusively) (p. 10).

k.   There is no indication on any of Mees's Apple computers that any metadata or file characteristics were manually manipulated. Manual editing would require opening, editing and re-saving each of the 1,288 unique picture files individually and would therefore be extremely time- consuming. No Windows programs and no virtualization software were found on any ofMees's laptops (pp. 10, 19).

22.     With respect to Buiter's possession of the photos but not the emails by which they were supposedly transmitted, SYB Forensics concludes:

l.  It is virtually certain that the photos were never on Mees's laptops. If they were, it would have been possible to retrieve or restore the files forensically. It is nearly impossible and technically very complex to individually remove files in a manner that guarantees the user that the files are forever irretrievable (pp. 11-15, 19-20).

m.  Secure removal of email files in a way that makes retrieval impossible also requires highly specialized knowledge of the workings of the Mac OS X operating system. No emails of the kind Buiter claims existed were found, however, on Mees's computers (pp. 13-15,20).

n.  The "rule" that Buiter claims explains why the photos were saved, while the emails purportedly attaching them were deleted, would in principle have saved identical pictures only once, overwriting prior versions of the same attachment or make. The presence of duplicates of photos in Buiter's files is inconsistent with such workings of the rule (pp. 17-18).

o.  The rule is also inconsistent with the fact that a different picture ("moi.jpg"), which the parties agree Mees did send Buiter (more than once) and for which Buiter can produce the emails to which it was attached, was not saved in the same attachment folder, and that yet a third picture Mees sent ("plaatje.jpg") was also not saved there (p. 18).

p.  Taking into consideration that the file names contain only a sequential number as well as the fact that numbering did not resta11 at the first picture from a new session, it is a near certainty that Buiter changed the file names before handing them to the police and the Manhattan District Attorney's office.

23.     Accordingly, Buiter's excuse for his possession of photos of my private parts is not supported by forensics. SBV Forensics conleudes that this leaves no other reasonable explanation than that Buiter took the photos. The forensic investigation also corroborates my account that our intimate interactions via Skype were never meant to be recorded, that I was unaware of the recordings, and that I never consented to being recorded.

24.     The 1,251 unlawful surveillance images show me nude or partially dressed. There are hundreds of photos in the criminal file in which I am wearing a floral print dress that I bought on April 6, 2011. All the photos in which I am wearing said floral print dress were taken on or after April 6, 2011. Buiter not only actively participated in Skype webcam calls in which we would both undress on or after April 6, 2011, he also made extensive records of it for his own personal pleasure, yielding no less than 1,251 unlawful surveillance images. Since no one can be forced to undergo the viewing of sexual activity through Skype webcam, let alone make extensive records of it, the romantic relationship between Buiter and me lasted at least until April 6, 2011. The accusatory instrument of August 5, 2013, alleges that the acts of stalking, harassment, and menacing occurred from November 7, 2009 until July 1, 2013. The 1,251 nude photos show that I am innocent of harassing, stalking, and menacing Buiter at the very least until April 6, 2011. The extent of the stalking, harassment, and menacing, if it occurred at all, is an important factor to be weighed for punishment.

25.     The accusatory instrument of August 5, 2013, accuses me of sending Buiter 55 'sexually explicit' emails. This must be a reference to the nude photos that Buiter claims I sent him because I never sent Buiter 55 sexually explicit emails. The report by SBV Forensics shows that I did not make nor sent Buiter the 1,251 nude photos show and thus that I am innocent of the alleged sending of 55 'sexually explicit' emails. The 1,251 unlawful surveillance images are thus

material to my guilt or innocence or punishment.

26.     If Buiter had indeed felt annoyed, alarmed or fearful of me, my nudity, or any of my communications, it stands to reason that Buiter would have destroyed the 1,251 nude photos of me, which he should never have taken in the first place. But not only did Buiter not destroy the 1,251 nude photos, he did the opposite. Buiter saved the 1,251 nude photos on his handheld devices and stored them in his Verizon cloud service so that he could access them anywhere in the world. Buiter's actions do not comport with genuine feelings of annoyance, alarm, and fear, which are a *sine qua non* for the charges of stalking, harassment, and menacing. The 1,251 unlawful surveillance images are thus material to my guilt or innocence or to my punishment.

