UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELEEN MEES,

                    Plaintiff,

        -against-

CITY OF NEW YORK, MANHATTAN
DISTRICT ATTORNEY'S OFFICE,
CYRUS VANCE, JR., NITIN SAVUR,
JEANINE LAUNAY, SAMANTHA
SCHOTT,

                    Defendants.

19 Civ. 7346 (AJN)(KNF)

## MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION TO DISMISS

CYRUS R. VANCE, JR.
District Attorney of New York County
One Hogan Place
New York, New York 10013
(212) 335-9000
*Counsel for the DA defendants*

Elizabeth N. Krasnow
Assistant District Attorney

JAMES E. JOHNSON
Corporation Counsel of the City of New
York
100 Church Street
New York, New York 10007
(212) 356-1000
*Attorney for the defendant City of New York*

Genevieve Nelson
Assistant Corporation Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ....................................................................................................... 1

STATEMENT OF THE CASE ..................................................................................... 2

STANDARD OF REVIEW ........................................................................................... 9

ARGUMENT ............................................................................................................. 10

   I.   Mees lacks standing to seek a declaration ........................................................ 11

   II.   One component of the declaration that Mees seeks is barred by immunity ............... 12

   III.   The remaining two components of the declaration that Mees seeks are not cognizable under §1983 and are barred by the *Rooker-Feldman* doctrine .................................... 14

   IV.   Any §1983 claim against the DA defendants based on an alleged *Brady* violation and any *Monell* claim against the City based on the same are untimely ......................................... 17

   V.   Mees has not plausibly alleged a *Brady* violation ............................................... 20

   VI.   Mees has not plausibly alleged a §1983 *Monell* claim ........................................ 23

      1.   Mees fails to allege an underlying constitutional violation ....................................... 23

      2.   Mees cannot recover under §1983 based on *respondeat superior* ................................ 24

      3.   Mees fails to plead any municipal policy, practice, or custom sufficient to establish a §1983 *Monell* claim ....................................................................................... 25

CONCLUSION ......................................................................................................... 30

## TABLE OF AUTHORITIES

*Abreu v. City of New York*, 657 F. Supp. 2d 357 (E.D.N.Y. 2009).........................................31, 33

*Adames v. Cty. of Suffolk Court*, 2019 U.S. Dist. LEXIS 81051 (E.D.N.Y. May 14, 2019) ...............................................................................................................................14

*Allen v. Wright*, 468 U.S. 737 (1984)..........................................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................13

*Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007)...................................................................24

*Bleivas v. City of New York*, 2019 U.S. Dist. LEXIS 169476 (S.D.N.Y. Sept. 30, 2019) .........................................................................................................................................24

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................................Passim

*Butz v. Economou*, 438 U.S. 478 (1978).......................................................................................16

*Chiste v. Hotels.com, L.P.*, 756 F. Supp. 2d 382 (S.D.N.Y. 2010)...............................................14

*City of Okla. City v. Tuttle*, 471 U.S. 808 (1985)........................................................................32

*Colon v. Vance*, 2019 U.S. Dist. LEXIS 111476 (S.D.N.Y. July 3, 2019) .................................18

*Connick v. Thompson*, 563 U.S. 51 (2011)...................................................................................33

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ................................................................15

*DiFolco v. MSNBC Cable L.L.C.*, 662 F.3d 104 (2d Cir. 2010)...................................................13

*Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994)......................................................................................16

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ............................................................32

*Employees' Ret. Sys. v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344 (S.D.N.Y. 2011) ..........................................................................................................................................27

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)................................20

*Fappiano v. City of New York*, 640 Fed. Appx. 115 (2d Cir. 2016) .................................24

*Genovese v. Town of Southampton*, 921 F. Supp. 2d 8 (E.D.N.Y. 2013)..........................29

*Golden v. Zwickler*, 394 U.S. 103 (1969) ....................................................................................15

*Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009).................................................................20

*Green v. Monour*, 747 U.S. 64 (1985) ......................................................................... 18, 20

*Hafer v. Melo*, 502 U.S. 21 (1991) .................................................................................. 30

*Hayes v. Perotta*, 751 F. Supp. 2d 597 (S.D.N.Y. 2010) ................................................ 32

*Heck v. Humphrey*, 512 U.S. 477 (1994) ........................................................................ 22

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995) ..................................................... 17

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) .................... 19-20

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) .............................................................. 13

*Ifill v. New York Cty. D.A.*, 2014 U.S. Dist. LEXIS 197430 (S.D.N.Y. July 8, 2014) .......................................................................................................................... 18

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ............................................... 33

*Johnson v. Carrasquilla*, 2018 U.S. Dist. LEXIS 176578 (D. Conn. Oct. 15, 2018) ..... 17

*Johnson v. City of New York*, 551 F. App'x 14 (2d Cir. 2014) ....................................... 27

*Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) ........................................ 13

*Kroemer v. Tantillo*, 2017 U.S. Dist. LEXIS 218622 (W.D.N.Y. Jun. 14, 2017) ............ 18

*Ky. v. Graham*, 473 U.S. 159 (1985) ............................................................................... 30

*LeDuc v. Tilley*, 2005 U.S. Dist. LEXIS 12416 (D. Conn. Jun. 21, 2005) ..................... 17

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001) ............................................................. 25

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 15

*MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203 (E.D.N.Y. 2009) .............. 17

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) .......................................... 15

*McCray v. City of New York*, 2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) .......................................................................................................................... 30

*Mees v. Buiter*, 793 F.3d 921 (2d Cir. 2015) ............................................................. 8, 10

*Minsky v. Kelley*, 240 Fed. Appx. 920 (2d Cir. 2007) ................................................... 15

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .............................. Passim

*Okure v. Owens*, 488 U.S. 235 (1989) ................................................................21

*Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235 (D. Conn. 2016) ....................20

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ........................................30

*People v. Doshi*, 93 N.Y.2d 499 (1999) ..........................................................26

*People v. McClain*, 53 A.D.3d 556 (2d Dept. 2008) ..........................................25

*People v. Mees*, 2019 N.Y. App. Div. LEXIS 5837 (App. Term. Mar. 7, 2019) ..........13

*People v. Sebak*, 270 A.D.2d 166 (1st Dept. 2000) ..........................................25

*People v. Singh*, 5 A.D.3d 403 (2d Dept. 2004) ...............................................26

*Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ..................................17

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ............................24

*Raines v. Byrd*, 521 U.S. 811 (1997) ...............................................................14

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) .......................................31-32

*Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009) ......................................13

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008) ....................................28

*Ross v. City of New York*, 2019 U.S. Dist. LEXIS 169762 (E.D.N.Y. Sept. 30, 2019) ...........................................................................................................23

*Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394 (2d Cir. 2003) ..........13

*Shmueli v. City of New York*, 424 F.3d 231 (2d Cir. 2005) ............................13

*Simpson v. Town of Warwick Police Dept.*, 159 F. Supp. 3d 419 (S.D.N.Y. 2016) ..........27

*Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980) ......................................24

