# EXHIBIT I

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART JURY 5
-----------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

    -against-

HELEEN MEES,

Docket No. 2013NY050589
Order

    Defendant.
-----------------------------------------------------------------X

STEVEN M. STATSINGER, J.

By Notice of Motion, served on the District Attorney of New York County and filed with the Court on January 24, 2018, the defendant requests this court to direct the People to unseal this case and investigate what the defendant alleges was a malicious prosecution.

This request must be denied. First, the District Attorney has broad discretion in determining who shall be charged in a criminal case (*see United States v. Lovasco*, 431 US 783 [1977]; *People v. Harding*, 44 AD2d 800 [1st Dept 1974]; *People v. Muka*, 72 AD2d 649 [3d Dept 1979]; Pitler, New York Criminal Practice under the CPL, §5.27, p 267). Second, the Court of Appeals has stated that prosecutors are not law enforcement under Criminal Procedure Law § 160.50[1][d][ii] (*see Katherine B. V. Cataldo*, 5 NY3d 196 [2005]).

Dated: February 22, 2018
       New York County, New York

                                       Steven M. Statsinger
                                       Judge of the Criminal Court

CRIMINAL COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: PART D
-------------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

                                                                     **ATTORNEY'S**
                                                                     **AFFIRMATION**
                   -against-                                2013NY050589

HELEEN MEES,

                              Defendant.
-------------------------------------------------------------------------x

STATE OF NEW YORK    )
COUNTY OF NEW YORK ) ss:

        **JOSHUA D. KIRSHNER**, being an attorney at law duly admitted to practice in the courts of New York, affirms the following to be true under the penalty of perjury:

        1.     I am an attorney in the law firm of **BRAFMAN & ASSOCIATES, P.C.**, attorneys for defendant Heleen Mees, and I make this affirmation in support of a motion dated January 24, 2018, whereby Defendant moves for this Court to direct the District Attorney's Office to reopen the instant case against Heleen Mees as justice requires unsealing pursuant to C.P.L. § 160.50(1)(d)(ii).

        2.     **This affirmation is made upon information and belief.** The sources of information and the grounds for such beliefs are materials previously disclosed by the District Attorney's Office, conversations with numerous individuals, applicable legal authorities, and those other records and materials constituting counsel's file.

## MOTION TO UNSEAL

3.  On July 1, 2013, Dr. Heleen Mees ("Mees"), a New York University economics professor, political commentator, author, and public figure in her country of origin, the Netherlands, was arrested in New York City on various charges which stem from a complaint by a fellow economics professor and chief economist of Citigroup, Willem H. Buiter ("Buiter"). Buiter incited the police to arrest Mees by making a series of false statements to the police and the Manhattan District Attorney's office, including that Mees harassed him by sending naked photos of herself.

4.  As a result of Buiter's allegations, Mees spent four days in jail at Rikers Island and the matter was highly publicized all over the world, including on the front page of the New York Daily News. See Exhibit A. Following her arrest, Mees lost her job as a professor at New York University, all her columns in international magazines and newspapers, as well as her speaking engagements and consulting jobs. Due to the publicity surrounding this matter, Mees has been unable to obtain gainful employment and is left with virtually no sources of income. Because of all that has transpired since her arrest and prosecution, Mees suffers from posttraumatic stress disorder and dysthymia (chronic depression).

5.  In view of the substantial falsehoods in the criminal complaint, the Manhattan District Attorney's office offered in March 2014 to discontinue the criminal prosecution of Mees by way of an Adjournment in Contemplation of Dismissal (ACD). Eager to avoid a public trial, primarily for financial reasons and to avoid further reputational and emotional harm, Mees consented to the ACD, which was entered by the Honorable Steven Statsinger on March 10, 2014.

6. Even though the Manhattan District Attorney's office acknowledged that there was no ground for her prosecution, Buiter continued his libelous campaign against Mees, repeating his false accusations of stalking and harassment in an elaborate public posting on Facebook of March 10, 2014. On June 26, 2014, Mees filed a complaint against Buiter in the New York Supreme Court, Kings County, on various grounds, including defamation, false arrest, and intentional infliction of emotional distress.

