# EXHIBIT N



# State of New York
# Court of Appeals

BEFORE:  HON. EUGENE M. FAHEY, Associate Judge

---

THE PEOPLE OF THE STATE OF NEW YORK,

                                        Respondent,

                    -against-

HELEEN MEES,

                                        Appellant.

**ORDER
DISMISSING
LEAVE**

Docket No. 2013NY050589

---

    Appellant having applied for leave to appeal to this Court pursuant to Criminal Procedure Law (CPL) § 460.20 from an order in the above-captioned case;*

    UPON the papers filed and due deliberation, it is

    ORDERED that the application is dismissed because the order sought to be appealed from is not appealable under CPL 450.90 (1).

Dated:  JUN 1 1 2019

---
                                Associate Judge

*Description of Order: Order of the Appellate Term, First Department, dated March 7, 2019, denying defendant's motion for leave to appeal from an order of the Criminal Court of the City of New York, New York County, dated January 25, 2019.

Dr. Heleen Mees
The Sweeney Building
30 Main Street, Apt. 11H
Brooklyn, New York 11201
heleen@heleenmees.com
917-325-5877

April 15, 2019

Chief Judge Janet DiFiore
Attn: John P. Asiello, Clerk of the Court
New York State Court of Appeals
20 Eagle Street
Albany, NY 12207

Re:   LETTER APPLICATION FOR LEAVE TO APPEAL IN A
CRIMINAL CASE PURSUANT TO CPL 460.20

*People v. Heleen Mees* (Index No. 2013NY050589)

Dear Chief Judge DiFiore:

The above-named defendant hereby applies for the issuance of a certificate pursuant to New York

CPL § 460.20 certifying that there is a question of law in the above-entitled proceeding which

ought to be reviewed by the Court of Appeals and granting leave to appeal to said court from an

order of the Appellate Term, First Department, entered on April 7, 2019, denying defendant's

motion for leave to appeal to set aside an order of the Manhattan Criminal Court of January 25,

2019, which denied defendant's application for a writ of error *coram nobis* on the ground of

ineffective assistance or wrongful deprivation of counsel. An application for this relief has not

been made to a Justice of the Appellate Division.

An application for this relief has not been made to a Justice of the Appellate Division.

Oral argument is requested

There were no co-defendants below

1

<u>The issues sought to be raised on appeal</u>:

Is writ of error *coram nobis* relief available for a defendant whose defense counsel failed to move the criminal court to undo the ACD in a timely matter (before the ACD expired) even though the defendant asked him to?

Additional considerations: (i) the ACD is a <u>conviction</u> and <u>admission of guilt</u> under federal statutes; (ii) the Manhattan District Attorney's office deliberately <u>thwarted</u> the defendant by telling her that the ACD could still be undone after it was expired, and (iii) the Manhattan District Attorney's office <u>purposely suppressed material exculpatory evidence that goes to the defendant's guilt or punishment</u>.

## I.     QUESTION OF LAW

My name is Heleen Mees. I am a *pro se* defendant. On January 25, 2019, Judge Statsinger of the Manhattan Criminal Court denied my amended petition for writ of *coram nobis* relief to vacate the Adjournment in Contemplation of Dismissal pursuant to CPL § 170.55(1) entered in this case on March 10, 2014, because an ACD is not a conviction under New York law even though the ACD is considered a conviction and an admission of guilt under federal statutes. *See* Exhibit A. On March 7, 2019, the Appellate Term, First Department, denied my motion for leave to appeal pursuant to CPL § 450.15. *See* Exhibit B.

I am entitled to writ of *coram nobis* relief because my counsel, Ira D. London Esq., declined to move the Manhattan Criminal Court to vacate the ACD before it expired despite my request that he do so. *See* Exhibit C, ¶3. Per the Court of Appeals, when defense counsel disregards client's timely request to file a notice of appeal, defense counsel "acts in a manner that is professionally unreasonable." *See People v. Syville*, 15 N.Y.3d 391, 397 (N.Y. 2010).

