

**Grant & Eisenhofer P.A.**

485 Lexington Avenue    New York, NY 10017   Tel: 646-722-8500   Fax: 646-722-8501

Olav A. Haazen
Director
Tel: 347-841-8841
ohaazen@gelaw.com

123 Justison Street
Wilmington, DE 19801
Tel: 302-622-7000
Fax: 302-622-7100

1747 Pennsylvania Avenue, N.W., Suite 875
Washington, DC 20006
Tel: 202-386-9500
Fax: 202-386-9505

30 N. LaSalle Street
Chicago, IL 60602
Tel: 312-214-0000
Fax: 312-214-0001

May 9, 2016

Cyrus R. Vance, Jr., District Attorney
The New York County District Attorney's Office
One Hogan Place
New York, New York 10013

Re:   *The People of the State of New York v. Heleen Mees*,
      No. 2013NY050589 (N.Y.C. Crim. Ct.)

Dear Mr. Vance:

We write to follow up on our letter to you, dated October 28, 2014, and subsequent correspondence to Executive Assistant District Attorney Nitin Savur, and to request an independent investigation by a Special Victims Bureau member who has no prior involvement with this matter.

We represent Dr. Heleen Mees, a former New York University economics professor and consultant on Chinese affairs, who was briefly prosecuted by your Office for second-degree menacing, third- and fourth-degree stalking, second-degree harassment, and second-degree aggravated harassment. As we set forth in prior communications, our client's prosecution was based on a substantial number of false statements made by the accuser, Citigroup's chief economist, Willem Buiter, who falsely claimed to have fallen victim to harassment and stalking.[1] In March 2014, Mr. Savur agreed to end proceedings by way of an ACD, and on March 9, 2015, the case against Mees was dismissed.

We advised you in our October 28 letter that in the course of our civil damages case against Buiter, 1,251 photographs of our client were found on Mr. Buiter's laptop. As a result of that discovery, this matter has taken a different turn. The photographs show Mees' private parts and were taken without her knowledge or consent. The explanation Buiter provided for possessing these pornographic materials (which apparently were kept on his computer for years) was *not* that Mees had consented to these recordings but that *he did not take them* and that Mees had emailed him the pictures.[2] Mees categorically denies sending such emails.

---

[1] For a list of those falsehoods we refer to our October 28 letter.

[2] In fact, an accusation that Mees annoyed and alarmed Buiter by sending him nude pictures of herself was part of the criminal complaint Buiter filed against Mees on July 1, 2013.

Cyrus R. Vance, Jr., District Attorney
May 9, 2016
Page 2

Because Buiter was unable to produce the emails to which he claims the photos were attached[3], we requested that your office start an investigation into a possible violation of Penal Law § 250.45 (surreptitious recording of private parts), which appears to have occurred during some of the many times Mees can prove she and Buiter had video cybersex via Skype. Mr. Savur and ADA Samantha Schott refused, however, on the grounds that (1) it could not be determined that Mees had *not* emailed them, and (2) Ms. Schott did not believe that the pictures were taken without Mees' consent (even though, as stated, Buiter specifically does not claim that he took them with Mees' consent). Mr. Savur added that we could contact the DA's Office and renew our request for an investigation if further evidence surfaced. We do so now.

### The Forensic Investigation

After Buiter was ordered to turn over the photos in JPEG format as part of ongoing civil litigation, counsel for Mees commissioned forensic experts SBV Forensics to examine all 1,251 photographs and all forensically imaged computers that Mees has had in her possession since 2008. Based on this forensic analysis, SBV concludes that it is a near-certainty that Mees *did not take the photographs*, either with a phone, a standalone camera or a webcam, and that it is beyond a reasonable doubt that she *did not send the photographs* from any of her devices. SBV's report is attached for your convenience.