27.     As the 1,251 unlawful surveillance images constitute material exculpatory evidence, the District Attorney's office should have disclosed them during plea discussions. But ADAs Jeanine Launay and Samantha Schott never mentioned the 1,251 nude photos in the criminal file during plea discussions in February 2014 with my counsels, which is remarkable because Buiter handed the prosecution hard copies of the photos, making them difficult to overlook given their explicit content. Moreover, I specifically denied in the motion to dismiss of October 14, 2013, that I sent Buiter nude photos of myself. Also, in the same motion to dismiss we specifically requested that the People turn over *Brady* evidence.

28.     The Manhattan District Attorney's Office continued to suppress the material exculpatory evidence even after my counsel sent a letter to District Attorney Cyrus Vance on October 27, 2014, informing him that any nude photos in the criminal file were the product of unlawful surveillance and therefore exculpatory. Instead of handing us the photo files, the Manhattan District Attorney made us file a FOIL-request by which it only complied 11 months later. The defendants thus willfully suppressed evidence that is material to my guilt or innocence

or punishment. The prosecution's obligation to disclose *Brady* evidence does not end with the adjournment of a case in contemplation of dismissal. *See People v. Wilson*, NY Slip Op 02106 (4th Dept., 2018) (rejecting the People's contention that the defendant forfeited his right to raise the alleged *Brady* violation by pleading guilty).

29.     I would never have accepted the ACD, which is not an adjudication of innocence, as an outcome had I known of the trove of unlawful surveillance images in the criminal file. With other words, I would not have accepted the ACD if I had known that I was the victim of the felony sex crime of unlawful surveillance in the second degree pursuant to New York Penal Law § 250.45 (1,251 counts) and the perpetrator used the spoils of his crime to have me arrested.

30.     The suppression of material exculpatory evidence is a violation of my right to due process under the Fourteenth Amendment. *See Brady v. State of Maryland*, 373 U.S. 83 S. Ct. 1194; 10 L. Ed. 2d 215; 1963. The United States Supreme Court held that *Brady* disclosures must also be made at the pre-plea stage. *See United States v. Ruiz*, 536 U.S. 622 (2002)). While a *Brady*-violation does not require the willful suppression of material exculpatory evidence, the facts in the instant case show that the Manhattan District Attorney's Office willfully suppressed the 1,251 unlawful surveillance images, which makes the matter even more egregious. *See People v. Vilardi*, 555 N.E.2d 915, 918 (N.Y. 1990).

31.     On May 8, 2016, my counsel sent a letter to District Attorney Cyrus Vance, demanding for a dismissal of the charges against me in the interest of justice pursuant to Criminal Procedure Law § 210.40 based on the report by SBV Forensics, which is an adjudication of innocence. By letter of August 13, 2016, Executive Assistant District Attorney Audrey Moore declined that request. *See* Exh. C.

32.     On January 2018, my counsel moved the Manhattan Criminal Court to unseal my case, which motion was denied. I subsequently moved the Manhattan Criminal Court for CPL 440.10(h) and writ of error *coram nobis* relief to vacate the ACD. While Judge Statsinger of the Manhattan Criminal Court acknowledged that the defendants had willfully suppressed material exculpatory evidence that goes to my guilt or innocence or punishment, the motions were denied because the ACD is not a conviction under New York law even though it is a conviction under federal statutes. *See* Exh. D.

33.     In February 2019, I moved the Appellate Term for leave to appeal from the order of the Manhattan Criminal Court, which motion was denied. *See* Exh. E. In April 2019, I moved the New York Court of Appeals for a criminal leave application, which was denied because the order of the Appellate Term is not an appealable decision. *See* Exh. F.