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) ..........................19

*Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014) ...........................Passim

*Vogelfang v. Capra*, 889 F. Supp. 2d 489 (S.D.N.Y. 2012) ............................31

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ..................................................27

iv

*Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015) ........................................................................................................29-31, 33

*Wallace v. Kato*, 549 U.S. 384 (2007) ........................................................................ 21, 23

*Wilson v. Wilson-Polson*, 2010 U.S. Dist. LEXIS 100425 (S.D.N.Y. Sept. 22, 2010) ................................................................................................................17

*Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655 (S.D.N.Y. 2010) ......................................14

*Ying Jing Gan v. City of New York*, 996 F.2d 552 (2d Cir. 1993) ....................................................17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEEN MEES,<br><br>                      Plaintiff,<br><br>              -against-<br><br>CITY OF NEW YORK, MANHATTAN DISTRICT ATTORNEY'S OFFICE, CYRUS VANCE, JR., NITIN SAVUR, JEANINE LAUNAY, SAMANTHA SCHOTT,<br><br>                      Defendants. | MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS<br><br>19 Civ. 7346 (AJN)(KNF) |

## INTRODUCTION

By the above-captioned civil suit, plaintiff *pro se* Heleen Mees asks this Court to vacate the disposition in a dismissed and sealed state court prosecution; restore that prosecution to the state court calendar (or, alternatively, dismiss the case outright); and find that members of the New York County District Attorney's Office violated Mees' right to receive exculpatory and impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). As defendants, Mees names the City of New York; the DA's Office; District Attorney Cyrus R. Vance, Jr.; and Assistant District Attorneys Nitin Savur, Jeanine Launay, and Samantha Schott. As a vehicle for the relief sought, Mees invokes 42 U.S.C. §1983 and the Declaratory Judgment Act.

By this joint motion, all defendants respectfully seek dismissal of the complaint under Rule 12(b)(1) and (6), on several grounds. Mees lacks standing to pursue declaratory relief based on past events. One aspect of her claim is further barred by immunity and the remaining aspects are not cognizable under §1983 and are barred by the *Rooker-Feldman* doctrine, which prohibits litigants from seeking review of state court judgments in federal court. Moreover,

1

Mees' claim is based entirely on the allegation that the DA's Office violated *Brady*, yet the limitations period applicable to a §1983 *Brady* claim expired prior to the filing of this lawsuit and the complaint does not plausibly allege a *Brady* violation.  Finally, Mees cannot state a §1983 *Monell* claim against the City absent the existence of a municipal policy and an underlying constitutional violation, neither of which is plausibly pled in the complaint.  For these reasons, defendants' motion to dismiss should be granted.  Since there is no possibility of curing these defects through an amendment to the complaint, dismissal should be with prejudice.

## STATEMENT OF THE CASE

In July 2013, Mees was arrested by members of the New York City Police Department after her "lover," Willem Buiter, made a series of allegations that Mees had harassed him by sending him nude photos of herself.  Complaint ¶14.[1]  A complaint sworn out by a detective was filed in New York County Criminal Court charging Mees with misdemeanor stalking, aggravated harassment, and harassment.  Ex. 1.  The Criminal Court complaint alleges that the detective was informed by Buiter that he received at least 1,000 emails from Mees between July 2011 and July 2013; that Buiter told Mees to stop contacting him and sent her a "cease and desist" letter in February 2013; that Mees nonetheless continued to send Buiter "several hundred" emails; and that Mees also sent emails to Buiter's wife and children.  *Id.*  The Criminal Court complaint cites emails sent from Mees to Buiter containing statements such as "Hope your plane falls out of the sky;" pictures of dead birds; and nude photos of Mees.  *Id.*

---

[1] The Statement of the Case is derived from the allegations in the complaint; records attached to the complaint; and records that are incorporated by reference or were filed in the underlying prosecution such that the Court may take judicial notice of their content.  Lettered exhibits are appended to the complaint and numbered exhibits are appended to the declaration of Assistant District Attorney Elizabeth N. Krasnow filed in support of this motion.

In August 2013, pursuant to Criminal Procedure Law (CPL) §100.05, a superseding information sworn out by Buiter was filed in Criminal Court charging Mees with misdemeanor menacing, stalking, aggravated harassment, and harassment.  Complaint ¶25; Ex. 2 at 2-4.[2,3] The superseding information alleges that Mees sent Buiter 164 messages on Facebook between January and April 2013; called him "hundreds of times" in March 2013; sent him 55 emails "containing sexually explicit messages" in May 2013; and attempted to meet with him in person on several occasions.  *Id.* (both citations).  The superseding information further alleges that Buiter began receiving emails from Mees in November 2009—although it does not allege that emails received at that time were unwanted—and that Buiter received over 3,000 emails from Mees between November 2009 and July 2013.  Ex. 2 at 3.

In October 2013, Mees filed a motion to dismiss the charges.  Complaint at ¶27.  The complaint in this civil case alleges that, in the motion to dismiss, Mees denied sending Buiter nude photos of herself and requested that the People produce *Brady* evidence.  *Id.*  On the contrary, in that motion—which is incorporated by reference in the complaint—Mees acknowledged that she sent Buiter sexually explicit emails that included nude photos and claimed only that the emails were consensually exchanged.  Ex. 3 at 7 (¶2).

In February 2014, ADAs Samantha Schott and Jeanine Launay engaged in plea discussions with Mees' attorneys.  *Id.* at ¶27.  The DA's Office offered to resolve the charges with an Adjournment in Contemplation of Dismissal ("ACD") under CLP §170.55(2).

---

[2] Citations to page numbers in exhibits are to the page number of the exhibit, as a whole.
[3] The superseding information reflects an error in the deponent on the first page by identifying the arresting detective, not Buiter.  The document, however, is clearly signed by Buiter.  Our file reflects that a corrected information identifying Buiter as the deponent was filed in Criminal Court in October 2014.

Complaint ¶16.  Mees alleges that, during the plea discussions, ADAs Schott and Launay did not mention any nude photos in the prosecution file.  *Id.* at ¶27.

In March 2014, during an appearance in Criminal Court, Mees accepted an ACD and agreed to undergo individual counseling sessions and to the imposition of "a full and final" order of protection.  Ex. 4.  Under the terms of the ACD, the prosecution would remain open for one year, at which time the prosecution would be dismissed and sealed if Mees complied with the conditions set by the court.  *Id.* at 1.

In April 2014, Mees filed an application in this courthouse under 28 U.S.C. §1782 to obtain discovery from Buiter for use in a defamation suit she anticipated filing against Buiter in her home county, the Netherlands.  Complaint ¶17; *see also Mees v. Buiter*, 793 F.3d 921, 294-95 (2d Cir. 2015).  In May 2014, the district court denied Mees' application.  *Id.* (both citations).

In June 2014, Mees filed a defamation suit against Buiter in New York state court.  Complaint ¶18.  In October 2014, Buiter moved to dismiss.  *Id.*  In support of his motion, Buiter appended 1,251 nude photos of Mees and claimed that she had emailed the photos to him.  *Id.*  Buiter appended the photos, only, not the emails to which they had been attached, and refused to provide the photos in their native JPEG format.  *Id.* at ¶¶18, 21.