7. Buiter responded on October 6, 2014, with a motion to dismiss to which he attached 1,251 naked photos of Mees, claiming that she had sent him those photos. Dr. Mees saw the naked photos for the very first time on October 13, 2014, when her attorney forwarded her "Exhibit L", which was an email with 4 PDF-files attached thereto containing 1,251 naked photos. Buiter was, however, unable to produce any of the hundreds of emails to which the photos were purportedly attached. Contrary to what Buiter had represented to the police and prosecution, the 1,251 naked photos were surreptitiously and illegally taken by Buiter himself during his intimate Skype interactions via Skype webcam with Dr. Mees.

8. On October 20, 2014, Mees's attorneys, Ira D. London and Olav Haazen, sent a letter to Assistant District Attorney Samantha Schott to alert her to the fact that the Manhattan District Attorney's office had prosecuted the victim of a felony sex crime while protecting the man who is most likely the perpetrator. Schott did not respond to the letter. On October 28, 2014, London and Haazen sent a letter to Manhattan District Attorney Cyrus Vance, demanding an investigation into the 1,251 naked photos and an immediate dismissal of all the charges in the interest of justice. On November 18, 2014, Mees's attorneys met with Assistant District Attorney

3

Nitin Savur, who is a member of District Attorney Cyrus Vance's Executive Team. He told them that the District Attorney's office declined to investigate the matter.

9. Meanwhile Buiter refused to produce the 1,251 naked photos in JPEG-format of his own volition. Buiter successfully opposed discovery in the Federal Court, the Supreme Court, Kings County, and in the Amsterdam Civil Court. Only after a decision by the U.S. Court of Appeals, Second Circuit, of July 17, 2015, Buiter was ordered to hand over the 1,251 photo files in JPEG-format. After Buiter produced the JPEG files, Dutch counsel for Mees commissioned forensic experts SBV Forensics to examine all 1,251 photographs and all forensically imaged computers that Mees has had in her possession since 2008. Based on this forensic analysis, SBV Forensics concludes that it is a near certainty that Mees did not take the photographs, either with a phone, a standalone camera or a webcam, and that it is beyond a reasonable doubt that she did not send the photographs from any of her devices (the SBV Forensics report is attached as Exhibit B).

10. Specifically, SBV Forensics concludes with respect to the photo files:

    a. Because the photos were produced in both PDF (1,388) and JPEG format (1,251), it can be determined through a comparison of MD5 hash values and "data carving" that Buiter in fact had more unique naked photos of Mees in his possession than he represented (1,288 instead of 1,251). Among both the PDFs and the JPEGs there were also many duplicates (pp. 3-6).

    b. Based on Mees's position in the photos, it is impossible that she manually took the photos herself. Because variations between successive pictures

4

        are mostly minor, which indicates only minimal intervals between them, it is also highly unlikely that the photos were taken in auto mode with a timer (pp. 6, 19-20).

c.    The format of the photos (640 pixels by 480 pixels, for a total of some 300,000 pixels) is inconsistent with the use of a digital camera. Images taken with digital cameras are measured in millions of pixel ("megapixels") (pp. 7, 19).

d.    The pictures' VGA resolution is, however, consistent with the use of either a webcam or a mobile phone camera (pp. 7-8, 19).

e.    The low number of EXIF metadata captured on the JPEG files is inconsistent, however, with the photos having been taken with a mobile phone. It is also inconsistent with the use of a digital camera. Both would have registered additional metadata, such as various characteristics of the camera lens or the brand and type of the phone used (pp. 8, 19).

f.    The EXIF metadata that was found, e.g. data indicating that no flash was used, excludes the possibility that the photos were stills derived from video footage (which does not register any information on the use of a flash) (pp. 8, 19).

g.    The depth and camera angles of the photos are also consistent with the use of a webcam (pp. 7, 19).