2

I am also entitled to writ of *coram nobis* relief because my counsel did not inform me of any adverse collateral consequences of an ACD respecting future work permits and border control. *See* Exhibit C, ¶4. This is a serious omission by counsel. *See Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298 (E.D.N.Y. 2012) (holding that plaintiff's state defense counsel's omission to inform plaintiff of the adverse collateral consequences of an ACD respecting future employment constitutes a serious omission). In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the U.S. Supreme Court held that a constitutionally competent counsel would have advised the defendant about the collateral consequences of a plea.

The right to effective assistance of counsel settled under both the Federal and State Constitution. *See People v. Bachert*, 69 N.Y.2d 593 (N.Y. 1987). The Court of Appeals recognized the writ of *coram nobis* as the best available remedy under all the circumstances. The Court of Appeals held that inasmuch as the Criminal Procedure Law failed to anticipate and to provide for a particular situation, the remedy lies in the invocation and determination of the traditional writ of *coram nobis*. *Id.*. The Court of Appeals has not hesitated to expand the scope of *coram nobis* when necessary to afford the defendant a remedy in those cases in which no other avenue of judicial relief appeared available. *See People v. Hairston,* 10 N.Y.2d 92, 93-94.

This Court should also consider that the People deliberately thwarted me by running out the clock on me and telling my counsel that the ACD could still be undone after it had expired. *See People v. Johnson*, 69 NY2d 339, 341-342 (N.Y. 1987) (holding that defendant's timely efforts to appeal were thwarted by the State wherefore the People cannot rely upon a subsequently imposed time limitation to prevent a defendant from obtaining appellate review of his conviction). The appellate courts have not yet answered the question whether writ of *coram nobis* relief is available to a defendant who accepted an ACD.

I want the ACD to be vacated because the Manhattan District Attorney obtained the ACD in violation of my rights under the Constitution of the State of New York and the Constitution of the United States by suppressing material exculpatory evidence that goes to my guilt or innocence or punishment. A bedrock principle of U.S. and New York law is that the prosecutor must disclose evidence or information that would prove the innocence of the defendant. *See Brady v. State of Maryland*, 373 U.S. 83 S. Ct. 1194; 10 L. Ed. 2d 215; 1963. The suppression of exculpatory evidence is a violation of a defendant's constitutional rights. The U.S. Supreme Court has held that Brady disclosures must also be made at the pre-plea stage. *See United States v. Ruiz*, 536 U.S. 622 (2002)). The exculpatory evidence consists of 1,251 unlawful surveillance images that were used to incite my arrest. While a *Brady*-violation does not require the willful suppression of material exculpatory evidence, the facts in the instant case show that the Manhattan District Attorney's office willfully suppressed the 1,251 unlawful surveillance images, which makes the matter even more egregious. *See People v. Vilardi*, 555 N.E.2d 915, 918 (N.Y. 1990).

## II.    RELEVANT FACTS

On July 1, 2013, I was arrested on various charges that stem from a complaint by fellow economics professor and chief economist of Citigroup and lover, Willem H. Buiter ("Buiter"). At the time, I was an economics professor at the prestigious New York University, a political commentator, author of five books, and a public figure in my country of origin. Buiter incited the police to arrest me and the Manhattan District Attorney's office to prosecute me, by making a series of false statements to the police, including that I harassed him by "sending him naked pictures of [myself]" that purportedly caused him severe annoyance and alarm. *See* Exhibit D and E.

Because of Buiter's false allegations, I spent four days in jail at Rikers Island and the matter was highly publicized all over the world. Following my arrest, I lost my job as a professor at New

York University, all my columns in international magazines and newspapers, as well as my speaking engagements and consulting jobs. Due to the publicity surrounding this matter, I have been unable to obtain gainful employment and am left with virtually no sources of income more than five years after my arrest. Because of all that has transpired since my arrest and prosecution, I suffer from posttraumatic stress disorder and dysthymia (chronic depression).

In view of the substantial falsehoods in the superseding accusatory instrument of August 5, 2013, the Manhattan District Attorney's office offered in March 2014 to discontinue my criminal prosecution by way of an Adjournment in Contemplation of Dismissal. Unaware of the trove of unlawful surveillance images in the criminal file, I consented to the ACD, which was entered by the Honorable Steven Statsinger on March 10, 2014.