Specifically, SBV Forensic concludes with respect to the photo files:

1. Because the photos were produced in both PDF (1,388) and JPEG format (1,251), it can be determined through a comparison of MD5 hash values and "data carving" that Buiter in fact had more unique pornographic images of Mees in his possession than he represented (1,288 instead of 1,251). Among both the PDFs and the JPEGs there were also many duplicates (pp. 3-6).

2. Based on Mees' position in the photos, it is impossible that she manually took the photos herself. Because variations between successive pictures are mostly minor, which indicates only minimal intervals between them, it is also highly unlikely that the photos were taken in auto mode with a timer (pp. 6, 19-20).

3. The format of the photos (640 pixels by 480 pixels, for a total of some 300,000 pixels) is inconsistent with the use of a digital camera. Images taken with digital cameras are measured in *millions* of pixel ("megapixels") (pp. 7, 19).

4. The pictures' VGA resolution is, however, consistent with the use of either a webcam or a mobile phone camera (pp. 7-8, 19).

---

[3] According to Buiter, the emails were deleted and only their attachments were saved, accidentally, as a result of his installation of a so-called "rule" in Microsoft Outlook, which automatically saves all attachments in a separate folder.

Cyrus R. Vance, Jr., District Attorney
May 9, 2016
Page 3

5. The low number of EXIF metadata captured on the JPEG files is inconsistent, however, with the photos having been taken with a mobile phone. It is also inconsistent with the use of a digital camera. Both would have registered additional metadata, such as various characteristics of the camera lens or the brand and type of the phone used (pp. 8, 19).

6. The EXIF metadata that was found, *e.g.* data indicating that no flash was used, excludes the possibility that the photos were stills derived from previously recorded video footage (which does not register any information on the use of a flash) (pp. 8, 19).

7. The depth and camera angles of the photos are also consistent with the use of a webcam (pp. 7, 19).

8. The picture files are consistent with screenshots taken during a live video chat on a platform like Skype. If the screenshots were taken on an Apple computer, however, such as used by Mees, Apple's operating system (Mac OS X) would have saved them as PNG files—not, as is the case here, as JPEGs (pp. 8-9, 19).

9. Photo Booth, which is a standard Apple application, does save photos in JPEG format but the photos' metadata is inconsistent with the use of this application because such use would have automatically registered "Photo Booth" as an IPTC field in each file (p. 9).

10. The photos have a resolution of 96 dpi, which is also not consistent with the use of Apple computers or digital cameras, which automatically generate images with resolutions of 72 dpi. The photos' 96 dpi resolution is, however, consistent with the use of a *Windows* computer (which Mees believes Buiter uses exclusively) (p. 10).

11. There is no indication on any of Mees' Apple computers that any metadata or file characteristics were manually manipulated. Manual editing would require opening, editing and re-saving each of the 1,288 unique picture files individually and would therefore be extremely time-consuming. No Windows programs and no virtualization software were found on any of Mees' laptops (pp. 10, 19).

With respect to Buiter's possession of the photos but not the emails by which they were supposedly transmitted, SBV Forensics concludes:

1. It is virtually certain that the photos were never on Mees' laptops. If they were, it would have been possible to retrieve or restore the files forensically. It is nearly impossible and technically very complex to individually remove files in a manner that guarantees the user that the files are forever irretrievable (pp. 11-15, 19-20).

2. No emails of the kind Buiter claims existed were found on Mees' computers. Secure removal of email files in a way that makes retrieval impossible also requires highly

       specialized knowledge of the workings of the Mac OS X operating system[4] (pp. 13-15, 20).

3. The "rule" that according to Buiter explains why the photos were saved, even though the emails purportedly attaching them were deleted, would have saved identical pictures only once, overwriting prior versions of the same attachment. The presence of duplicates of photos in Buiter's files is therefore inconsistent with the workings of such a rule (pp. 17-18).