34.     A malicious prosecution claim is not available in New York State for criminal cases that were discontinued by way of an ACD. *See Eke v. City of New York*, 116 AD3d 403, 404 (1st Dept., 2014) (holding that because an "adjournment in contemplation of dismissal, being as un-adjudicative of innocence as it was of guilt, by its very nature operate(s) to bar recovery (for malicious prosecution)." ) Therefore, New York State does not have a meaningful post-deprivation remedy for the violation of my rights under the Due Process Clause. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

35.     On November 8, 2017, Chief Justice Janet DiFiore issued a new rule requiring judges to order prosecutors to comb their files and disclose all evidence favorable to the defense at least 30 days before major criminal trials.[1] Prosecutors who ignore the court order may face

---

[1]     Press release: http://ww2.nycourts.gov/sites/default/files/document/files/2018-05/PR17_17.pdf

contempt charges. The suppression of material exculpatory evidence by the prosecution is endemic in New York. A report by the New York Bar Association concluded that it is the leading cause of wrongful convictions.[2] This suffices to establish that the suppression of material exculpatory evidence is also a custom or practice in New York State, at least it was in the for this case relevant time frame.

36.     Manhattan District Attorney Cyrus Vance tasked two members of his Executive Team (Nitin Savur and Audrey S. Moore) with the handling of my case, which suffices to establish that the suppression of material exculpatory evidence and thwarting defendants is a custom or practice in the Manhattan District Office.

37.     The defendants acted under color of state law as they were acting in their official capacity in the Manhattan District Attorney's Office and clothed with the authority of the state. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Defendant Cyrus Vance Jr. had actual knowledge of the violation of my right to due process and acquiesced in that violation. The deprivation of my right to due process was also willful and intentional.

38.     The ACD is a conviction and an adjudication of guilt under federal statutes. *See, e.g., Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298 (E.D.N.Y. 2012) (holding that Bank of America in New York correctly withdrew an offer of employment after an FBI-background check revealed that plaintiff had been charged with petit larceny even though the case had been discontinued by way of an ACD). The defendants obtained the ACD in violation of my contitutional rights.

---

[2]     Final Report of the New York State Bar Association's Task Force on Wrongful Convictions, April 4, 2009.

39.    The Court of Appeals for the Second Circuit held in 2014 en banc that a plaintiff alleging civil rights violations in connection with her conviction must have access to a federal remedy under 42 U.S.C. § 1983. *See Poventud v. City of N.Y.*.

## STATUTE OF LIMITATIONS

40.    42 U.S.C. § 1983 requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations. *See Owens v. Okure*, 488 US 235, 240 (1989). The statute of limitations for a 42 USC § 1983 action in New York State is three years.

41.    Federal law determines when the claim accrues, which occurs "when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001). As EADA Savur told my counsel Olav Haazen that we could come back if we had more evidence and the ACD could still be undone after it had expired, the statute of limitations starts to run on the day after I received the letter from EADA Moore of August 13, 2016, declining my request to undo the ACD and dismiss all charges against me in the interest of justice.

## AS AND FOR A FIRST CAUSE OF ACTION FOR
## DECLARATORY JUDGMENT
## 42 U.S.C. § 1983

42.    Plaintiff repeats and realleges the factual allegations contained in paragraphs numbered "1" through "42" as if fully set forth herein.

43.    Defendants, acting under color of State Law, deprived Plaintiff of her rights secured by the United States Constitution by engaging in a course of conduct rising to the level of a policy and practice, thereby violating Plaintiffs' civil rights under 42 U.S.C. § 1983.