Mees maintains that she did not take the 1,251 nude photos and saw them for the first time upon receiving Buiter's motion to dismiss in the defamation suit.  *Id.* at ¶18.  Mees alleges that Buiter provided hard copies of these photos to the DA's Office at some point prior to the February 2014 plea discussions and falsely represented to prosecutors at the time that Mees had taken the photos and sent them to him.  *Id.* at ¶¶18, 27.

In October 2014, after receiving Buiter's motion with the appended 1,251 nude photos, Mees' attorneys sent two letters to the DA's Office. *Id.* at ¶19. The complaint identifies these letters as having been sent on October 20 and 28, 2014 by attorneys Ira London and Olav Haazen. *Id.* In the October 20, 2014 letter, which was addressed to ADA Schott, Mees' attorneys wrote:

> [W]e recently made the alarming discovery that during the course of their consensual sexual relationship, Buiter secretly and without Mees' consent took approximately *1,252 screenshots* of their Skype sex sessions and saved those screenshots on his computer (presumably for his future enjoyment). We are examining whether this surreptitious recording of Mees' intimate parts without her permission and against her explicit wishes might qualify as a felony. Buiter's secret recording of the parties' intimate love play is particularly alarming because Buiter has advised us that he provided these records to you to support his accusations of harassment...
>
> ...Accordingly, we request that you ask Buiter to produce both the screenshots in their native format and Mees' purported emails forwarding them to Buiter, review them, and advise us of your findings.

Ex. 5 at 38-39 (emphasis in original) (citation omitted). In the October 28, 2014 letter, which was addressed to D.A. Vance, Mees' attorneys wrote:

> ...Ms. Schott refuses to drop the charges altogether—even though we advised her of significant *additional* exculpatory evidence *after* the ACD was entered, including...evidence that the nude photos that Mees supposedly sent were in reality screenshots that *Buiter* took of Skype calls in which he voluntarily participated. We refer to additional instances where the accuser demonstrably misled your office and fabricated incriminating evidence in §V below.

*Id.* at 42 (emphasis in original). The complaint characterizes both letters as having charged the DA's Office with suppressing *Brady* material. Complaint ¶¶19, 28.

In November 2014 and February 2015, Mees' attorneys spoke to ADA Nitin Savur, the Deputy Chief of the Trial Division. Complaint at ¶20. Mees alleges that ADA Savur told her attorneys, during a February 2015 meeting, that the DA's Office would not dismiss the charges. *Id.* at ¶29. Mees further alleges that ADA Savur "refused to produce any of the unlawful surveillance images that Buiter [had provided to the] prosecution even though [Mees' attorneys] informed Savur that the photos constituted material exculpatory evidence." *Id.* Finally, Mees alleges that ADA Savur told her attorneys to submit a FOIL request for the prosecution file; to return if they gathered more evidence; and that the prosecution could be reopened after it was sealed. *Id.* at ¶¶20, 28.

In March 2015, upon expiration of the adjournment period of the ACD, the charges against Mees were dismissed and sealed under CPL §160.50. *See* Ex. A.

In July 2015, the Second Circuit reversed the order of the district court denying Mees' §1782 application for discovery to be used in the Netherlands defamation suit, which had since been filed. Complaint ¶21; *Mees*, 793 F.3d at 295. Mees alleges that, on remand, the district court ordered Buiter to produce in JPEG format the 1,251 nude photos that were appended to his motion to dismiss the New York defamation suit. Complaint ¶21.

In October 2015, Buiter produced the nude photos in JPEG format as ordered by the district court. *Id.*

In December 2015, the DA's Office responded to a FOIL request submitted by Mees. *Id.* at ¶20. Mees alleges that the response contained "about 1,200 unlawful surveillance images" of her. *Id.* The clear import of the factual allegations in the complaint is that the photos produced by the DA's Office were the same images as the 1,251 nude photos that had

been appended to Buiter's motion to dismiss the New York defamation suit and subsequently produced by him in JPEG format. *See, e.g.*, *id.* at ¶¶27-29.

In April 2016, a forensic firm retained by Mees' attorneys issued a report based on its analysis of the 1,251 nude photos produced by Buiter in JPEG format. *Id.* at ¶21; Ex. 5 at 64-86. In that report, the forensic firm concluded that the photos were consistent with screenshots taken during a live video chat on a platform such as Skype and that none of the photos were ever stored on, or sent from, any of Mees' electronic devices. Complaint at ¶¶21-22. The complaint alleges that the report leaves "no other reasonable explanation than that Buiter took the photos." *Id.* at ¶23.

In May 2016, Mees' attorneys sent a letter to D.A. Vance demanding that the already-dismissed prosecution be dismissed again in the interests of justice based on the forensic firm's report. *Id.* at ¶31. In August 2016, ADA Audrey Moore denied the request by reply letter. Complaint ¶31; Ex. C. As grounds for her decision, ADA Moore explained, first, that there was no mechanism to reopen a dismissed case simply to dismiss it again and, second, that even if such a mechanism existed, "the ACD + counseling sessions was a very reasonable disposition of the case." Ex. C.

In January 2018, Mees' new attorney filed a motion asking the Criminal Court to order the DA's Office to "unseal and reopen" the prosecution. Ex. 5 at 4, 11; Complaint ¶32. As grounds for the relief sought, Mees argued that the DA's Office violated *Brady* by not disclosing any nude photos in the prosecution file prior to the February 2014 plea discussions. Ex. 5 at 12. In February 2018, the Criminal Court denied the motion to unseal and re-open the prosecution. *Id.* at 30.

7

In March 2018, Mees filed a *pro se* petition for a writ of *error corum nobis* asking the Criminal Court to unseal and reopen the prosecution to "alleviate a constitutional wrong." Ex. 5 at 8 (quotation omitted); Complaint ¶32.  As grounds to suggest that a constitutional wrong had occurred, Mees argued, first, that the DA's Office violated *Brady* by not disclosing any nude photos in the prosecution file prior to the February 2014 plea discussions and, second, that one of her attorneys at the time was ineffective for failing to move the court in 2014 to undo the ACD even though Mees asked him to.  Ex. 5 at 4-5, 8.  In July 2018, the Criminal Court denied the petition.  Ex. 6.

Later in July 2018, Mees filed a *pro se* motion under CPL §440.10 asking that the Criminal Court vacate the ACD.  Ex. 7; Complaint ¶32.  As grounds for the relief sought, Mees argued that the DA's Office violated *Brady* by not disclosing any nude photos in the prosecution file prior to the February 2014 plea discussions.  Ex. 7 at 9-12, 13.  In October 2018, the Criminal Court denied the CPL §440.10 motion.  Ex. 8.