h.    The picture files are consistent with still images taken during a live video chat on a platform like Skype. If the screenshots were taken on an Apple

computer, however, such as used by Mees, Apple's operating system (Mac OS X) would have saved them as PNG files—not, as is the case here, as JPEGs (pp. 8-9, 19).

i. Photo Booth, which is a standard Apple application does save photos in JPEG format but the photos' metadata is inconsistent with the use of Photo Booth because such use would have automatically registered the application's name as an IPTC field in each file (p. 9).

j. The photos have a resolution of 96 dpi, which is also not consistent with the use of Apple computers or digital cameras, which automatically generate images with resolution of 72 dpi. The photos' 96 dpi resolution is, however, consistent with the use of a Windows computer (which Mees believes Buiter uses exclusively) (p. 10).

k. There is no indication on any of Mees's Apple computers that any metadata or file characteristics were manually manipulated. Manual editing would require opening, editing and re-saving each of the 1,288 unique picture files individually and would therefore be extremely time-consuming. No Windows programs and no virtualization software were found on any of Mees's laptops (pp. 10, 19).

11. With respect to Buiter's possession of the photos but not the emails by which they were supposedly transmitted, SVB Forensics concludes:

a. It is virtually certain that the photos were never on Mees's laptops. If they were, it would have been possible to retrieve or restore the files

6

      forensically. It is nearly impossible and technically very complex to individually remove files in a manner that guarantees the user that the files are forever irretrievable (pp. 11-15, 19-20).

b. Secure removal of email files in a way that makes retrieval impossible also requires highly specialized knowledge of the workings of the Mac OS X operating system. No emails of the kind Buiter claims existed were found, however, on Mees's computers (pp. 13-15, 20).

c. The "rule" that Buiter claims explains why the photos were saved, while the emails purportedly attaching them were deleted, would in principle have saved identical pictures only once, overwriting prior versions of the same attachment or make. The presence of duplicates of photos in Buiter's files is inconsistent with such workings of the rule (pp. 17-18).

d. The rule is also inconsistent with the fact that a different picture ("moi.jpg"), which the parties agree Mees did send Buiter (more than once) and for which Buiter can produce the emails to which it was attached, was not saved in the same attachment folder, and that yet a third picture Mees sent ("plaatje.jpg") was also not saved there (p. 18).

e. Taking into consideration that the file names contain only a sequential number as well as the fact that numbering did not restart at the first picture from a new session, it is a near certainty that Buiter changed the file names before handing them to the police and the Manhattan District Attorney's office.

12. Accordingly, Buiter's excuse for his possession of photos of Mees's private parts is not supported by forensics. This leaves no other reasonable explanation than that Buiter took the photos. The forensic investigation also corroborates Mees's account that their intimate interactions via Skype were never meant to be recorded, that she was unaware of the recordings, and that she never consented to being recorded.

13. Buiter alleged in the Dutch proceedings that he 'accidentally' saved the 1,251 naked photos on the hard-drive of his computer in London. Buiter also alleged that he threw that computer away in December 2012 while still in London and that he destroyed the external hard-drive on which the naked photos were saved in December 2013. This course of action, however, is not compatible with the finding of the 1,251 naked photos in Buiter's American cloud service, of which Buiter's Dutch counsel, Jeroen Kortmann, informed the Amsterdam Civil Court in a letter of November 17, 2015.

14. The only explanation for the 1,251 naked photos ending up in Buiter's American cloud service is that he saved the photos on his mobile devices, which cannot happen accidentally. The 1,251 naked photos were thus also not accidentally saved on Buiter's computer in London. Since Buiter did not move to the United States and thus did not start using his American cloud service until April 2013, the finding of the naked photos in his cloud service shows that Buiter held on to the pictures on his personal devices until well into 2013, while he was reporting Mees to the police (Buiter's provider only automatically backs up mobile devices). That means that Buiter was on the one hand complaining to the police about Mees's advances and nudity, while on the other hand enjoying her nudity on his handheld devices.