Even though the Manhattan District Attorney's office acknowledged that there was no ground for my prosecution, Buiter continued his libelous campaign against me, repeating his false accusations of stalking and harassment in an elaborate public posting on Facebook of March 10, 2014. On June 26, 2014, I filed a complaint against Buiter in the New York Supreme Court, Kings County, on various grounds, including defamation, false arrest, and intentional infliction of emotional distress.

Buiter responded in October 2014 with a motion to dismiss to which he attached 1,251 nude photos of me, claiming that I had sent him those photos. I saw the nude photos for the very first time on October 10, 2014, when my counsel forwarded me "Exhibit L", which was an email with 4 PDF-files attached thereto containing 1,251 nude photos. Contrary to what Buiter had represented to the police and prosecution, the 1,251 nude photos were surreptitiously and illegally taken by Buiter himself during his intimate Skype interactions via Skype webcam with me.

Following a decision by the U.S. Court of Appeals (*Mees v. Buiter*, No. 14-1866 (2d Cir. 2015), the U.S. District Court for the Southern District of New York ordered Buiter on October 13, 2015, to produce the 1,251 in JPEG-files, which were at the time presented to us as the original photo files. My Dutch counsel then commissioned forensic experts SBV Forensics to examine all 1,251 photographs and all forensically imaged computers that I have had in my possession since 2008. Based on the forensic analysis, SBV Forensics concludes that it is a near certainty that I did not take the photographs, either with a phone, a standalone camera or a webcam, and that it is beyond a reasonable doubt that I did not send the photographs from any of my devices. The forensic investigation also corroborates my account that our intimate interactions via Skype were never meant to be recorded, that I was unaware of the recordings, and that I never consented to being recorded.

The 1,251 photos show me nude or partially dressed. There are hundreds of photos in the criminal file in which I am wearing a floral print dress that I bought on April 6, 2011. All the photos in which I am wearing said floral print dress were taken on or after April 6, 2011. Buiter not only actively participated in Skype webcam calls in which we would both undress on or after April 6, 2011, he also made extensive records of it for his own personal pleasure, yielding no less than 1,251 unlawful surveillance images. Since no one can be forced to undergo the viewing of sexual activity through Skype webcam, let alone make extensive records of it, the romantic relationship between Buiter and me lasted at least until April 6, 2011. The accusatory instrument of August 5, 2013, alleges that the acts of stalking, harassment, and menacing occurred from November 7, 2009 until July 1, 2013. The 1,251 nude photos show that I am innocent of harassing, stalking, and menacing Buiter at the very least until April 6, 2011. The extent of the stalking, harassment, and menacing, if it occurred at all, is an important factor to be weighed for punishment.

The accusatory instrument of August 5, 2013, accuses me of sending Buiter 55 'sexually explicit' emails. This must be a reference to the nude photos that Buiter claims I sent him because I never sent Buiter 55 sexually explicit emails. The report by SBV Forensics shows that I did not make nor sent Buiter the 1,251 nude photos show and thus that I am innocent of the alleged sending of 55 'sexually explicit' emails. The 1,251 unlawful surveillance images are thus material to my guilt or innocence or punishment.

If Buiter had indeed felt annoyed, alarmed or fearful of me, my nudity, or any of my communications, it stands to reason that Buiter would have destroyed the 1,251 nude photos of me, which he should never have taken in the first place. But not only did Buiter not destroy the 1,251 nude photos, he did the opposite. Buiter saved the 1,251 nude photos on his handheld devices and stored them in his Verizon cloud service so that he could access them anywhere in the world. Buiter's actions do not comport with genuine feelings of annoyance, alarm, and fear, which are a *sine qua non* for the charges of stalking, harassment, and menacing. The 1,251 unlawful surveillance images are thus material to my guilt or innocence or to my punishment.

The First Department held that a guilty plea can be overturned because of pre-plea *Brady*-violations. In addition to the threshold *Brady*-analysis, i.e., whether the evidence is material to the issue of guilt or punishment, the Court adopted a standard that also requires an analysis of whether the information, if disclosed, would have materially affected the defendant's decision to plead guilty. *See People v. Martin*, 240 AD2d 5 (1st Dept., 1998).