4. The rule is also inconsistent with the fact that a different picture ("moi.jpg"), which the parties agree *was* sent by Mees, was *not* saved in the same attachment folder, and that yet a third picture Mees sent ("plaatje.jpg") was also not saved there[5] (p. 18).

Accordingly, Buiter's excuse for his possession of images of Mees' private parts is not supported by forensics. This leaves no other reasonable explanation than that Buiter took the photos. The forensic investigation corroborates Mees' account that their intimate interactions via Skype were never meant to be recorded, that she was unaware of the recordings, and that she never consented to being recorded.

We add three further observations. *First*, Buiter's explanation that Mees sent him the photos implies that even he disagrees with Ms. Schott's theory that he took them with Mees' consent.

*Second*, according to Buiter, Buiter's computer is now no longer available for forensic examination to determine if it was used to take the screenshots. The sole reason is that Buiter, as he has admitted in an affidavit, threw the computer away in December 2013. In other words, he destroyed the evidence *pending your Office's criminal prosecution of Mees*, in which the alleged sending of annoying or alarming emails and nude photos was a significant issue for trial. If the original picture files had remained available, it would likely have been possible to compare their dates and times of creation with the parties' erotic Skype sessions.

*Third*, Buiter disclosed in November 2015 that yet a third set of pictures exists, which was saved in PNG format in the cloud he has with U.S. internet provider Verizon. Your forensic examination of these files could shed light on the dates and method of their creation, and we respectfully request that you obtain these files for investigation. (While Buiter has produced PDF and JPEG copies of the photos to Mees, he continues to withhold the photos in PNG format).

---

[4] In fact, SBV Forensics was able to restore a substantial number of emails (over 1,000) despite them having been previously deleted.

[5] These two photos in JPEG format have characteristics different from the 1,288 files and *were* taken with a smartphone and Photo Booth, respectively.

### Conclusion

We respectfully request that your Office commence an investigation and that this matter be assigned to a Special Victims Bureau member other than Ms. Schott, her direct supervisor Jeanine Launay, or Mr. Savur. When we previously requested an investigation, we found Ms. Schott defensive—even though we *never* accused the DA's Office of any errors—and she has been unwilling to even consider the possibility that she may have been bamboozled by an adulterer anxious to hide his affair from his wife and who had a sophisticated team of professionals behind him to convince the authorities of his accusations.[6]

The decisions to arrest and prosecute Dr. Mees have had profound consequences for Mees, who has lost her entire livelihood and is now an outcast in her business and academic circles. We find the ease with which Ms. Schott and Mr. Savur have brushed aside the severe collateral effects of an unjust prosecution to stand in stark contrast to the utmost protection they gave to a powerful adulterous Wall Street banker, who has four legal teams at his disposal and millions of dollars to combat a now-destitute 47-year old woman seeking justice. While we understand that it would be embarrassing, particularly for the Special Victims Bureau, if the DA were to conclude that it prosecuted the *victim* of a felony sex crime and protected the man who may have been the perpetrator, that does not justify such defensiveness or failure to take a victim's story seriously. Mr. Savur and Ms. Schott know, of course, that a victim does not have the burden of proving that she did not consent. It was improper for them to demand that Mees prove that she was genuinely sexually violated. We ask that you assign an independent investigator to investigate if Penal L. 250.45 was violated and if so, by whom.

We request an in-person meeting with you to discuss this matter further, and remain at your disposal if you have any questions. Please do not hesitate to contact me at (347) 841-8841 or ohaazen@gelaw.com, or Brooke Alexander at (914) 749-8231 or balexander@bsfllp.com.

Sincerely,

Olav A. Haazen

---

[6] In the civil case, Buiter has tried to distance himself from the false July 1, 2013 police report by arguing that those were not his own words. The evidence in that case shows that Buiter hired a criminal lawyer and two ex-NYPD officers who acted as in-betweens and were in constant contact with Buiter and the NYPD up until the exact minute that Detective Roadarmel signed the July 1 report.