44.    Plaintiff, therefore, seeks declaratory judgment that:

(a) Defendants obtained the Adjournment in Contemplation of Dismissal in *People v. Heleen Mees* (Index No. 2013NY050589) in violation of Plaintiff's right secured by the United States Constitution;

(b) The decision and order of Judge Statsinger of March 10, 2014, for an Adjournment in Contemplation of Dismissal in *People v. Heleen Mees* (Index No. 2013NY050589) pursuant to Criminal Procedure Law § 170.55 is vacated;

(c) *People v. Heleen Mees* (Index No. 2013NY050589) is either restored to the Manhattan Criminal Court's calendar or dismissed pursuant to Criminal Procedure Law § 170.40 in the interest of justice.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grants the following relief:

A. As for the First Cause of Action for declaratory judgment that:

(i) Defendants obtained the Adjournment in Contemplation of Dismissal in *People v. Heleen Mees* (Index No. 2013NY050589) in violation of Plaintiff's right secured by the United States Constitution;

(ii) The decision and order of Judge Statsinger of March 10, 2014, for an Adjournment in Contemplation of Dismissal pursuant to New York Criminal Procedure Law § 170.55 in *People v. Heleen Mees* (Index No. 2013NY050589) is vacated;

(iii) *People v. Heleen Mees* (Index No. 2013NY050589) is restored to the Manhattan Criminal Court's calendar, or, in the alternative,

(iv) *People v. Heleen Mees* (Index No. 2013NY050589) is dismissed in the interest of justice pursuant to New York Criminal Procedure Law § 210.40;

B.   Reasonable fees and costs incurred by Plaintiff in this action; and,

C.   That this Court issue any other relief it deems just and equitable.

**JURY DEMAND**

Defendant respectfully requests a jury trial as to all issues so triable.

Signature

HELEEN MEES
THE SWEENEY BUILDING
30 Main Street, Apt. 11H
Brooklyn, New York 11201
heleen@heleenmees.com
(917) 325-5877

*Plaintiff Pro Se*

Sworn to before me this 6th day of August, 2019

DAGMARIS G. MENDEZ
Notary Public, State of New York
No. 01ME6137754
Qualified in New York County
Commission Expires December 5, 20__

16

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

CERTIFICATE OF DISPOSITION
NUMBER:   99720

THE PEOPLE OF THE STATE OF NEW   YORK
                VS

MEES,HELEEN
Defendant

11/21/1968
Date of Birth

30 MAIN STREET
Address

12332946K
NYSID Number

BROOKLYN                     NY
City                    State   Zip

07/01/2013
Date of Arrest/Issue

Docket Number: 2013NY050589

Summons No:

120.50 240.30 120.45 120.45 240.26
Arraignment Charges

Case Disposition Information:

| Date | Court Action | Judge | Part |
|------|-------------|-------|------|
| 03/10/2014 | ADJOURNED - CPL SECTION 170.55 | STATSINGER,STEVEN M | D |
| 03/09/2015 | DISMISSED - CPL SECTION 170.55 | AMAKER,T | D |

    I HEREBY CERTIFY THAT THIS IS A TRUE EXCERPT OF THE RECORD ON FILE IN
THIS COURT.

FREEMANN,S
COURT OFFICIAL SIGNATURE AND SEAL

07/15/2015
DATE        FEE: 10.00

(CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT
          SEAL OVER THE SIGNATURE OF THE COURT OFFICIAL.)

SEALED

pursuant to Section 160.50 of the CPL

CRIMINAL COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: PART D
--------------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

                                                           **AFFIRMATION OF**
                                             **OLAV A. HAAZEN**

                -against-

                                            NO. 2013NY050589

                HELEEN MEES,
                           Defendant.
--------------------------------------------------------------------------x

      OLAV A. HAAZEN, an attorney duly admitted to practice law before the Courts of this

State, affirms as follows pursuant to CPLR 2106:

      1.      From January 2014 until July 2016, I represented Dr. Heleen Mees in the civil

litigation related to the above-cited matter. On November 26, 2014, I met with Assistant District

Attorney Nitin Savur to discuss the finding of 1,251 unlawful surveillance images. On February

10, 2015, I spoke to Savur by phone. During the phone call, Savur informed me that the District

Attorney's office was not prepared to dismiss the charges against my client in the interest of

justice. Savur encouraged me to come back if I had more evidence and assured me that even after

the ACD dismissal, it could still be undone and the restored case dismissed in the interest of

justice.