In December 2018, Mees filed a second *pro se* petition for a writ of *error corum nobis* asking the Criminal Court to order the DA's Office to reopen the prosecution.  Ex. 9.  As grounds for the relief sought, Mees argued that the DA's Office violated *Brady* by not disclosing any nude photos in the prosecution file prior to the February 2014 plea discussions and that her attorney was ineffective for failing "to timely move" the Court to vacate the ACD "before it expired" in March 2015.  *Id.* at 5-6.  In support, Mees annexed an affirmation by her attorney attesting that she had insisted that the ACD "be undone" since October 2013, when the nude photos were first produced by Buiter in the New York defamation suit.  *Id.* at 10-11. The affirmation further states that in February 2015, after the DA's Office declined to drop

the charges, Mees asked the attorney to move the court to vacate the ACD.  *Id.*  In January

2019, the Criminal Court denied the second petition for a writ of *error corum nobis*.  Ex. D.[4]

In February 2019, the Appellate Division denied Mees' motion for leave to appeal from

the January 2019 decision.  Complaint ¶33; *People v. Mees*, 2019 N.Y. App. Div. LEXIS 5837

(App. Term. Mar. 7, 2019).  In April 2019, the New York Court of Appeals similarly denied

leave.  Complaint ¶33; Ex. F.

## STANDARD OF REVIEW

On a motion to dismiss, the court accepts as true the factual allegations in the complaint

and draws all inferences in the plaintiff's favor.  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68

(2d Cir. 2014).  Where the complaint was filed *pro se*, it must be "construed liberally" and

"interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738 F.3d 509, 515

(2d Cir. 2013) (quotation omitted).  "Nonetheless, a *pro se* complaint must state a plausible

claim for relief."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, *supra*, at 678.

When adjudicating a motion to dismiss, the court may consider "the complaint,

documents attached to the complaint as exhibits, and documents incorporated by reference in

the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 662 F.3d 104, 111 (2d Cir. 2010).  The court

may also consider "any matter of which the court can take judicial notice for the factual

background of the case."  *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curium);

---

[4] While Mees alleges that the Criminal Court "acknowledged that [the DA's Office] had
willfully suppressed material exculpatory evidence," the decision appended to the complaint
contains no such finding.  *Id.* at ¶32; Ex. D.

*see also Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) ("The New York State ('State') prosecution of Shmueli is a matter of public record, of which we take judicial notice"); *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 402 (2d Cir. 2003) (noting the appropriateness of taking judicial notice of state court records).

## ARGUMENT

The complaint raises one claim under §1983 and seeks a declaration (i) stating that the DA defendants "obtained" the ACD in violation of *Brady*; (ii) vacating the judgment of the Criminal Court entering the ACD; and (iii) restoring Mees' prosecution to the Criminal Court calendar or dismissing the case outright.  Complaint ¶44(a)-(c).[5]  Since there is no free-standing claim for a declaration,[6] Mees' claim hinges on the timeliness and plausibility of her allegation of a *Brady* violation, which is the only constitutional violation alleged in the complaint.  Further, Mees' claim is subject to the immunity defenses that adhere to a *Brady* allegation raised against a prosecutor.  With these points in mind, defendants jointly move to dismiss on the grounds that Mees lacks standing to pursue a declaration based on past events; components of the declaration sought in the complaint are barred by immunity defenses, not cognizable under §1983, or barred by the *Rooker-Feldman* doctrine; any *Brady* claim is neither timely nor plausibly presented; and Mees has not sufficiently alleged a municipal policy or an underlying constitutional violation so as to sustain a §1983 claim against the City.

---

[5] The term "DA defendants" is used to refer to DA Vance and ADAs Savur, Launay, and Schott.  The District Attorney's Office, itself, is a non-suable entity.  *Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010) ("[T]he District Attorney's Office is not a suable entity"); *see also Adames v. Cty. of Suffolk Court*, 2019 U.S. Dist. LEXIS 81051, *5 (E.D.N.Y. May 14, 2019).
[6] *See, e.g., Chiste v. Hotels.com, L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010).

## I.   Mees lacks standing to seek a declaration

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Allen v. Wright*, 468 U.S. 737, 740 (1984).  "One element of the case-or-controversy requirement" is that a plaintiff must establish standing.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  To do so, the plaintiff must have suffered an "injury in fact" that is (1) "concrete and particularized" and "actual or imminent," (2) "fairly trace[able] to the challenged action of the defendant," and (3) "redressable by a favorable ruling."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (quotation omitted).  Standing must be established for each form of relief sought.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Assuming, *arguendo*, that the complaint plausibly alleges an injury that rises to the level of a constitutional violation, Mees does not have standing to pursue a declaration because she has not alleged a "real and immediate threat" that she will sustain that injury again.  *Minsky v. Kelley*, 240 Fed. Appx. 920, 921 (2d Cir. 2007).  "The United States Supreme Court has held that for declaratory or injunctive relief, 'past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.'"  *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also Golden v. Zwickler*, 394 U.S. 103, 109 (1969); *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (to obtain "a declaratory judgment or an injunction, a plaintiff must show, inter alia, a sufficient likelihood that he [or she] will again be wronged in a similar way") (quotation omitted); *Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) ("[W]e have held that where a plaintiff seeks simply a declaration that there was a past injury, but claims no damages or an injunction against future behavior, there is no §1983 claim because there is no true case or controversy").

In this case, Mees' claim for equitable relief is premised solely on the allegation that a *Brady* violation occurred during the plea discussions in her past prosecution under Criminal Court Docket 2013NY050589—a prosecution that has since been dismissed and sealed.  *See* Complaint at ¶44.  Mees does not identify a risk of future prosecution by the DA's Office, either under the dismissed and sealed docket or by the filing of new charges, nor does she allege that any *Brady* violation is ongoing or likely to recur.  On the contrary, all three components of the declaration sought in the complaint flow from the premise that the DA's Office was constitutionally required, in advance of the plea discussions, to produce any nude photos in the prosecution file.  Because Mees asks this Court to make pronouncements that derive exclusively from past events that she does not allege are likely to be repeated, this case does not present a live case or controversy.

## II.      One component of the declaration that Mees seeks is barred by immunity

The complaint does not specify whether the DA defendants are named in both their individual and official capacities, but, in either event, a form of immunity applies to bar the aspect of Mees' claim seeking a declaration that the DA defendants obtained the ACD in violation of *Brady*.  Complaint ¶44(a).[7]

To the extent the DA defendants are named in their individual capacities, absolute immunity shields a prosecutor so sued from §1983 liability for "virtually all acts, regardless of motivation," associated with his judicial function as an advocate.  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).  The immunity that adheres to a prosecutor in this regard is one component of

---

[7] As argued in Part III, *infra*, the remaining two components of the declaration that Mees seeks are not addressed to the conduct of the DA defendants, but rather, to action that Mees asks this Court to take with regard to the Criminal Court where her prosecution was pending.

the "cluster of immunities" that protect the various participants in the judicial system, all of which share the purpose of enabling "judges, advocates, and witnesses to perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978). These judicial immunities act as a bar to claims for declaratory relief that are retrospective in nature. *Wilson v. Wilson-Polson*, 2010 U.S. Dist. LEXIS 100425, *26 (S.D.N.Y. Sept. 22, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *see also MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009) ("[T]o the extent Plaintiffs' declaratory claims are retrospective in nature in that they seek a declaration that the Justices' past enforcement of the Town's rental law has violated the Constitution, they are barred by the doctrine of absolute immunity").