15. Buiter has so far refused to hand over the 1,251 photo files in PNG-format that were found in his cloud service even though his Dutch counsel promised the Amsterdam Civil Court in a letter of November 17, 2015, that the PNG-files would be handed over to Mees's attorneys. The PNG-files, presumably, contain information as to when and by whom the 1,251 naked photos were made. If it is clear when the photos were made, the information can easily be compared with the Skype chats Buiter and Mees had. In case the timing of the photo files matches the Skype chats, it is 100 percent certain that Buiter recorded Mees. After all, the 1,251 naked photos were taken on a Windows computer while Mees used a white MacBook computer, on which the Skype chats were locally stored.

16. In an affidavit of August 11, 2015, filed in the Supreme Court, Kings County, Buiter categorically denies that he and Mees "ever had a Skype session in which either of us disrobed in any way or engaged in any kind of sexual act". See Exhibit C. This statement can easily be proven to be false with a 300-page record of Skype sessions between Buiter and Mees from November 2010 through July 2012. Why would Buiter make false statements under oath about the fact that he and Mees frequently engaged in intimate acts via Skype webcam if not to obscure the fact that he surreptitiously recorded Mees?

17. The only reason Buiter's computer and external hard drive on which the 1,251 photo files were originally saved are no longer available for forensic examination to determine if it was used to take the naked photos of Mees, is because Buiter threw them away by December 2013. In other words, Buiter destroyed key evidence pending the Manhattan District Attorney's criminal prosecution of Mees, in which the alleged sending of naked photos was a significant issue for trial. Mees should not be prejudiced because Buiter willingly and knowingly destroyed

his computer and external hard drive in a clear act of spoliation. Therefore, an adverse inference against Buiter with respect to the 1,251 naked photos is more than justified.

18. The unlawful surveillance of private parts is a felony sex crime pursuant to New York Penal Law § 250.45 and can make the offender not only liable for jail time, but also for registration on the sex offender registry. Under settled case law, Mees has a reasonable expectation of privacy during consensual sexual encounters. "When a person knowingly undresses and engages in sexual relations with another person, he or she should be able to do so with the reasonable expectation that his or her actions are limited to that particular time and place and that his or her naked body and/or sexual acts will not be memorialized and/or repeatedly viewed at any time by the other person present or by anyone else with whom that person decides to share the recordings (*see Wallace v. State*, 961 NE2d 529, 533 [Ind Ct App 2012]; *Lewis v. LeGrow*, 258 Mich App 175, 188-189, 670 NW2d 675, 684-685 [Mich Ct App 2003])." *New York v. Piznarski*, N.Y. Slip Op. 08157 (3rd Dept., 2013).

19. It has been extraordinarily distressing for Mees to know that Buiter recorded their intimate love play via Skype webcam and held onto the naked photos on his mobile devices while he was reporting her in July 2013 to the New York Police Department and the Manhattan District Attorney's office. Buiter's actions have caused Mees anxiety, nightmares, nausea and vomiting, abnormal weight loss, emotional numbness, difficulty concentrating, and loss of interest in life. Buiter's actions have also caused her intense feelings of shame, mistrust, and betrayal.

20. Buiter not only used the 1,251 naked photos to incite Mees's arrest and prosecution, he and his lawyers also threatened Mees with publication unless she would

discontinue all legal proceedings against Buiter here and abroad and sign a Non-Disclosure Agreement. These threats of publication continued even after the Supreme Court, Kings County, on November 20, 2014, ordered the civil case to be treated as a matrimonial case. The Amsterdam Civil Court deemed the threat of publication by Buiter and his lawyers, Tim Keane, Adrienne Koch, and Jeroen Kortmann, so credible that on November 19, 2015, the Court issued a gag order prohibiting Buiter, his wife, and his lawyers to publicize the 1,251 naked photos or their existence.