I would never have accepted the ACD as an outcome had I known of the trove of unlawful surveillance images in the criminal file. With other words, I would not have accepted the ACD if I had known that I was the victim of the felony sex crime of unlawful surveillance in the second degree (1,251 counts) and the perpetrator used the spoils of his crime to have me arrested. When I

found out on October 10, 2014, that 1,251 unlawful surveillance images were used for my arrest, my counsel sent a letter to District Attorney Cyrus Vance on October 27, 2014, to demand an investigation and drop all the charges that were still pending in the context of the ACD. The Manhattan District Attorney's office agreed to a meeting on November 26, 2014.

After meeting with my counsel on November 26, 2014, the Manhattan District Attorney's office waited almost three months, i.e., until February 10, 2015, to inform me that the District Attorney's office was not prepared to dismiss the charges in the interest of justice. During those three months, the District Attorney's office did literally <u>nothing</u> to investigate the photos nor did it interrogate the complaining witness, Buiter.

Moreover, the Manhattan District Attorney's office assured my counsel that I could come back if I had more evidence and that the case could still be reopened once it was sealed. *See* Exhibit F. The Manhattan District Attorney's office also refused to give me the 1,251 photo files that were part of the criminal file even after I informed them that the photos constituted material exculpatory evidence that goes to my guilt or innocence and punishment. The Manhattan District Attorney's office made me file a FOIL request by which it only complied on December 2, 2015, while the ACD expired on March 10, 2015. The FOIL production included about 1,200 unlawful surveillance images of me.

When the Manhattan District Attorney's office informed me on February 10, 2015, that it would not dismiss the charges, I asked my defense counsel, Ira D. London Esq., the following day to move the Manhattan Criminal Court to vacate the ACD before it expired, which he declined to do. *See* Exhibit B, ¶3. At the time, I was seriously traumatized and did not have the wherewithal to retain another defense counsel or move the court by myself.

### III.     MY ARREST AND PROSECUTION ARE NOT A NULLITY

Pursuant to CPL § 170.55(8), "Upon granting [an ACD], the arrest and prosecution shall be deemed a nullity." As the wording of the ACD statute indicates, the nullity of my arrest and prosecution is a legal fiction and not an actuality. According to CPL § 160.50, the records can still be made available to (ii) a law enforcement agency upon ex parte motion in any superior court, or in any district court, city court or the criminal court of the city of New York provided that such court sealed the record, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it. Since the records can be made available to a law enforcement agency upon ex parte motion, my arrest and prosecution are not a nullity.

Federal law enforcement agencies do not deem my arrest and prosecution a nullity. Each time I enter the United States, I must go through secondary inspection, which means that I am being detained at the U.S. border on a monthly basis. According to U.S. Customs and Border Control, I will have to go through secondary inspection until I reach the age of 95. I have contacted the office in Albany that is charged with the sealing of criminal records in New York State, and they say that my record is sealed. I have contacted the Department of Homeland Security but they say nothing will change as long as the ACD is not vacated. The record is thus only sealed under New York law, not under U.S. law.

In January 2016, almost a year after my ACD had expired, I had great difficulty renewing my journalist visa even though I had been a legal resident of the United States for 16 years. I never had any difficulty renewing my U.S. visa before. The officers of the U.S. Consulate-General in Amsterdam wanted to see all the documents in the criminal file even though my defense counsel, Ira D. London Esq., affirmed that the arrest and prosecution should be deemed a nullity. Only after handing all the documents and coming in for an interview with the U.S. consul-general in

Amsterdam, I got a new visa but it has a special stamp saying CLASS RECORD REVIEWED – NO INELEGIBILITY REVEALED. This was still under the Obama administration. The new administration may well decide differently.

Leading legal scholars say that the New York ACD can be considered a "conviction" for the purpose of U.S. immigration law. Under the Immigration and Nationality Act (INA) Section 101(a)(48)(A), a conviction occurs when:

1) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; or,

2) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

While I did not enter a guilty plea, the fact that the Manhattan Criminal Court imposed 12 mandatory therapy sessions can be interpreted as a conviction and an admission of guilt for the purpose of INA Section 101(a)(48)(A)(2).