Dated: New York, New York,
       May 29, 2018

                                              Olav A. Haazen

**DISTRICT ATTORNEY**
**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
**New York, N. Y. 10013**
**(212) 335-9000**



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

August 12, 2016

Re: *The People of the State of New York v. Heleen Mees,* Docket # 2013NY050589

Dear Ms. Mees,

I'm writing this in response to your letter addressed to DA Vance dated July 7, 2016. In 2015, your case was dismissed and sealed.  By operation of law, we do not have access to the file; thus there is no mechanism to unseal a dismissed case only to dismiss it again.  Even if we did have access to the file, the ACD + counseling sessions was a very reasonable disposition of the case.

Sincerely,

Audrey S. Moore
New York County District Attorney's Office
Executive Assistant District Attorney
Chief of the Special Victims Bureau

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART JURY 5
---------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

       -against-

HELEEN MEES,

       Defendant.
---------------------------------------------------------------------X
STEVEN M. STATSINGER, J.

DECISION AND ORDER
DOCKET NO.: 2013NY050589

       Defendant's second petition for a writ of error coram nobis is denied. A prerequisite to the availability of this remedy is that a conviction has been entered against the defendant. People v. Dionisiou, 24 Misc.2d 338, 340 (Court of General Sessions, New York County 1960); People v. King, 2 Misc.2d 187, 188 (County Court, Sullivan County 1954).

       Here, a conviction was not entered against the defendant. A conviction "means the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument." CPL §1.20(13). An ACD is not a conviction or an admission of guilt. CPL §170.55(8). As such, coram nobis relief is unavailable in this case.

       Even assuming, arguendo, that the defendant is correct in her assertion that an ACD might be considered a conviction for federal immigration purposes, that is of no consequence to this motion. The State of New York State does not consider it a conviction. This constitutes the Decision and Order of the Court.

Dated: January 25, 2019
       New York, New York

                           Steven M. Statsinger
                           Judge of the Criminal Court

At an Appellate Term of the Supreme Court, First Department
Held at the Court House, Borough of Manhattan,
City of New York, on the ⁊th day of March 2019

Present: - Hon.  Martin Shulman, P.J.,

       "    Matthew Cooper,

       "    Carol Edmead,  Justices

---

People of the State of New York
      Respondent
             -against-
Heleen Mees
      Defendant-Appellant

N.Y. County Clerk's # 570109/19
Docket # 2013NY050589

**ORDER ON  MOTION**

---

The above named defendant-appellant having moved, by notice of motion returnable February 25, 2019, for an order for leave to appeal from the January 25, 2019 order (Statsinger, J.), and for other relief.

Now upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

**It is ordered** that the defendant-appellant's motion seeking for leave to appeal from the January 25, 2019 order is denied.

                        Enter,

                              Justice, Appellate Term
                              Supreme Court, First Department
                              **MARTIN SHULMAN, P.J.**

# State of New York
# Court of Appeals

COPY

BEFORE:  HON. EUGENE M. FAHEY, Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                                 Respondent,

           -against-

HELEEN MEES,

                                 Appellant.

**ORDER
DISMISSING
LEAVE**

Docket No. 2013NY050589

---

       Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law (CPL) § 460.20 from an order in the above-captioned case;*

       UPON the papers filed and due deliberation, it is

       ORDERED that the application is dismissed because the order sought to be appealed from is not appealable under CPL 450.90 (1).

Dated:  JUN 1 1 2019

                                       Associate Judge

*Description of Order: Order of the Appellate Term, First Department, dated March 7, 2019, denying defendant's motion for leave to appeal from an order of the Criminal Court of the City of New York, New York County, dated January 25, 2019.