In this case, the decision whether or not to provide Mees' attorneys, during the plea discussions, with copies of any nude photos allegedly in the prosecution file unquestionably relates to the DA defendants' advocacy function. The Second Circuit has applied absolute immunity to prosecutors' conduct during plea negotiations, as well as to their decision whether to provide *Brady* material. *See, e.g.*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995); *Hill v. City of New York*, 45 F.3d 653, 662 (2d Cir. 1995). Because the aspect of Mees' claim seeking a declaration that the DA defendants obtained the ACD in violation of *Brady* is retrospective in nature and implicates their advocacy function, it is barred by absolute immunity. *See, e.g.*, *Johnson v. Carrasquilla*, 2018 U.S. Dist. LEXIS 176578, *29-30 (D. Conn. Oct. 15, 2018) (finding that absolute immunity barred a claim for "retrospective declaratory relief" against prosecuting attorneys sued in their individual capacities); *LeDuc v. Tilley*, 2005 U.S. Dist. LEXIS 12416, *21 (D. Conn. Jun. 21, 2005) (same).

13

To the extent the DA defendants are named in their official capacities, the Eleventh Amendment operates to bar this aspect of Mees' claim for equitable relief.  A prosecutor sued in his official capacity for conduct arising from the handling of a state prosecution is considered to be a state official, *see, e.g.*, *Ying Jing Gan v. City of New York*, 996 F.2d 552, 536 (2d Cir. 1993), and a declaratory judgment that a state official violated federal law in the past is prohibited by the Eleventh Amendment.  *Green v. Monour*, 747 U.S. 64, 73-74 (1985). Accordingly, Mees cannot proceed with this aspect of her claim against the DA defendants in their official capacities, either.  *Cf. Ifill v. New York Cty. D.A.*, 2014 U.S. Dist. LEXIS 197430, *8-9 (S.D.N.Y. July 8, 2014) (finding that the Eleventh Amendment barred a claim for "retrospective declaratory relief" against a prosecutor sued in his official capacity); *Colon v. Vance*, 2019 U.S. Dist. LEXIS 111476, *2 (S.D.N.Y. July 3, 2019) (same).

III. **The remaining two components of the declaration that Mees seeks are not cognizable under §1983 and are barred by the** *Rooker-Feldman* **doctrine**

The latter components of Mees' claim, Complaint ¶44(b) and (c), are not cognizable under §1983 and are barred by the *Rooker-Feldman* doctrine.  The Second Circuit's decision in *Teichmann v. New York* is instructive on both fronts.  In that case, the plaintiff brought a §1983 action alleging a violation of his constitutional right to a fair trial by the state court judge and county prosecutor, and sought to have his conviction "declared invalid and overturned."  769 F.2d at 823-24.  In affirming the dismissal of his claim, the Second Circuit held that "§1983— while broad in its equitable and legal remedies—does not recognize a declaration of innocence, standing alone, as a cognizable form of relief."  *Id.* at 826.  Unlike the federal habeas statute, which authorizes federal review of state court convictions in certain circumstances, "nothing in the language of §1983 suggests that such a naked declaration is available."  *Id.*  Similarly, in

this case, nothing in the language of §1983 suggests that that the statute can be employed to "vacate" a "decision and order" of a state court; "restore" a dismissed and sealed prosecution to the state court calendar; or "dismiss" a criminal charge pending in state court, as Mees asks this Court to do. *Cf. Kroemer v. Tantillo*, 2017 U.S. Dist. LEXIS 218622, *20-21 (W.D.N.Y. Jun. 14, 2017) (finding a proposed declaration that the plaintiff's conviction "was obtained in violation of his constitutional rights" and "directing [the DA] to consent to set [the conviction] aside" to be "tantamount" to the relief sought in *Teichmann* and not cognizable under §1983), *aff'd*, 758 Fed. Appx. 84 (2d Cir. 2018).

As "additional support" for its holding in *Teichmann*, the Second Circuit relied on the *Rooker-Feldman* doctrine, 769 F.3d at 826, which applies with equal force to Mees' claim. Named after *Rooker v. Fidelity Trust Co.* and *District of Columbia Court of Appeals v. Feldman*, the *Rooker-Feldman* doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quotation omitted). Because district courts have only original jurisdiction, claims that function as appeals of state court judgments are barred. *Id.*; *see also Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ("Underlying the *Rooker-Feldman* doctrine is the principle [that] only the Supreme Court may review state-court decisions"). In *Hoblock*, the Second Circuit established a four-part test to determine whether *Rooker-Feldman* applies:

> (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Sung Cho*, 910 F.3d at 645 (citing *Hoblock*, *supra*, at 85).

This test is satisfied here. Mees' claim for declaratory relief that "vacates" the ACD and restores her prosecution to the Criminal Court calendar is, in effect, an appeal from the entry of the ACD and from the Criminal Court orders denying Mees' motions that similarly sought to "undo" that disposition. Viewing the *Hoblock* requirements one at a time, the first is met because Mees lost in state court upon the entry of the ACD with its conditions of counseling sessions and a "full and final" order of protection, and then lost again when her motions to vacate or reopen the ACD were denied. The second requirement is met because, as the complaint makes plain, Complaint at ¶44(b) and (c), the injuries that Mees seeks to remedy are the judgment of the Criminal Court entering the ACD and its subsequent orders denying her motions to reopen the prosecution. As the Supreme Court has explained, *Rooker-Feldman*'s "paradigm situation" is where the plaintiff has "repaired to federal court to undo the [state] judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (quotation omitted); *see also Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 247 (D. Conn. 2016) (finding a claim that a state court judgment "should be vacated or set aside" to be "precisely the type of case the *Rooker-Feldman* doctrine bars").[8]

---

[8] The procedural posture of Mees' prosecution and the nature of the relief she seeks remove this case from the ambit of *Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009). In *Green*, the Second Circuit held that an ACD did not prohibit the plaintiff, a respondent in a Family Court removal proceeding, from seeking damages arising from the loss of custody over her child pursuant to a temporary removal order. *Id.* at 102-03. Unlike this case, *Green* is silent with respect to whether the ACD accepted by the plaintiff had conditions. *Id.* at 102. Further unlike this case, the ACD was not the subject of the plaintiff's §1983 claim. The subject of her claim was the temporary removal order, which remained in place for only four days before it was superseded by a second order returning the child to her custody. *Id.* at 102-03. Finally, unlike this case, the plaintiff sought only damages—not a declaration vacating the removal order or the ACD. *Id.* at 103.