21. On January 26, 2015, Mees's attorneys filed a request under the Freedom of Information Law (FOIL) with the Manhattan District Attorney's office for a copy of all official records and documents in her case file. On November 17, 2015, Mees received the FOIL production, including about 1200 naked photos of her (the photos are available for in camera review). The naked photos were never disclosed during plea discussions even though a layman can see that these are screenshots and not "selfies" (Mees's hands are visibly otherwise occupied in each single frame).

22. It's not like the District Attorney's office could not have known that Buiter and Mees frequently engaged in sexual acts via webcam. On the contrary, the Omnibus Motion that Mees filed in this Court on October 10, 2014, specifically states that Buiter and Mees, in addition to their monthly romantic encounter dates, 'spent dozens of hours each year on Skype' and that 'Buiter would regularly masturbate in front of the camera, using the online video-service.' See Omnibus Motion, ¶9; and Reply Affirmation in Support of Omnibus Motion, ¶16h. The Omnibus Motion also states that Mees sent Buiter only one selfie and that 'she did not send him any other selfies even though Buiter repeatedly asked her to'. See Omnibus Motion ¶2.

23. The naked photos constitute exculpatory evidence that the District Attorney's office should have disclosed during plea discussions (*Brady v. State of Maryland*, 373 U.S. 83 S. Ct. 1194; 10 L. Ed. 2d 215; 1963). Even after the Manhattan District Attorney's office had been put on notice by letter of October 20, 2014, that any naked photos of Mees in the criminal file were the product of unlawful surveillance and, therefore, exculpatory, the Manhattan District Attorney's office refused to share the photo files with Mees. The District Attorney's office made Mees file a FOIL request instead to which the District Attorney's office only responded 11 months later. The Freedom of Information Law §89(3)(a) states that a government entity has only five business days to respond to a FOIL request (which may be extended to 20 business days). The Manhattan District Attorney's office thus actively obstructed Mees's quest for justice.

24. The report by SBV Forensics shows that Buiter made false representations to the police and the Manhattan District Attorney's office when he told them that Mees had sent him naked photos of herself and that her actions severely annoyed and alarmed Buiter. In the Information of August 5, 2013, Buiter claimed he had broken off all relations with Mees on November 7, 2009, and that she had harassed him ever since. As Buiter secretly made screenshots of Mees's private parts in 2011 and 2012, it is safe to conclude that the romantic relationship between Buiter and Mees lasted at least three years longer than Buiter had represented to the prosecution. The 1,251 naked photos are also impeachment evidence, that is, they go to the credibility of Buiter as a witness. The 1,251 naked photos show that Buiter has no qualms about lying under oath to the police, the prosecution, and the courts, that he has no qualms about tampering with and fabricating evidence, and that he also has no qualms about extorting Mees into giving up all her legal claims against him.

25. The Manhattan District Attorneys' office showed gross negligence when it accepted the 1,251 nude photos from Buiter as evidence of stalking and harassment without any further questions asked. For a Special Victims Bureau that prides itself on being the best in the country, it is shockingly amateurish. Buiter has stated in the related civil litigation in the Netherlands that he handed Assistant District Attorney Samantha Schott hard copies of the photos and a USB-stick containing one pdf-file with all photo files combined. Why would a victim of stalking – instead of simply handing over the original photo files – go to such great lengths to manually combine 1,251 purportedly alarming photos in one pdf-file if not to disguise the metadata of the individual photo files? That fact alone should have set off alarm bells.

26. Even though Buiter was unable to produce any of the 'hundreds of emails' to which the 1,251 photos were purportedly attached, the Manhattan District Attorney's office did not even ask Buiter for the original photo files. At the time, Buiter's external hard drive was still available for forensic examination. The fact that Assistant District Attorneys Samantha Schott and Jeanine Launay never mentioned the 1200 naked photos during the plea discussions with Mees's attorneys, suggests that they were well aware that the photos were exculpatory but chose not to investigate and not to alert Mees or her lawyers to their existence. Schott and Launay must have realized that Mees would never have accepted the ACD as an outcome had she known that the criminal file included 1200 unlawful surveillance images of her.