The ACD is also a conviction and an admission of guilt under 12 U.S.C. § 1829. *See Smith v. Bank of Am. Corp.* (holding that Bank of America in New York correctly withdrew an offer of employment after an FBI-background check revealed that plaintiff had been arrested and charged with petit larceny even though the case had been discontinued by way of an ACD). The fact that CPL § 170.55(8) deems my arrest and prosecution a nullity is immaterial as the ACD is a conviction and an admission of guilt under federal statutes. This Court must ensure my rights both under New York law as well as the law of the United States.

## IV.  SUPPRESSION OF MATERIAL EXCULPATORY EVIDENCE

Chief Justice Janet DiFiore last year introduced a rule requiring judges to order prosecutors to comb their files and disclose all evidence favorable to the defense at least 30 days before major criminal trials. Prosecutors who ignore the court order may face contempt charges. The suppression of evidence by the prosecution is endemic in New York. A report by the New York Bar Association found that it is the leading cause of wrongful convictions.

Only 5 percent of criminal cases proceed to trial. Most cases end in a plea deal. To ensure that justice is also done in cases that end in a plea deal, this Court should not tolerate the suppression of material exculpatory evidence at the plea-bargaining stage, as happened in my case. If the Court gives the District Attorney's office a pass, prosecutors will know that they can get away with prosecutorial misconduct.

During plea discussions, the Manhattan District Attorney's office never mentioned the 1,251 nude photos in the criminal file, which is remarkable because Buiter handed the prosecution hard copies of the photos, making them difficult to overlook given their explicit content. Moreover, I specifically denied on the motion to dismiss that I sent Buiter nude photos of myself.

The Manhattan District Attorney's office continued to suppress the material exculpatory evidence even after my counsel sent a letter to District Attorney Cyrus Vance on October 27, 2014, informing him that any nude photos in the criminal file were the product of unlawful surveillance and therefore exculpatory. Instead of handing us the photo files, the Manhattan District Attorney made us file a FOIL-request by which it only complied 11 months later when the ACD had expired and my case was dismissed. District Attorney Cyrus Vance thus willfully suppressed evidence that is material to my guilt or innocence or punishment. The prosecution's obligation to disclose *Brady* evidence does not end with the adjournment of a case in contemplation of dismissal. *See People v.*

*Wilson*, NY Slip Op 02106 (4th Dept., 2018) (rejecting the People's contention that the defendant forfeited his right to raise the alleged *Brady* violation by pleading guilty).

## V.    I AM WILLING TO WAIVE MALICIOUS PROSECUTION CLAIM

I am willing to waive any malicious prosecution claim that may arise. I want to apply for the LL.M. program at several law schools such as Harvard, Yale, Columbia, and NYU. If the ACD is vacated and the charges dismissed pursuant to CPL § 210.40, I can begin with a clean slate.

## VI.   CONCLUSION

My arrest and prosecution in 2013 have led to the destruction of my career and social exclusion. The ACD was obtained in violation of my rights as a defendant under the Constitution of the State of New York and the Constitution of the United States. Not only did the Manhattan District Attorney's office suppress material exculpatory evidence that goes to my guilt or innocence or punishment, but my defense counsel also failed to move the Manhattan Criminal Court in a timely manner to vacate the ACD despite my request.

I understand that this Court is hesitant to reverse an ACD. But the ACD was designed to provide a shield against the criminal stigma that would otherwise attach to a defendant. The ACD is not a rug for the Manhattan District Attorney's office to swipe its prosecutorial lapses and misconduct under.

*SIGNATURE PAGE FOLLOWS*

Respectfully submitted,

Dr. Heleen Mees
The Sweeney Building
30 Main Street, Apt. 11H
Brooklyn, New York 11201
heleen@heleenmees.com
(917) 325-5877

*Defendant Pro Se*

cc.:    Manhattan District Attorney's office

# EXHIBIT A

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART JURY 5
-----------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

          -against-                        DECISION AND ORDER
                                         DOCKET NO.: 2013NY050589
HELEEN MEES,

          Defendant.
-----------------------------------------------------------------------X
STEVEN M. STATSINGER, J.

       Defendant's second petition for a writ of error coram nobis is denied. A prerequisite to the availability of this remedy is that a conviction has been entered against the defendant. People v. Dionisiou, 24 Misc.2d 338, 340 (Court of General Sessions, New York County 1960); People v. King, 2 Misc.2d 187, 188 (County Court, Sullivan County 1954).