16

The third requirement is met because a declaration by this Court vacating the ACD and restoring the prosecution to the Criminal Court calendar would have the effect of overturning the judgment and orders of the state court. As the Second Circuit noted on the analogous facts presented in *Teichmann*, "to the extent that [the plaintiff] seeks a declaration that his state court conviction is invalid, he seeks nothing more than review of a state court judgment." 769 F.3d at 826. In this case, exactly as in *Teichman*, a declaration vacating the ACD entered by the Criminal Court and restoring Mees' prosecution to the calendar "does not provide any relief against [the state officials]" who allegedly violated Mees' constitutional rights, but rather, amounts to collateral review and rejection of the contrary judgments and orders of the state court. *Id.* Finally, the fourth requirement is met because the Criminal Court judgment and orders at issue were entered before Mees filed this lawsuit.

Having failed to obtain relief via the motions filed in Criminal Court or on appeal from the orders of the Criminal Court, Mees cannot now invoke §1983 to ask this Court to do precisely what the Criminal Court found had no basis in the procedural rules that govern state criminal matters: vacate an already dismissed-and-sealed ACD and reopen the underlying prosecution. *See* Ex. 6 at 5.

IV. **Any §1983 claim against the DA defendants based on an alleged *Brady* violation and any *Monell* claim against the City based on the same are untimely**

Assuming the complaint plausibly alleges a *Brady* violation, which defendants argue elsewhere herein is not the case, *see* Part V, *infra*, any claim flowing from that violation is untimely. The limitations period for a §1983 claim is borrowed from the general limitations period for a personal injury claim brought under state law, which, for a §1983 claim accruing in New York, is three years. *Okure v. Owens*, 488 U.S. 235, 251 (1989). The accrual date for a

§1983 action, on the other hand, is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The "standard rule" is that accrual begins "when the plaintiff has a complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief." *Id.* (quotation omitted).

In this case, there are many dates on which the Court could find that Mees' *Brady* claim accrued, none of which would render her claim timely. At the outset, defendants note that the Criminal Court complaint alleged that Mees sent Buiter nude photos. Ex. 1. The photos were thus a point of contention known to the defense from the inception of the prosecution. Nonetheless, the complaint and the letters incorporated by reference confirm that, as early as October 2014, Mees knew that Buiter had provided the DA's Office with "hard copies" of the photos that she identifies as the withheld *Brady* material. Complaint ¶¶18-19, 27; Ex. 5 at 38-39, 42. At that time, Mees possessed hard copies of the photos herself—which Buiter had appended to his motion to dismiss the defamation suit—and thus knew of their alleged exculpatory nature and impeachment value while the charges against her remained open. Complaint ¶18. Indeed, per the complaint, later that month Mees' attorneys charged the DA's Office with "suppress[ing] material exculpatory evidence" in the form of the photos. *Id.* at ¶¶19, 28. The complaint further makes clear that, as early as February 2015, Mees knew that the DA's Office had "refused to produce any of the [photos] that Buiter [had handed to the prosecution]" in response to her attorneys' claim that the photos were exculpatory. *Id.* at ¶¶20, 28. In other words, by February 2015, Mees was aware that Buiter had provided the DA's Office with the nude photos that are the subject of her §1983 *Brady* claim; that the photos had

alleged exculpatory and impeachment value; and that the DA's Office had continued to refuse to produce the photos despite her attorneys' insistence that they were *Brady* material.

This lawsuit was not filed until August 2019, meaning that any §1983 claim premised on an alleged *Brady* violation is untimely if it accrued before August 2016.  The prevailing view in this circuit is that *Heck v. Humphrey*, 512 U.S. 477 (1994)—which bars a §1983 claim that implies the invalidity of a conviction or sentence—does not apply to a fair trial claim, such as a *Brady* claim, where, as here, the prosecution terminated with an ACD.  *Ross v. City of New York*, 2019 U.S. Dist. LEXIS 169762, *18-20 (E.D.N.Y. Sept. 30, 2019) (collecting cases).  It is thus arguable that Mees could have filed a §1983 claim against the DA defendants or the City based on the alleged *Brady* violation prior to the expiration of the ACD.  The Court, however, need not resolve this issue to find that her claim is untimely.  At the very latest, Mees had a "complete and present cause of action," *Wallace*, *supra*, in March 2015, when the adjournment period of the ACD expired and the charges were dismissed and sealed.  Ex. A.  Because the three-year limitations period on any §1983 *Brady* claim, and consequently any municipal liability flowing from that alleged *Brady* violation, would have expired in March 2018, this lawsuit is untimely.

Perhaps anticipating this defense, Mees alleges that the limitations period was extended due to the alleged statement of ADA Savur that the ACD could be "reopened" after the expiration of the adjournment period if Mees returned with more evidence.  Complaint ¶¶20, 41.  To this end, Mees references the letter that she received in August 2016 from ADA Moore

declining her request to "undo" the ACD.  *Id.* at ¶41.[9]  This reference, seemingly an appeal for equitable tolling, misses the mark.  August 2016 cannot be accrual date of Mees' *Brady* claim, because the issue of whether a dismissed-and-sealed ACD can be reopened is distinct from the issue of whether a *Brady* violation occurred.  The sole ground for this lawsuit is Mees' §1983 *Brady* claim; a free-standing claim to declare the ACD reopened does not exist, nor, as argued above, is such a claim cognizable under §1983.  By February 2015, Mees unquestionably "kn[ew] or had reason to know of the injury which is the basis of [her] action"—the *Brady* violation.  *Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980).  The alleged statement of ADA Savur did not operate to conceal that injury or suggest agreement with Mees' position as to the photos' alleged exculpatory and impeachment value.  On the contrary, as the complaint alleges, after Mees' attorneys charged the DA's Office with suppressing *Brady* material, ADA Savur disagreed with their position that production of the photos was required and further disagreed that the photos warranted a different disposition for the case.[10]  The "rare and exceptional circumstances" that may justify equitable tolling are not present here.  *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007).

---

[9] As independent grounds to deny the request, ADA Moore found that the disposition that Mees sought to disturb was "very reasonable."  Ex. C.  Even if a mechanism existed to reopen a dismissed-and-sealed prosecution, the DA's Office did not agree with Mees that such relief was warranted in this case.

[10] It is apparent from the sequence of events that the nature of the disagreement between the parties was not, as Mees now characterizes it, an alleged *Brady* violation, but rather, whether the photos—which were known and available to both sides—had the value that the criminal defense ascribed to them.  The October 2014 letters sent by Mees' attorneys to the DA's Office do not actually accuse the DA's Office of suppressing *Brady* material; instead, the letters argue that subsequent events made clear the alleged exculpatory and impeachment value of the photos.  *See, e.g.*, Ex. 5 at 42.

**V.      Mees has not plausibly alleged a *Brady* violation**

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (*en banc*) (quotation omitted).   In the context of a §1983 civil suit, the Second Circuit has "never held that anything less than an intentional *Brady* violation" will suffice to state a claim. *Fappiano v. City of New York*, 640 Fed. Appx. 115, 118 (2d Cir. 2016); *see also Bleiwas v. City of New York*, 2019 U.S. Dist. LEXIS 169476, *29-30 (S.D.N.Y. Sept. 30, 2019) (where a §1983 plaintiff seeks a civil remedy for an alleged *Brady* violation, the evidence at issue must have been "willfully" suppressed).