27. In a letter of May 8, 2016, to District Attorney Cyrus Vance, Mees's attorneys reiterated their request for an investigation into Buiter's possession of the 1,251 naked photos based on the Forensic Report. On July 5, 2016, they met with Assistant District Attorneys Audrey Moore, chief of the Special Victims Bureau, and Vanessa Puzio. Moore, who is also a

member of District Attorney Cyrus Vance's Executive Team, told Mees's attorneys that the District Attorney's office is not able to prosecute Buiter because he destroyed the computer and external hard drive on which the images had originally been saved. It would, therefore, be impossible to prove beyond a reasonable doubt that Buiter took the photos. At the same time, Moore declined to subpoena the 1,251 photo files in PNG-format that have been found in Buiter's cloud service and most likely contain information as to when and by whom the photos were taken, ostensibly because the report by SBV Forensics does not amount to probable cause. It reinforces the impression that District Attorney Cyrus Vance and his team are simply protecting a powerful Wall Street banker and the bank he works for, Citigroup.

28.   Dr. Mees now moves this Court to undo the Adjournment in Contemplation of Dismissal; she must either be acquitted at trial or the charges against her must be dismissed in the interest of justice.

WHEREFORE, for all the above-stated reasons, and for those further reasons stated in the accompanying memorandum of law, the defendant's motion should be granted in all respects.


Dated:     New York, New York
           January 24, 2018

                                                    Respectfully Submitted,

                                                    _____
                                                    Joshua D. Kirshner, Esq.

14

```
CRIMINAL COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: PART D
-----------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,
                                                    MEMORANDUM OF LAW
                -against-                           2013NY050589

HELEEN MEES,

                         Defendant.
-----------------------------------------------------------------X
```

**Statement of Relevant Facts**

The facts of this case, insofar as pertinent to the within motion, are contained in the accompanying affirmation of Joshua D. Kirshner, Esq., duly affirmed on the 24th day of January, 2018 ("Affirmation") and the exhibits appended thereto, all of which are incorporated herein and made a part hereof.

After a sealing order issues, C.P.L. 160.50(1)(d)(ii) authorizes a motion by any law enforcement agency, but authorizes unsealing only if justice requires release of the documents to the very agency making the motion. We see no reason the District Attorney should not be directed to do so under these circumstances as clearly justice requires it.

Additionally, while the granting of an ACD is not a conviction or an admission of guilt, it also is not a determination on the merits or an acquittal. CPL Section 170.55(8); *Matter of Marie B.*, 62 N.Y.2d 352, 477 N.Y.S.2d 87, 465 N.E.2d 807 (1984); *Malanga v. Sears, Roebuck and Co.*, 109 A.D.2d 1054, 487 N.Y.S.2d 194 (4th Dept.), affd., 65 N.Y.2d 1009, 494 N.Y.S.2d 302, 484 N.E.2d 665 (1985). Thus, notwithstanding the statutory provision that "no person shall suffer any disability or forfeiture" as a result of the ACD (CPL Section 170.55[8] ), a plaintiff,

for example, in a malicious prosecution action cannot establish that the criminal action was terminated in his favor, a necessary element of a cause of action for malicious prosecution. *Hollender v. Trump Village Cooperative*, Inc., 58 N.Y.2d 420, 425–26, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983); *Lancaster v. Kindor*, 98 A.D.2d 300, 308, 471 N.Y.S.2d 573 (1st Dept.1984), affd., 65 N.Y.2d 804, 493 N.Y.S.2d 127, 482 N.E.2d 923 (1985).

Thus, there is a procedural mechanism available and ample reason for the Court to intervene and ensure that justice is carried out in this case.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court direct the District Attorney unseal this matter and reopen the case against Mees.

Dated:   New York, New York
         January 24, 2018

                                        Respectfully Submitted,

                                        *[signature]*
                                        Joshua D. Kirshner, Esq.