       Here, a conviction was not entered against the defendant. A conviction "means the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument." CPL §1.20(13). An ACD is not a conviction or an admission of guilt. CPL §170.55(8). As such, coram nobis relief is unavailable in this case.

       Even assuming, arguendo, that the defendant is correct in her assertion that an ACD might be considered a conviction for federal immigration purposes, that is of no consequence to this motion. The State of New York State does not consider it a conviction.

This constitutes the Decision and Order of the Court.

Dated: January 25, 2019
      New York, New York

                                    Steven M. Statsinger
                                    Judge of the Criminal Court

# EXHIBIT B

At an Appellate Term of the Supreme Court, First Department
Held at the Court House, Borough of Manhattan,
City of New York, on the ⎤ **14** day of March 2019

Present: - Hon.  Martin Shulman, P.J.,

       "     Matthew Cooper,

       "     Carol Edmead,  Justices

COPY

---

People of the State of New York
       Respondent
           -against-
Heleen Mees
       Defendant-Appellant

N.Y. County Clerk's # 570109/19
Docket # 2013NY050589

**ORDER ON MOTION**

---

The above named defendant-appellant having moved, by notice of motion returnable February 25, 2019, for an order for leave to appeal from the January 25, 2019 order (Statsinger, J.), and for other relief.

Now upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon,

**It is ordered** that the defendant-appellant's motion seeking for leave to appeal from the January 25, 2019 order is denied.

                         Enter,

                         Justice, Appellate Term
                         Supreme Court, First Department
                         **MARTIN SHULMAN, P.J.**

# EXHIBIT C

CRIMINAL COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: PART D
------------------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

                                                    **AFFIRMATION OF**
                                                    **IRA D. LONDON ESQ.**

                    -against-
                                                    NO. 2013NY050589


                    HELEEN MEES,
                                          Defendant.
------------------------------------------------------------------------------x


       IRA D. LONDON, an attorney duly admitted to practice law before the Courts of this

State, affirms as follows pursuant to CPLR 2106:

       1.      I represented the defendant, Heleen Mees ("Mees"), in the above-referenced

matter. On March 10, 2014, I secured an Adjournment in Contemplation of Dismissal ("ACD")

for her. The case was set for dismissal on March 9, 2015.

       2.      On October 13, 2014, my client discovered that the complaining witness, Willem

H. Buiter, had used 1,251 unlawful surveillance images of my client to secure her arrest and

prosecution. Ever since the finding of the 1,251 unlawful surveillance images, Mees has insisted

that she wanted the ACD to be undone and go to trial in case the Manhattan District Attorney's

office would not dismiss the charges of its own volition. Mees sent me several emails to that

extent, including on November 19, 2014, and January 15, 2015.

       3.      When the Manhattan District Attorney's office informed Mees on February 10,

2015, that the charges would not be dismissed, Mees asked me the following day in a conference

call to move the Court to vacate the ACD but I declined to do so.

4.      In January 2016, Mees, a citizen of the Netherlands, had difficulty renewing her United States work visa even though I had previously told that her record in this case should be sealed. In my experience an ACD has never had any adverse immigration  consequences.


New York, New York

Dated: November 27, 2018

_____

Ira D. London Esq.
Law Offices of London & Robin
99 Park Ave.
Suite 2600
New York, NY 10016

# EXHIBIT D

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

| THE PEOPLE OF THE STATE OF NEW YORK | FAMILY OFFENSE |
| | DEFENDANT/VICTIM |
| -against- | RELATIONSHIP: INTIMATE/ |
| | ACCESS |
| . Heleen Mees (F 41), | **MISDEMEANOR** |
| | ADA Samantha Schott |
| Defendant. | (212) 335-9983 |

Detective Carl Roadarmel, Shield 6632 of the 20th Precinct Detective Squad, states as follows:

*The defendant is charged with:*

| A | 1 | PL 120.50(3) | Stalking in the Third Degree (defendant #1: 1 count) |
| A | 2 | PL 240.30(1)(a) | Aggravated Harassment in the Second Degree (defendant #1: 1 count) |
| B | 3 | PL 120.45(1) | Stalking in the Fourth Degree (defendant #1: 1 count) |
| B | 4 | PL 120.45(2) | Stalking in the Fourth Degree (defendant #1: 1 count) |
| ✓ | 5 | PL 240.26(3) | Harassment in the Second Degree (defendant #1: 1 count) |