Assuming, *arguendo*, that any nude photos in the prosecution file had the exculpatory or impeachment value that Mees ascribes to them and were material to the charges against her, and assuming further that a dismissed-and-sealed ACD—which is neither a conviction nor a plea, CPL §170.55(8)—is a disposition against which "prejudice" can be measured, the photos were not suppressed.  Evidence is not suppressed within the meaning of *Brady* if the plaintiff "either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (quotation omitted).  In this case, the document that initiated the prosecution specifically stated that Mees sent Buiter nude photos of herself.  Ex. 1.  Mees, as the only other party to the exchange, had personal knowledge of the accuracy of this statement and was in position to deny it, which Mees claims that she did, via a motion to dismiss filed in advance in the plea discussions.

Complaint ¶27 ("I specifically denied in the motion to dismiss of October 14, 2013, that I sent Buiter nude photos of myself").  Mees' awareness in this regard, alone, is fatal to her *Brady* claim.  *People v. Sebak*, 270 A.D.2d 166, 167 (1st Dept. 2000) ("In any event, the Grand Jury minutes and police reports regarding an unrelated incident between defendant and the complainant did not constitute *Brady* material since defendant obviously was aware of the incident and based his defense upon it").[11]  Then, prior to the expiration period of the ACD, Mees' attorneys independently obtained copies of the same images; in the same hard copy format; from the same source, and continued to advance the position that Mees did not send the photos.  Perhaps, as Mees later claimed, her attorneys were ineffective for failing to abide by her request to move to dismiss the charges at this point, Ex. 5 at 8; Ex. 9 at 3-4, 10-11, but, for purposes of her *Brady* claim, the DA's Office was not required to supply the photos where, as here, "the defendant knew of, or should reasonably have known of, the evidence and its exculpatory nature."  *People v. Doshi*, 93 N.Y.2d 499, 507 (1999).

The Court further need not accept as true any allegation that the DA's Office had reason to know, prior the February 2014 plea discussions, of the alleged exculpatory or impeachment value of the nude photos that Buiter had provided to the prosecution.  To suggest a culpable state of mind on the part of the DA defendants, Mees relies exclusively on the allegation that, in moving to dismiss the charges, she "specifically denied [that she] sent

---

[11] *See also People v. McClain*, 53 A.D.3d 556, 557 (2d Dept. 2008) ("Defendant…knew of the possibility that [his] arrest was captured by a surveillance camera from a nearby housing project…[and] consistently claimed the surveillance videotape would be exculpatory.  Since defendant knew of the possibility that a tape existed, it was not *Brady* material even if exculpatory"); *People v. Singh*, 5 A.D.3d 403 (2d Dept. 2004) ("In any event, since the defendant knew of the evidence [an audiotape of a pertinent 911 telephone call] and its exculpatory nature well in advance of trial, it was not *Brady* material") (citation omitted).

Buiter nude photos of [herself]" and requested that the DA's Office produce *Brady* material.

Complaint ¶27.  That is not what was written in the motion to dismiss.  In that motion, Mees

admitted that she sent Buiter "sexually explicit e-mails" that included nude photos and claimed

only that the photos were sent on a consensual basis.  Ex. 3 at 7 (¶2).  The motion to dismiss

thus neither exculpated Mees nor impeached Buiter in relation to Buiter's allegation that Mees

had sent him nude photos; on the contrary, it corroborated the allegation.  Apart from its

characterization of the motion to dismiss, which the Court may reject as contradicted by the

document itself, *see, e.g.*, *Employees' Ret. Sys. v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 353

(S.D.N.Y. 2011), the complaint does not allege any basis for the DA defendants to have

suspected that the nude photos provided by Buiter amounted to *Brady* material.  In the very

least, the DA defendants would be protected by qualified immunity for their alleged decision

that *Brady* did not require disclosure of any nude photos in the prosecution file during the plea

discussions.  *See, e.g.*, *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (qualified immunity

applies where "[officials] of reasonable competence could disagree" as to the legality of the

challenged conduct) (quotation omitted).

## VI.    Mees has not plausibly alleged a §1983 *Monell* claim

Mees does not allege a plausible municipal liability claim.  First, there is no underlying

constitutional violation.  Second, Mees cannot recover under §1983 on a *respondeat superior*

theory.  Third, Mees does not allege any plausible policy, practice, or custom sufficient to

establish municipal liability, and instead pleads conclusory and speculative allegations which

are insufficient to state this claim.

23

### 1.     Mees fails to allege an underlying constitutional violation

As an initial matter, since the complaint fails to state facts sufficient to allege any constitutional deprivation, Mees cannot establish a claim against the City for municipal liability.  To succeed on a *Monell* claim, a plaintiff must first establish that a municipal agent committed an underlying constitutional violation.  *See, e.g., Simpson v. Town of Warwick Police Dept.*, 159 F. Supp. 3d 419, 434 (S.D.N.Y. 2016).  When a plaintiff fails to "allege a valid underlying constitutional deprivation, [her] claim against New York City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), must also fail." *Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014).  Mees alleges broadly that the individual defendants failed to disclose *Brady* evidence and that this is consistent with the practice of the DA's Office.  However, as argued above, she cannot establish her claim for declaratory judgment under the facts alleged and thus, fails to satisfy the threshold requirement for a *Monell* claim.

### 2.  Mees cannot recover under §1983 based on respondeat superior

There are no state law claims directly alleged or that can be construed from the complaint.[12]  However, even if Mees did allege a claim under state law, "[a] municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  Instead, "the plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008). In this case, the complaint more than 20 paragraphs of purported facts, laying out in detail the history of the underlying criminal proceeding and the alleged misconduct by the individual

---

[12] Although Mees invokes "supplemental jurisdiction" in the complaint, she simultaneously alleges that she intends to proceed "pursuant to §1983." *See* Complaint ¶4.

defendants.  Any attempt to make the City liable for actions of these individual defendants is not a cognizable claim under §1983.

### 3. *Mees fails to plead any municipal policy, practice, or custom sufficient to establish a §1983 Monell claim*

Assuming, *arguendo*, that Mees' constitutional right to receive *Brady* material had been violated, she has not pled facts sufficient to establish the existence of a municipal policy, practice, or custom, let alone one that caused an underlying constitutional violation.  It is well-established that a municipality "may only be held liable where the entity *itself* commits a wrong."  *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) (emphasis in original).  A municipality is subject to liability under §1983 when an official policy, custom, or practice contributes to a constitutional deprivation.  *Monell*, 436 U.S. at 694.  A plaintiff can satisfy the policy, practice, or custom element by alleging one or more of the prongs set forth in *Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410, *14-15 (S.D.N.Y. July 14, 2015).  In this case, as discussed below, Mees does not allege sufficient facts in the complaint to satisfy any of them.