At the times and places described below in the County and State of New York, the defendant with intent to harass, annoy and alarm a specific person, intentionally engaged in a course of conduct directed at such person which was likely to cause such person to reasonably fear physical injury and serious physical injury, the commission of a sex offense against, and the kidnapping, unlawful imprisonment and death of such person; the defendant, with intent to harass, annoy, threaten and alarm another person, communicated with a person, anonymously and otherwise, by telephone, by telegraph, and by mail, and by transmitting and delivering any other form of written communication, in a manner likely to cause annoyance and alarm; the defendant intentionally and for no legitimate purpose, engaged in a course of conduct directed at a specific person and knew and reasonably should have known that such conduct was likely to cause reasonable fear of material harm to the physical health, safety and property of such person; the defendant intentionally and for no legitimate purpose, engaged in a course of conduct directed at a specific person and knew and reasonably should have known that such conduct caused material harm to the mental and emotional health of such person, where such conduct consisted of following, telephoning and initiating communication and contact with such person, and the defendant was previously clearly informed to cease that conduct; the defendant, with intent to harass, annoy and alarm another, engaged in a course of conduct which alarmed and seriously

Page 2 of 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

| THE PEOPLE OF THE STATE OF NEW YORK | FAMILY OFFENSE |
| -against- | DEFENDANT/VICTIM RELATIONSHIP: INTIMATE/ ACCESS |
| Heleen Mees (F 41), | MISDEMEANOR |
| Defendant. | ADA Samantha Schott (212) 335-9983 |

annoyed another person and which served no legitimate purpose.

*The factual basis for these charges are as follows:*

I am informed by Willem Buiter, of an address known to the District Attorney's Office, that between July 1, 2011, and July 1, 2013, he received at least one thousand emails from an email address that he knows to belong to the defendant. I am informed by Mr. Buiter that he received the emails inside of his home, in the County and State of New York. I am informed by Mr. Buiter that he told the defendant to stop contacting him and sent a cease and desist letter to the defendant on February 27, 2013, but that the defendant has continued to contact him, and he has received several hundred emails from the defendant since February 27, 2013.

I am informed by Mr. Buiter that the emails stated, in substance: "Hope your plane falls out of the sky," "Ugly wife building", "Shall we adopt a child?", "What can I do to make it right? Shall I lick your balls?" I am informed by Mr. Buiter that on May 3, 2013, he received an email from the defendant containing pictures of dead birds. I am informed by Mr. Buiter that the defendant would also send him naked pictures of other women, as well as naked pictures of herself masturbating.

I am informed by Mr. Buiter that the defendant would also send emails to his children and wife.

I am informed by Mr. Buiter that the defendant's actions have caused him severe annoyance and alarm, and to fear for his physical safety and for the safety of his wife and children.

**False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.**

Detective Carl Roadarmel          7/01/13        1710
                                   Date           Time

# EXHIBIT E

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

| THE PEOPLE OF THE STATE OF NEW YORK | FAMILY OFFENSE |
| -against- | DEFENDANT/VICTIM RELATIONSHIP: INTIMATE/ ACCESS |
| Heleen Mees (F 41), | **MISDEMEANOR** |
| Defendant. | ADA Samantha Schott (212) 335-9983 |



Detective Carl Roadarmel, Shield 6632 of the 20th Precinct Detective Squad, states as follows:

*The defendant is charged with:*

| 1 | PL 120.14(2) | Menacing in the Second Degree (defendant #1: 1 count) |
| 2 | PL 120.50(3) | Stalking in the Third Degree (defendant #1: 1 count) |
| 3 | PL 240.30(1)(a) | Aggravated Harassment in the Second Degree (defendant #1: 4 counts) |
| 4 | PL 120.45(2) | Stalking in the Fourth Degree (defendant #1: 1 count) |
| 5 | PL 240.26(3) | Harassment in the Second Degree (defendant #1: 1 count) |