#### a.  Mees does not allege a formal policy endorsed by the City

Municipalities can be liable under §1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690.  In this case, Mees does not allege any facts illustrating a formal policy that was officially adopted by the City.  In fact, other than naming the City in the caption, and alleging its location in paragraph 7 of the complaint, there are no allegations directly attributed to the City.  In a footnote, Mees points to a rule issued by Chief Justice of the New York Court of Appeals

Janet DiFiore requiring prosecutors to "comb through their file and disclose all evidence favorable to the defense at least 30 days before major criminal trials."  Complaint ¶35, fn.1.  However, Mees accepted an ACD so her case did not proceed to trial, nor is there any suggestion that this misdemeanor prosecution, which ended in an offer that rendered the prosecution a nullity, is the kind of "major criminal trial" being contemplated.  To the extent Mees intends to allege that the rule put the City on notice, the rule was promulgated well after her prosecution and thus cannot be used to allege municipal liability.

### b. Mees fails to allege any action by a government official that caused the alleged constitutional violation

Mees fails to satisfy the second prong in *Walker*.  As the Supreme Court has explained, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  Additionally, "the official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."  *Id.* at 482-83.  In a complaint, "[p]laintiffs must provide more than conclusory allegations; they must add specific factual support to show the existence of a pattern."  *McCray v. City of New York*, 2007 U.S. Dist. LEXIS 90875, at *93 (S.D.N.Y. Dec. 11, 2007).

There are very few paragraphs in the complaint from which the Court can construe that Mees attempts to allege a *Monell* claim.  *See* Complaint ¶¶35-37, 43.  However, naming DA Vance and attributing *Monell*-type actions related to the DA's Office's *Brady* practices to him does not, in and of itself, establish municipal liability.  First, a suit against DA Vance in his

26

official capacity[13] is nothing more than a suit against the City.  Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Thus, any allegation against DA Vance, in his official capacity and regarding a *Monell* claim, is duplicative of the claim against the City and subject to dismissal.  In any event, there are no plausible facts that DA Vance was involved, in his final decision-making authority, in the actions taken by the other DA defendants.  The speculative averment that he assigned two ADAs to respond to a letter addressed to him, Complaint ¶36, does not, standing alone, establish a violation of Mees' right.  This is not the type of action taken by a governmental official that would establish liability under this *Walker* prong.  Nor does this action equate to a "practice" by the DA's office.  Mees offers no correspondence from DA Vance himself in which the District Attorney wrote to her directly or any facts, other than her bald assertions, showing that DA Vance was ever aware of her efforts to undo the ACD.  Furthermore, Mees' allegation in paragraphs 37 and 43 amounts to no more than a conclusion of law and falls short of satisfying the pleading standards for a *Monell* claim.  *See Abreu v. City of New York*, 657 F. Supp. 2d 357, 361 (E.D.N.Y. 2009).

Lastly, Mees cannot recover under §1983 via a theory of supervisory liability against DA Vance.  "[T]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under §1983."  *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) (quotation omitted).

---

[13] The complaint avers that the DA defendants are named in their official capacities. Complaint at ¶37.

### c. Mees fails to allege a widespread pattern of misconduct

Mees inadequately pleads that there is a pattern of misconduct so persistent and widespread as to constitute a custom or practice of which defendants must have been aware and ignored. "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). The pattern of misconduct must be "sufficiently widespread as to acquire the force of law." *Id.* "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Mees' attempt to support a claim of widespread *Brady* misconduct such that there is municipal liability is unavailing. In a footnote, the complaint references a report from the New York State Bar Association on wrongful/reversed convictions. Complaint ¶35 fn.2. The cases referenced in the report are not applicable to this case as Mees was not convicted and received an ACD. In any event, the complaint makes clear that the alleged *Brady* material in this case was the metadata of the nude photos. In fact, Mees acknowledges that Buiter provided the DA's Office with "hard copies" of the photos. Complaint ¶27. However, it was the metadata from the JPEG photos, provided to Mees by Buiter, which led Mees' forensic firm to conclude that she did not send the photos to Buiter. *Id.* at ¶32. Not only would the DA's Office be unable to provide Mees with metadata that it did not have, but, the report on

which she relies to hold the City liable makes no mention of a connection between *Brady* and metadata.

In addition, even if the Court accepts Mees' allegation that the DA defendants failed to disclose *Brady* material during the plea discussions, a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Hayes v. Perotta*, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*").

Lastly, Mees does not plausibly allege "a practice that is so widespread such that it constitutes a custom or usage and implies the constructive knowledge of policy—making officials." *Walker*, 2015 U.S. Dist. LEXIS 91410, *14-15. Mees' allegations that "defendant Cyrus Vance Jr. had actual knowledge of the violation of my right to due process and acquiesced in that violation," *see* Complaint ¶36, is speculation without any supporting facts sufficient to establish a plausible claim. In fact, it is the type of boiler plate conclusory statement that is disfavored. *See Abreu*, 657 F. Supp. 2d at 361. Mees has failed to plead sufficient facts such that the Court can plausibly find a widespread pattern of misconduct as to constitute a policy or custom that directly caused her injuries.

### d. Mees fails to plausibly plead a "failure to train" claim

Mees does not plead any facts alleging that the City "failed to train" the DA defendants. To establish such a claim, the failure to train must amount to deliberate indifference. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quotation omitted).  The Second Circuit has identified three requirements a plaintiff must show before a municipality's failure to train constitutes a deliberate indifference.  *Jenkins*, 478 F.3d at 94.  In this case, Mees does not allege any plausible facts questioning the validity of the training at the DA's Office.  Second, the complaint fails to allege that the DA's Office did not provide proper training to Assistant District Attorneys on producing exculpatory evidence.  Additionally, Mees does not allege any facts explaining that a failure to train will cause the deprivation of a citizen's constitutional rights.  Lastly, the complaint fails to allege any facts showing that the City acted with a deliberate indifference.  Plainly, it cannot be construed from the complaint that the City and/or the DA's Office failed to train its attorneys regarding *Brady* and Mees cannot satisfy the stringent requirement of establishing deliberate indifference.

## CONCLUSION

For the above reasons, defendants respectfully request that the Court enter an order pursuant to Rule 12(b)(1) and (b)(6) dismissing the complaint as pled against the City and the DA defendants, with prejudice.

Dated: New York, New York
        November 14, 2019

CYRUS R. VANCE, JR.                          JAMES E. JOHNSON
District Attorney of New York County         Corporation Counsel of the City of New York
One Hogan Place                              100 Church Street
New York, New York 10013                     New York, New York 10007
(212) 335-9000                               (212) 356-1000
*Counsel for the DA defendants*              *Counsel for the City of New York defendant*

By:   *Elizabeth Krasnow /s*         By:   *Genevieve Nelson /s*
      Elizabeth N. Krasnow                 Genevieve Nelson
      Assistant District Attorney          Assistant Corporation Counsel