At the times and places described below in the County and State of New York, the defendant repeatedly followed another person and engaged in a course of conduct and repeatedly committed acts over a period of time intentionally placing and attempting to place another person in reasonable fear of physical injury; the defendant with intent to harass, annoy and alarm a specific person, intentionally engaged in a course of conduct directed at such person which was likely to cause such person to reasonably fear physical injury and serious physical injury, the commission of a sex offense against, and the kidnapping, unlawful imprisonment and death of such person; the defendant, with intent to harass, annoy, threaten and alarm another person, communicated with a person, anonymously and otherwise, by telephone, by telegraph, and by mail, and by transmitting and delivering any other form of written communication, in a manner likely to cause annoyance and alarm; the defendant intentionally and for no legitimate purpose, engaged in a course of conduct directed at a specific person and knew and reasonably should have known that such conduct caused material harm to the mental and emotional health of such person, where such conduct consisted of following, telephoning and initiating communication and contact with such person, and the defendant was previously clearly informed to cease that conduct; the defendant, with intent to harass, annoy and alarm another, engaged in a course of conduct which alarmed and seriously annoyed another person and which served no legitimate

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Heleen Mees (F 41),

Defendant.

FAMILY OFFENSE
DEFENDANT/VICTIM
RELATIONSHIP:      INTIMATE/
ACCESS
**MISDEMEANOR**
ADA Samantha Schott
(212) 335-9983



purpose.

*The factual basis for these charges are as follows:*

Between November 7, 2009, and July 1, 2013, I received over three thousand emails from an email address that I know to belong to the defendant. I received and have read many of these emails inside of my home, in the County and State of New York. Since November 7, 2009, I have sent several emails requesting that the defendant stop contacting me. On February 27, 2013, a letter was sent to the defendant requesting that she cease all communications with myself and my family. Since February 27, 2013, to July 1, 2013, I received several hundred emails from the defendant.

On September 15, 2012, the defendant sent me an email stating in substance: "I hope you die." On September 15, 2012, the defendant sent me an email stating in substance: "I hope you die (read this to your wife)." On September 14, 2012, the defendant sent me an email stating in substance: "I hope your plane falls out of the sky." On May 3, 2013, the defendant sent me an email containing pictures of dead birds. The defendant's actions caused me annoyance and alarm.

Between May 12, 2013, and May 24, 2013, the defendant sent me at least 55 emails containing sexually explicit messages, and between May 26, 2013, and June 27, 2013, the defendant sent me at least 68 emails asking if I would meet her for a drink, causing me annoyance and alarm.

Between January 11, 2013, and April 24, 2013, the defendant sent me at least 164 messages on Facebook, causing me annoyance and alarm.

In March 2013, the defendant called one of my mobile phones hundreds of times, forcing me to turn off the phone and leading to over $300 in international roaming charges.

In May 2010, the defendant tried to meet with me at my hotel in Beijing, China, and in January 2013, the defendant tried to meet me at my hotel in Amsterdam, The Netherlands, by using a fake name. On May 6, 2013, the defendant came to my apartment building in the County and State of New York, and tried to be let up to my apartment.

# EXHIBIT F

CRIMINAL COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY: PART D
------------------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,

                                                       **AFFIRMATION OF**
                                                       **OLAV A. HAAZEN**

               -against-                                     NO. 2013NY050589

                   HELEEN MEES,
                                 Defendant.
------------------------------------------------------------------------------x

      OLAV A. HAAZEN, an attorney duly admitted to practice law before the Courts of this

State, affirms as follows pursuant to CPLR 2106:

      1.     From January 2014 until July 2016, I represented Dr. Heleen Mees in the civil

litigation related to the above-cited matter. On November 26, 2014, I met with Assistant District

Attorney Nitin Savur to discuss the finding of 1,251 unlawful surveillance images. On February

10, 2015, I spoke to Savur by phone. During the phone call, Savur informed me that the District

Attorney's office was not prepared to dismiss the charges against my client in the interest of

justice. Savur encouraged me to come back if I had more evidence and assured me that even after

the ACD dismissal, it could still be undone and the restored case dismissed in the interest of

justice.

Dated: New York, New York,
       May 29, 2018

                                                    _____
                                                   Olav A. Haazen