UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELEEN MEES,

                        Plaintiff,

           -against-

CITY OF NEW YORK, MANHATTAN
DISTRICT ATTORNEY'S OFFICE,
CYRUS VANCE, JR., NITIN SAVUR,
JEANINE LAUNAY, SAMANTHA
SCHOTT,

                   Defendants.

19 Civ. 7346 (AJN)(KNF)

# MEMORANDUM OF LAW IN SUPPORT OF
# JOINT MOTION TO DISMISS THE AMENDED COMPLAINT

CYRUS R. VANCE, JR.
District Attorney of New York County
One Hogan Place
New York, New York 10013
(212) 335-9000
*Counsel for the DA defendants*

Elizabeth N. Krasnow
Assistant District Attorney

JAMES E. JOHNSON
Corporation Counsel of the City of New
York
100 Church Street
New York, New York 10007
(212) 356-2384
*Attorney for the defendant City of New York*

William T. Gosling
Assistant Corporation Counsel

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF THE CASE .............................................................................................2

PROCEDURAL HISTORY ................................................................................................10

STANDARD OF REVIEW.................................................................................................11

ARGUMENT .......................................................................................................................12

    I.    Mees lacks standing to seek a declaration...................................................12

    II.    The declaration that Mees seeks is not cognizable under §1983 and is barred by the *Rooker-Feldman* doctrine .................................................................................14

    III.    Any §1983 claim against the DA defendants based on an alleged *Brady* violation and any *Monell* claim against the City based on the same are untimely.............................17

    IV.    The DA defendants are immune from suit..............................................20

    V.    Mees has not plausibly alleged a *Brady* violation......................................22

    VI.    Mees has not plausibly alleged a §1983 *Monell* claim.................................24

      1.    Mees does not allege a formal policy endorsed by the City....................................26

      2.    Mees fails to allege any action by a government official that caused the alleged constitutional violation.......................................................................................27

      3.    Mees fails to allege a widespread pattern of misconduct ........................................28

      4.    Mees fails to plausibly plead a "failure to train" claim ............................................31

CONCLUSION ...................................................................................................................34

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abreu v. City of New York*, 657 F. Supp. 2d 356 (E.D.N.Y. 2009)...................................31

*Aguirre v. City of New York*, 2017 U.S. Dist. LEXIS 155422 (E.D.N.Y. Sept. 22, 2017) ...........................................................................................................................29

*Allen v. Wright*, 468 U.S. 737 (1984)..........................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................11

*Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107 (2d Cir. 2004)....................27-28

*Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007)........................................................20

*Brady v. Maryland*, 373 U.S. 83 (1963) ..............................................................*passim*

*Butz v. Economou*, 438 U.S. 478 (1978) ........................................................................21

*Chiste v. Hotels.com, L.P.*, 756 F. Supp. 2d 382 (S.D.N.Y. 2010)........................................12

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .........................................................13

*City of Okla. City v. Tuttle*, 471 U.S. 808 (1985)..........................................................31

*Colon v. Vance*, 2019 U.S. Dist. LEXIS 111476 (S.D.N.Y. July 3, 2019) ..............................21

*Connick v. Thompson*, 563 U.S. 51 (2011) ..............................................................31-32

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ....................................................13

*DiFolco v. MSNBC Cable L.L.C.*, 662 F.3d 104 (2d Cir. 2010) ........................................11

*Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994) ......................................................................21

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ...........................................29, 33

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)..................................16

*Ezaqui v. City of New York*, 726 F. Supp. 2d 275 (S.D.N.Y. 2010) ....................................29

*Genovese v. Town of Southampton*, 921 F. Supp. 2d 8 (E.D.N.Y. 2013)................................25

*Golden v. Zwickler*, 394 U.S. 103 (1969) .....................................................................13

*Gomez v. City of New York*, 2017 U.S. Dist. LEXIS 38100 (E.D.N.Y. Mar. 16, 2017) ................................................................................................................. 30

*Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009) ................................................. 16

*Green v. Monour*, 747 U.S. 64 (1985) ............................................................... 21

*Hayes v. Perotta*, 751 F. Supp. 2d 597 (S.D.N.Y. 2010) .................................. 31

*Heck v. Humphrey*, 512 U.S. 477 (1994) ......................................................... 19

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995) ...................................... 22

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) .................................... 15-16

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) ............................................... 11

*Ifill v. New York Cty. D.A.*, 2014 U.S. Dist. LEXIS 197430 (S.D.N.Y. July 8, 2014) ................................................................................................................. 21

*Isaac v. City of New York*, 2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018) ................................................................................................................. 30

*Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012) ........................... 30

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ................................. 32

*Johnson v. Carrasquilla*, 2018 U.S. Dist. LEXIS 176578 (D. Conn. Oct. 15, 2018) .................... 22

*Johnson v. City of New York*, 551 F. App'x 14 (2d Cir. 2014) .......................... 25

*Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) .......................... 11

*Kroemer v. Tantillo*, 2017 U.S. Dist. LEXIS 218622 (W.D.N.Y. Jun. 14, 2017) ........................ 15

*LaMagna v. Brown*, 474 F. App'x 788 (2d Cir. 2012) ...................................... 28

*LeDuc v. Tilley*, 2005 U.S. Dist. LEXIS 12416 (D. Conn. Jun. 21, 2005) ................................... 22

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001) ............................................... 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................... 13

*MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203 (E.D.N.Y. 2009) ................................ 22

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) ............................ 13

*McCann v. Coughlin*, 698 F.2d 112 (2d Cir. 1983) ......................................... 28

*McCray v. City of New York*, 2007 U.S. Dist. LEXIS 90875 (S.D.N.Y. Dec. 11, 2007) ................................................................................................27

*Mees v. Buiter*, 793 F.3d 921 (2d Cir. 2015).................................................. 4-5, 7

*Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989) ....................................28

*Minsky v. Kelley*, 240 Fed. Appx. 920 (2d Cir. 2007) .......................................13

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .......................*passim*

*O'Connor v. Barnes*, 1998 U.S. Dist. LEXIS 3386 (N.D.N.Y. Mar. 18, 1998) ...........................27

*Okure v. Owens*, 488 U.S. 235 (1989) ................................................................17

*Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235 (D. Conn. 2016) ...................................16

*Parkinson v. Cozzolino*, 238 F.3d 145 (2d Cir. 2001) ........................................22

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ..........................................27

*Peterec v. City of New York*, 2015 U.S. Dist. LEXIS 28504 (S.D.N.Y. Mar. 6, 2015) ................................................................................................29

*Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995) ...................................22

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014)...............................23

*Price v. City of New York*, 2018 U.S. Dist. LEXIS 105815 (S.D.N.Y. June 25, 2018) ................................................................................................25

*Raines v. Byrd*, 521 U.S. 811 (1997).................................................................13

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007) ...........................................29

*Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003) ...........................................28

*Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009)..........................................12

*Ross v. City of New York*, 2019 U.S. Dist. LEXIS 169762 (E.D.N.Y. Sept. 30, 2019) ................................................................................................19

*Salgado v. Carlo*, 2019 U.S. Dist. LEXIS 53139 (S.D.N.Y. Mar. 28, 2019) ................................33

*Shmueli v. City of New York*, 424 F.3d 231 (2d Cir. 2005) ................................12

*Simpson v. Town of Warwick Police Dept.*, 159 F. Supp. 3d 419 (S.D.N.Y. 2016) ..........................25

iv

*Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980) ........................................................ 20

*Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018) ....................................... 15-16

*Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014) ......................................... 13-15, 17

*Wallace v. Kato*, 549 U.S. 384 (2007) ....................................................................... 17-19

*Warney v. Monroe County*, 587 F.3d 113 (2d Cir. 2009) ................................................. 22

*Wilson v. Wilson-Polson*, 2010 U.S. Dist. LEXIS 100425 (S.D.N.Y. Sept. 22, 2010) ...................................................................................................................... 22

*Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655 (S.D.N.Y. 2010) ......................... 2

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) .................................... 21

## STATE CASES

*People v. Colon*, 13 N.Y.3d 343 (2009) ............................................................................ 31

*People v. Doshi*, 93 N.Y.2d 499 (1999) ........................................................................... 24

*People v. Gantt*, 13 A.D.3d 204 (1st Dep't 2004) ............................................................ 31

*People v. Garcia*, 46 A.D.3d 461 (1st Dep't 2007) .......................................................... 30

*People v. Harris*, 35 A.D.3d 1197 (4th Dep't 2006) ........................................................ 30

*People v. Hendricks*, 4 A.D.3d 798 (4th Dep't 2004) ...................................................... 30

*People v. Hunter*, 11 N.Y.3d 1 (2008) ............................................................................ 30

*People v. Knight*, 2007 N.Y. Misc. LEXIS 8958, 2007 WL 4896695 (Sup. Ct. Queens County 2007) ................................................................................................ 30

*People v. Leon*, 23 A.D.3d 1110 (4th Dep't 2005) ........................................................... 30

*People v. McClain*, 53 A.D.3d 556 (2d Dept. 2008) ........................................................ 23

*People v. Phillips*, 55 A.D.3d 1145 (3d Dep't 2008) ....................................................... 30

*People v. Pressley*, 91 N.Y.2d 825 (1997) ..................................................................... 30

*People v. Sebak*, 270 A.D.2d 166 (1st Dept. 2000) ......................................................... 23

*People v. Singh*, 5 A.D.3d 403 (2d Dept. 2004) .............................................................. 23

*People v. Thompson*, 54 A.D.3d 975 (2d Dep't 2008) ........................................................30

*People v. Williams*, 50 A.D.3d 1177 (3d Dep't 2008) ....................................................30

*People v. Williams*, 7 N.Y.3d 15 (2006)............................................................................31

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELEEN MEES,

Plaintiff,

-against-

CITY OF NEW YORK, MANHATTAN
DISTRICT ATTORNEY'S OFFICE, CYRUS
VANCE, JR., NITIN SAVUR, JEANINE
LAUNAY, SAMANTHA SCHOTT,

Defendants.

MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS' JOINT
MOTION TO DISMISS THE
AMENDED COMPLAINT

19 Civ. 7346 (AJN)(KNF)

## INTRODUCTION

By the above-captioned civil suit, plaintiff *pro se* Heleen Mees asks this Court to vacate

the disposition in a dismissed and sealed state court prosecution and seeks damages based on

an alleged violation of her right to receive exculpatory and impeachment evidence under *Brady*

*v. Maryland*, 373 U.S. 83 (1963).  As defendants, Mees names the City of New York; the New

York County District Attorney's Office; District Attorney Cyrus R. Vance, Jr.; and Assistant

District Attorneys Nitin Savur, Jeanine Launay, and Samantha Schott. As a vehicle for the

relief sought, Mees invokes 42 U.S.C. §1983 and the Declaratory Judgment Act.

By this joint motion, defendants respectfully seek dismissal of the amended complaint

under Fed. R. Civ. P. 12(b)(1) and (6), on several grounds. Mees lacks standing to pursue

declaratory relief based on past events, and the declaration she seeks is not cognizable under

§1983 and is barred by the *Rooker-Feldman* doctrine, which prohibits litigants from seeking

review of state court judgments in federal court.  Moreover, Mees' claims are based entirely

on the allegation that the DA's Office violated *Brady*, yet the limitations period applicable to a

§1983 *Brady* claim expired prior to the filing of this lawsuit and the amended complaint does not plausibly allege a *Brady* violation.  Even if Mees' allegation of a *Brady* violation were timely or plausible, her claims against the DA defendants are barred by the Eleventh Amendment and absolute prosecutorial immunity.[1]  Finally, the limitations period applicable to a §1983 *Monell* claim expired prior to the filing of this lawsuit, and Mees cannot state a §1983 *Monell* claim absent the existence of a municipal policy and an underlying constitutional violation, neither of which is plausibly pled in the amended complaint.  For these reasons, defendants' joint motion to dismiss should be granted.

## STATEMENT OF THE CASE

In July 2013, Mees was arrested by members of the New York City Police Department after her "lover," Willem Buiter, made a series of allegations that Mees had harassed him by sending him nude photos of herself, among other conduct.  Amended Complaint ("AC") ¶14.[2] Mees alleges that Buiter fabricated the allegations against her.  *Id.*

A complaint sworn to by a detective was filed in New York County Criminal Court charging Mees with misdemeanor stalking, aggravated harassment, and harassment.  Ex. 1.[3] The Criminal Court complaint alleges that the detective was informed by Buiter that he received at least 1,000 emails from Mees between July 2011 and July 2013; that Buiter told

---

[1] The term "DA defendants" is used to refer to DA Vance and ADAs Savur, Launay, and Schott.  The District Attorney's Office, itself, is a non-suable entity. *Woodward v. Office of Dist. Atty.*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010) ("[T]he District Attorney's Office is not a suable entity").

[2] The Statement of the Case is derived from the allegations in the amended complaint; records attached to the amended complaint; and records that are incorporated by reference or were filed in the underlying prosecution such that the Court may take judicial notice of their content.

[3] Lettered exhibits are appended to the amended complaint and numbered exhibits are appended to the declaration of Assistant District Attorney Elizabeth N. Krasnow.

Mees to stop contacting him and sent her a "cease and desist" letter in February 2013; that Mees nonetheless continued to send Buiter "several hundred" emails; and that Mees also sent emails to Buiter's wife and children.  *Id.*  The Criminal Court complaint cites emails sent from Mees to Buiter containing statements such as "Hope your plane falls out of the sky;" pictures of dead birds; and nude photos of Mees.  *Id.*

In August 2013, pursuant to Criminal Procedure Law (CPL) §100.05, a superseding information sworn to by Buiter was filed in Criminal Court charging Mees with misdemeanor menacing, stalking, aggravated harassment, and harassment. AC ¶¶14, 25-26; Ex. 2 at 2-4.[4] The superseding information alleges that Mees sent Buiter 164 messages on Facebook between January and April 2013; called him "hundreds of times" in March 2013; sent him 55 emails "containing sexually explicit messages" in May 2013; and attempted to meet with him in person on several occasions.  Ex. 2 at 2-4.  The superseding information further alleges that Buiter began receiving emails from Mees in November 2009—although it does not allege that emails received at that time were unwanted—and that Buiter received over 3,000 emails from Mees between November 2009 and July 2013.  *Id.* at 3.

In October 2013, Mees filed a motion to dismiss the charges. AC ¶29; Ex. 3.  In that motion, Mees acknowledged that she sent Buiter sexually explicit emails that included nude photos and claimed that the emails were consensually exchanged.  Ex. 3 at 7 (¶2).

In February 2014, ADAs Schott and ADA Launay engaged in plea discussions with Mees' attorneys.   AC ¶16.   The DA's Office offered to resolve the charges with an

---

[4] The superseding information reflects an error in the deponent on the first page by identifying the arresting detective, not Buiter.  The document, however, is signed by Buiter.  Our file reflects that a corrected information identifying Buiter as the deponent was filed in Criminal Court in October 2014.

Adjournment in Contemplation of Dismissal ("ACD") under CPL §170.55(2). *Id.* Mees alleges that, during the plea discussions, ADA Schott and ADA Launay did not mention any nude photos in the prosecution file. *Id.* at ¶¶28, 30.

In March 2014, during an appearance in Criminal Court, Mees accepted an ACD and agreed to undergo individual counseling sessions and to the imposition of "a full and final" order of protection. AC ¶16; Ex. 4. Under the terms of the ACD, the prosecution would remain open for one year, at which time the prosecution would be dismissed and sealed if Mees complied with the conditions set by the court. Ex. 4 at 1. Mees alleges that she accepted an ACD "primarily" for financial reasons. AC ¶16.

In April 2014, Mees filed an application in this courthouse under 28 U.S.C. §1782 to obtain discovery from Buiter for use in a defamation suit she anticipated filing against him in her home county, the Netherlands. AC ¶17; *see also Mees v. Buiter*, 793 F.3d 921, 294-95 (2d Cir. 2015). In May 2014, the district court denied Mees' application. *Id.* (both citations).

In June 2014, Mees filed a defamation suit against Buiter in New York state court. AC ¶18. In October 2014, Buiter filed a motion to dismiss. *Id.* In support of his motion, Buiter appended an exhibit that contained 1,251 nude photos of Mees and claimed, in his motion, that she had emailed the photos to him. *Id.* Buiter appended the photos, only, not the emails to which they had been attached, and refused to provide the photos in JPEG format. *Id.* at ¶¶18, 22.

Mees maintains that she did not take the 1,251 nude photos and saw them for the first time upon receiving Buiter's motion to dismiss in the defamation suit. *Id.* at ¶18. Mees alleges that Buiter provided these photos to the DA's Office at some point prior to the February 2014

plea discussions and falsely represented to prosecutors that Mees had taken the photos and sent them to him. *Id.* at ¶¶18, 28. Mees further alleges that Buiter provided the photos to the DA's Office in hard copy and on a USB stick that contained the images in JPEG format. *Id.* at ¶28.

Mees alleges that the 1,251 photos show her nude or partially undressed while wearing a floral dress that she purchased in April 2011. AC at ¶24. According to Mees, the photos confirm that she and Buiter continued a consensual romantic relationship until at least April 2011, and that Buiter captured the images without Mees' knowledge by taking screenshots during a consensual Skype "webcam call." *Id.* Mees claims that Buiter saved the 1,251 photos on his "handheld devices" and stored them in a Verizon cloud service so that he could continue to access them. *Id.* at ¶27.

In October 2014, after receiving Buiter's motion with the appended 1,251 nude photos, Mees' attorneys sent two letters to the DA's Office. *Id.* at ¶19; Exs. B, C. Mees characterizes the first letter, which was sent to ADA Schott on October 20th, as accusing the District Attorney's Office of "suppressing material exculpatory evidence" in the form of the 1,251 nude photos. *Id.* Mees characterizes the second letter, which was sent to DA Vance on October 28th, as "demanding an investigation into the 1,251 images" and "immediate dismissal of [all] charges." *Id.*[5] In both letters, Mees' attorneys confirmed their understanding

---

[5] In amended complaint, Mees alleges that the October 28th letter was sent after ADA Schott failed to respond to the October 20th letter. AC ¶19. The October 28th letter, however, conveys that Mees' attorneys spoke to ADA Schott in the interim and she disagreed with their position that the alleged origin of the photos required dismissal of the charges. Ex. C at 3.

that Buiter had provided the 1,251 nude photos to the District Attorney's Office "to support his accusations of harassment." Ex. B at 2; *see also* Ex. C at 2.[6]

In November 2014 and February 2015, Mees' attorneys spoke to Executive ADA Nitin Savur. AC at ¶20. Mees alleges that ADA Savur told her attorneys that the DA's Office would not dismiss the charges. *Id.* Mees further alleges that ADA Savur "refused to produce any of the unlawful surveillance images that Buiter [had provided to the] prosecution." *Id.*; *see also* ¶31. Finally, Mees alleges that ADA Savur told her attorneys to submit a FOIL request for the prosecution file; to return if they gathered more evidence; and that the prosecution could be reopened after it was sealed. *Id.* at ¶¶20, 31.

In March 2015, upon expiration of the adjournment period of the ACD, the charges against Mees were dismissed and sealed under CPL §160.50. Ex. A. In the month that passed between the final conversation with ADA Savur on February 10th and the expiration of the adjournment period on March 9th, Mees' attorneys did not file a motion to seek relief with respect to the entry of the ACD or to challenge ADA Savur's alleged refusal to produce copies of nude photos in the prosecution file—the latter of which Mees now claims amounted to the suppression of *Brady* material.

In July 2015, the Second Circuit reversed the order of the district court denying Mees' §1782 application for discovery to be used in the Netherlands defamation suit, which had since been filed. AC ¶22; *Mees*, 793 F.3d at 295. Mees alleges that, on remand, the district court

---

[6] Citations to page numbers of the lettered exhibits appended to the amended complaint are to the ECF page of the document.

ordered Buiter to produce in JPEG format the 1,251 nude photos that were appended to his

motion to dismiss the New York defamation suit.  AC ¶22.

In October 2015, Buiter produced the nude photos in JPEG format as ordered by the

district court.  *Id.*

In December 2015, the DA's Office responded to a FOIL request submitted by Mees.

*Id.* at ¶32; Ex. E.  Mees alleges that the response contained "about 1,200 unlawful surveillance

images" of her.  AC at ¶21.  The import of the allegations in the amended complaint is that

the photos produced by the DA's Office were the same images as the 1,251 nude photos that

were appended to Buiter's motion to dismiss the New York defamation suit and subsequently

produced by him in JPEG format.  *See, e.g.*, *id.*

In April 2016, a forensic firm retained by Mees' attorneys issued a report based on its

analysis of "approximately 1,250" photos produced by Buiter to Mees' attorneys in JPEG

format.  *Id.* at ¶23; Ex. F at 5.  In its report, the forensic firm concluded that the photos

produced by Buiter to Mees' attorneys in JPEG format were consistent with screenshots taken

during a live video chat on a platform such as Skype and that none of the photos were ever

stored on, or sent from, any of Mees' electronic devices.  AC at ¶23.  The amended complaint

alleges that the report leaves "no other reasonable explanation than that Buiter took the

photos."  *Id.* at ¶23 (p. 8 of the amended complaint).[7]

In May 2016, Mees' attorneys sent a letter to DA Vance requesting that the already-

dismissed prosecution be dismissed again in the interests of justice based on the forensic firm's

---

[7] The paragraphs in the amended complaint are mis-numbered such that there are two Paragraphs 22
and two Paragraphs 23.

report.  *Id.* at ¶31; Ex. 5.  Later that month, DA Vance informed Mees' attorneys, by reply letter, that Executive ADA Audrey Moore would investigate the case and address their request. Ex. G.

In August 2016, ADA Moore denied the request of Mees' attorneys by reply letter. Complaint ¶31; Ex. H.  As grounds for her decision, ADA Moore explained, first, that there was no mechanism to reopen a dismissed case simply to dismiss it again and, second, that even if such a mechanism existed, "the ACD + counseling sessions was a very reasonable disposition of the case."  Ex. H.

In January 2018, Mees' new attorney filed a motion asking the Criminal Court to order the DA's Office to "unseal" and "reopen" the prosecution.  Ex. I at 18; AC ¶40.  In the motion, Mees argued that the DA's Office violated *Brady* by not disclosing nude photos in the prosecution file prior to the February 2014 plea discussions.  Ex. I at 15.

In February 2018, the Criminal Court denied the motion to unseal and reopen the prosecution.  *Id.* at 2.

In March 2018, Mees filed a *pro se* petition for a writ of *error corum nobis* asking the Criminal Court to unseal and reopen the prosecution to "alleviate a constitutional wrong." AC ¶41; Ex. J at 14 (quotation omitted).  As grounds to suggest that a constitutional wrong had occurred, Mees argued that the DA's Office violated *Brady* by not disclosing any nude photos in the prosecution file prior to the February 2014 plea discussions.  Ex. J at 10-11. Mees further argued that one of her attorneys at the time was ineffective for failing to move the court in 2014 to "undo" the ACD even though Mees asked him to.  *Id.* at 14.

In July 2018, the Criminal Court denied the petition.  Ex. J at 2-7.

Later that month, Mees filed a *pro se* motion under CPL §440.10 asking the Criminal Court to vacate the ACD.  AC ¶42; Ex. K at 17.  As grounds for the relief sought, Mees argued that the DA's Office violated *Brady* by not disclosing nude photos in the prosecution file prior to the February 2014 plea discussions.  Ex. K at 6, 11-14.

In October 2018, the Criminal Court denied the CPL §440.10 motion.  Ex. K at 2.

In December 2018, Mees filed a second *pro se* petition for a writ of *error corum nobis* asking the Criminal Court to order the DA's Office to reopen the prosecution.  AC ¶43; Ex. L.  As grounds for the relief sought, Mees argued that the DA's Office violated *Brady* by not disclosing any nude photos in the prosecution file prior to the February 2014 plea discussions and that her attorney was ineffective for failing "to timely move" the Court to vacate the ACD "before it expired" in March 2015.  Ex. L at 7.  In support of the petition, Mees annexed an affirmation by her attorney attesting that she had insisted that the ACD "be undone" since October 2013, when the nude photos were first produced by Buiter in the New York defamation suit.  *Id.* at 12.  The attorney's affirmation further states that in February 2015, after the DA's Office declined to drop the charges, Mees asked the attorney to move the court to vacate the ACD.  *Id.*

In January 2019, the Criminal Court denied the second petition for a writ of *error corum nobis*.  Ex. L at 2.[8]

---

[8] Although Mees alleges that the Criminal Court "acknowledged that [the DA's Office] had willfully suppressed material exculpatory evidence," AC ¶44, the decisions appended to the amended complaint do not contain such a finding.

In March 2019, the Appellate Term denied Mees' motion for leave to appeal from the January 2019 decision.  AC ¶45; Ex. M at 2.  In June 2019, the New York Court of Appeals similarly denied leave.  AC ¶45; Ex. N at 2.

## PROCEDURAL HISTORY

On August 6, 2019, Mees filed this lawsuit.  ECF 1.  The original complaint sought a multi-faceted declaration under 42 U.S.C. §1983 and the Declaratory Judgment Act based on the allegation that the DA's Office violated *Brady* by failing to disclose any nude photos in the prosecution file prior to the November 2014 plea discussions.  The complaint did not raise state law claims or reference a notice of claim.  *See generally id.*  On November 14, 2019, the City and the DA defendants moved to dismiss in joint papers, raising many of the same grounds for dismissal that are argued herein.  ECF 18, 22-26.

By Order dated November 27, 2019, the Court gave Mees an opportunity to amend her complaint.  ECF 27.  In response, Mees informed the Court that she intended to amend her complaint to add state law claims and that, in order to do so, she wished to amend a notice of claim that she had previously filed with the City.  ECF 28-29, 32, 35.

On December 23, 2019, Mees filed a motion to amend her existing notice of claim that—as is required under the relevant state statute—was styled as a motion seeking leave to file a late notice of claim.  ECF 38-41.  Without needing to reach the issue of whether a federal court has jurisdiction to grant such relief, the Court denied the motion on January 9, 2020 on the ground that any proposed state law claims were untimely.  ECF 43.  The Court directed Mees to file an amended complaint that did not include state law claims by February 10, 2020. *Id.*  Mees filed the amended complaint as directed and also sought reconsideration of the

10

January 9th Order.  ECF 45, 49.  On April 7, 2020, the Court denied the reconsideration motion and directed defendants to file their anticipated joint motion to dismiss.  ECF 57.

The amended complaint differs from the original in three respects.  First, Mees has narrowed her claim for declaratory relief to seek a judgment from this Court that vacates the March 2014 judgment of the Criminal Court entering the ACD.  AC ¶66.  Second, Mees now seeks damages against the City and the DA defendants, whom she now clarifies are named in their individual and official capacities.  *Id.* at ¶¶12, 67-83.  Third, Mees now alleges that the DA's Office was in possession of the nude photographs in JPEG format in addition to hard copies.  *Id.* at ¶¶21, 28.  None of these amendments render her claims viable.

## STANDARD OF REVIEW

On a motion to dismiss, the court accepts as true the factual allegations in the complaint and draws all inferences in the plaintiff's favor.  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014).  Where the complaint was filed *pro se*, it must be "construed liberally" and "interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quotation omitted).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, *supra*, at 678.

When deciding a motion to dismiss, the court may consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 662 F.3d 104, 111 (2d Cir. 2010).  The court may also consider "any matter of which the court can take judicial notice for the factual background

11

of the case." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curium); *see also Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005) ("The New York State ('State') prosecution of Shmueli is a matter of public record, of which we take judicial notice").

## **ARGUMENT**

The amended complaint seeks a declaration that vacates the March 2014 judgment of the Criminal Court entering the ACD, as well as damages against the DA defendants and the City. AC ¶¶64-89. Since there is no free-standing claim for a declaration, *Chiste v. Hotels.com, L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010), Mees' request for declaratory relief hinges on the timeliness and plausibility of her allegation of a *Brady* violation—which is the only constitutional violation alleged in the amended complaint. *See id.* at ¶¶71, 75. Mees' claims for declaratory relief and damages against the DA defendants are also subject to immunity defenses that adhere to a *Brady* allegation raised against a prosecutor. With these points in mind, defendants jointly move to dismiss on the grounds that Mees lacks standing to pursue a declaration based on past events; the declaration sought in the amended complaint is not cognizable under §1983 and is barred by the *Rooker-Feldman* doctrine; any *Brady* claim is neither timely nor plausibly presented; the DA defendants are immune from suit in their official and individual capacities; Mees' §1983 *Monell* claim is untimely, and she has not sufficiently alleged a municipal policy or underlying constitutional violation to sustain such a claim.

## I.   **Mees lacks standing to seek a declaration**

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Allen v. Wright*, 468 U.S. 737, 740 (1984). "One element of the case-or-controversy requirement" is that a plaintiff must establish standing. *Raines v. Byrd*, 521

U.S. 811, 818 (1997).  To do so, the plaintiff must have suffered an "injury in fact" that is (1) "concrete and particularized" and "actual or imminent," (2) "fairly trace[able] to the challenged action of the defendant," and (3) "redressable by a favorable ruling."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (quotation omitted).  Standing must be established for each form of relief sought.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Assuming *arguendo* that the complaint plausibly alleges a constitutional violation, Mees does not have standing to pursue a declaration because she has not alleged a "real and immediate threat" that she will sustain that injury again.  *Minsky v. Kelley*, 240 Fed. Appx. 920, 921 (2d Cir. 2007).  "The United States Supreme Court has held that for declaratory or injunctive relief, 'past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.'"  *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also Golden v. Zwickler*, 394 U.S. 103, 109 (1969); *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (to obtain "a declaratory judgment or an injunction, a plaintiff must show, inter alia, a sufficient likelihood that he [or she] will again be wronged in a similar way") (quotation omitted); *Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) ("[W]e have held that where a plaintiff seeks simply a declaration that there was a past injury, but claims no damages or an injunction against future behavior, there is no §1983 claim because there is no true case or controversy").

In this case, Mees' claim for equitable relief is premised solely on the allegation that a *Brady* violation occurred during the plea discussions in her past prosecution under Criminal Court Docket 2013NY050589—a prosecution that has been dismissed and sealed, such that, in the eyes of the law, it is as though it never happened.  AC at ¶¶65-66.  Mees does not identify

a risk of future prosecution by the DA's Office, either under the dismissed and sealed docket or by the filing of new charges, nor does she allege that any *Brady* violation is ongoing or likely to recur.  On the contrary, the declaration sought in the amended complaint flows from the premise that the DA's Office was constitutionally required, in advance of the February 2014 plea discussions or prior to the expiration of the ACD, to produce any nude photos in the prosecution file.  AC at ¶¶71, 75.  Because Mees asks this Court to make a pronouncement that derives exclusively from past events that are not likely to be repeated—or, more accurately, are impossible to repeat—she does not have standing to seek declaratory relief.

## II.    The declaration that Mees seeks is not cognizable under §1983 and is barred by the *Rooker-Feldman* doctrine

A declaration vacating the March 2014 disposition entered in Criminal Court is not a cognizable form of relief under §1983 and is barred by the *Rooker-Feldman* doctrine.  The Second Circuit's decision in *Teichmann v. New York* is instructive on both fronts.  In that case, the plaintiff brought a §1983 action alleging a violation of his constitutional right to a fair trial by the state court judge and county prosecutor, and sought to have his conviction "declared invalid and overturned."  769 F.2d at 823-24.  In affirming the dismissal of his claim, the Second Circuit held that "§1983—while broad in its equitable and legal remedies—does not recognize a declaration of innocence, standing alone, as a cognizable form of relief."  *Id.* at 826.  Unlike the federal habeas statute, which authorizes review of state court judgments under certain circumstances, "nothing in the language of §1983 suggests that such a naked declaration is available."  *Id.*  Similarly, in this case, nothing in the language of §1983 suggests that the statute can be employed to "vacate" a "decision and order" of a state court, as Mees asks this Court to do, *see* AC at ¶66.  *Cf. Kroemer v. Tantillo*, 2017 U.S. Dist. LEXIS 218622, *20-

21 (W.D.N.Y. Jun. 14, 2017) (finding a proposed declaration that the plaintiff's conviction "was obtained in violation of his constitutional rights" and "directing [the DA] to consent to set [the conviction] aside" to be "tantamount" to the relief sought in *Teichmann* and not cognizable under §1983), *aff'd*, 758 Fed. Appx. 84 (2d Cir. 2018).

As "additional support" for its holding in *Teichmann*, the Second Circuit relied on the *Rooker-Feldman* doctrine, 769 F.3d at 826, which applies with equal force to Mees' claim. Named after *Rooker v. Fidelity Trust Co.* and *District of Columbia Court of Appeals v. Feldman*, the *Rooker-Feldman* doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quotation omitted). Because district courts have only original jurisdiction, claims that function as appeals of state court judgments are barred. *Id.*; *see also Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ("Underlying the *Rooker-Feldman* doctrine is the principle [that] only the Supreme Court may review state-court decisions"). In *Hoblock*, the Second Circuit established a four-part test to determine whether *Rooker-Feldman* applies:

> (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Sung Cho*, 910 F.3d at 645 (citing *Hoblock*, *supra*, at 85).

This test is satisfied here. Mees' claim for declaratory relief that "vacate[s]" the ACD is, in effect, an appeal from the disposition entered in Criminal Court and the Criminal Court orders denying her motions that similarly sought to "undo" that result. Viewing the *Hoblock*

15

elements one at a time, the first is met because Mees lost in state court upon the entry of the ACD with its conditions of counseling sessions and a "full and final" order of protection, and then lost again when her motions to vacate or reopen the ACD were denied. The second *Rooker-Feldman* element is met because, as the amended complaint makes plain, the injuries that Mees seeks to remedy are the disposition entered in Criminal Court and the subsequent orders of the Criminal Court denying her motions to reopen the prosecution. *Rooker-Feldman*'s "paradigm situation" is where the plaintiff has "repaired to federal court to undo the [state] judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (quotation omitted); *see also Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 247 (D. Conn. 2016) (finding a claim that a state court judgment "should be vacated or set aside" to be "precisely the type of case the *Rooker-Feldman* doctrine bars").[9]

The third *Rooker-Feldman* element is met because a declaration by this Court vacating the March 2014 disposition reached in Criminal Court would have the effect of overturning the judgment and orders of the state court. As the Second Circuit noted on the analogous facts presented in *Teichmann*, "to the extent that [the plaintiff] seeks a declaration that his state court conviction is invalid, he seeks nothing more than review of a state court judgment." 769 F.3d at 826. In this case, exactly as in *Teichman*, a declaration vacating the prior disposition

---

[9] The procedural posture of Mees' prosecution and the nature of the relief she seeks remove this case from the ambit of *Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009). In *Green*, the Second Circuit held that an ACD did not prohibit the plaintiff, a respondent in a Family Court removal proceeding, from seeking damages arising from the loss of custody over her child pursuant to a temporary removal order. *Id.* at 102-03. Unlike this case, *Green* is silent with respect to whether the ACD accepted by the plaintiff had conditions. *Id.* at 102. Further unlike this case, the ACD was not the subject of the plaintiff's §1983 claim. The subject of her claim was the temporary removal order, which remained in place for only four days before it was superseded by a second order returning the child to her custody. *Id.* at 102-03. Finally, unlike this case, the plaintiff sought only damages—not a declaration vacating the removal order or the ACD. *Id.* at 103.

entered by the Criminal Court "does not provide any relief against [the state officials]" who allegedly violated Mees' constitutional rights, but rather, amounts to collateral review and rejection of the judgment and orders of the state court. *Id.* Finally, the fourth *Rooker-Feldman* element is met because the Criminal Court disposition and orders at issue were entered before Mees filed this lawsuit.

Having failed to obtain relief via the motions and appeals filed in state court, Mees cannot invoke §1983 to ask this Court to do precisely what the Criminal Court found had no basis in the procedural rules that govern state criminal matters: vacate an already dismissed-and-sealed ACD. Ex. J at 6.

### III. Any §1983 claim against the DA defendants based on an alleged *Brady* violation and any *Monell* claim against the City based on the same are untimely

Assuming *arguendo* the amended complaint plausibly alleges a *Brady* violation, which defendants argue elsewhere herein is not the case, *see* Part V, *infra*, any claim flowing from that violation is untimely. The limitations period for a §1983 claim is borrowed from the general limitations period for a personal injury claim brought under state law, which, for a §1983 claim accruing in New York, is three years. *Okure v. Owens*, 488 U.S. 235, 251 (1989). The accrual date for a §1983 action, on the other hand, is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The "standard rule" is that accrual begins "when the plaintiff has a complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief." *Id.* (quotation omitted).

In this case, there are many dates on which the Court could find that Mees' *Brady* claim accrued, none of which render her claim timely. At the outset, the Criminal Court complaint itself alleged that Mees sent Buiter "naked pictures" of herself. Ex. 1. The photos were thus

17

a point of contention known to the defense from the inception of the prosecution. The amended complaint and the attached letters further confirm that, as early as October 2014, Mees knew that Buiter had provided the DA's Office with copies of the photos that she identifies as the withheld *Brady* material. AC ¶19; Ex. B at 2; Ex. C at 18. At that time, Mees possessed copies of the photos herself—which Buiter had appended to his motion to dismiss the defamation suit—and thus knew of their alleged exculpatory nature and impeachment value while the charges against her remained pending. AC ¶18. Indeed, per the amended complaint, later that month, Mees' attorneys charged the DA's Office with "suppress[ing] material exculpatory evidence" in the form of the photos. *Id.* at ¶19. The amended complaint further makes clear that, as early as February 2015, Mees knew that the DA's Office had "refused to produce any of the [photos] that Buiter [had handed to the prosecution]" in response to her attorneys' claim that the photos were exculpatory. *Id.* at ¶21. In other words, by February 2015, Mees was aware that Buiter had provided the DA's Office with the nude photos that are the subject of her §1983 *Brady* claim; that the photos had alleged exculpatory and impeachment value; and that the DA's Office had continued to refuse to produce the photos—in any format—despite her attorneys' insistence that they were *Brady* material.

This lawsuit was not filed until August 2019, meaning that any §1983 claim premised on an alleged *Brady* violation is untimely if it accrued before August 2016. The prevailing view in this circuit is that *Heck v. Humphrey*, 512 U.S. 477 (1994)—which bars a §1983 claim that implies the invalidity of a conviction or sentence—does not apply to a fair trial claim, such as a *Brady* claim, where, as here, the prosecution terminated with an ACD. *Ross v. City of New York*, 2019 U.S. Dist. LEXIS 169762, *18-20 (E.D.N.Y. Sept. 30, 2019) (collecting cases). It

is thus arguable that Mees could have filed a §1983 claim against the DA defendants or the City based on the alleged *Brady* violation during the adjournment period of the ACD. The Court, however, need not resolve this issue to find that her claim is untimely. At the very latest, Mees had a "complete and present cause of action," *Wallace*, *supra*, in March 2015, when the adjournment period of the ACD expired and the charges were dismissed and sealed. Ex. A. Because the three-year limitations period on any §1983 *Brady* claim, and consequently any municipal liability flowing from that alleged *Brady* violation, would have expired in March 2018, this lawsuit is untimely.

To circumvent this defense, Mees alleges that the limitations period was extended due to the alleged statement of ADA Savur that the ACD could be "undone" after the expiration of the adjournment period if Mees returned with more evidence. AC ¶60. To this end, Mees references the letter that she received in August 2016 from ADA Moore declining her request to "undo" the ACD. *Id.* at ¶¶60, 63; Ex. H.[10] Mees' appeal for equitable tolling misses the mark. August 2016 cannot be accrual date of Mees' *Brady* claim, because the issue of whether a dismissed-and-sealed ACD can be reopened is distinct from the issue of whether a *Brady* violation occurred. The sole ground for this lawsuit is Mees' §1983 *Brady* claim; a free-standing claim to vacate the ACD does not exist, nor, as argued above, is such a claim cognizable under §1983. By February 2015, Mees unquestionably "kn[ew] or had reason to know of the injury which is the basis of [her] action"—the *Brady* violation. *Singleton v. New York*, 632 F.2d 185

---

[10] As independent grounds to deny the request, ADA Moore found that the disposition that Mees sought to disturb was "very reasonable." Ex. H. Even if a mechanism existed to reopen a dismissed-and-sealed prosecution, the DA's Office did not agree with Mees that such relief was warranted in this case.

(2d Cir. 1980). The alleged statement of ADA Savur did not operate to conceal that injury or imply agreement with Mees' position as to the photos' alleged exculpatory and impeachment value. On the contrary, as the amended complaint alleges, after Mees' attorneys charged the DA's Office with suppressing *Brady* material, ADA Savur disagreed with their position that production of the photos was required and further disagreed that the photos warranted a different disposition for the case. AC ¶¶20, 21 (alleging that, during the parties' February 2015 conversation, ADA Savur "refused" to dismiss the charges or "produce any of the unlawful surveillance images [provided by Buiter]").[11] The "rare and exceptional circumstances" that may justify equitable tolling are not present here. *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007).

## IV.   The DA defendants are immune from suit

No matter whether the DA defendants are named in their official or individual capacity, they are immune from suit with respect to Mees' claims for declaratory relief and damages. A prosecutor sued in his official capacity for conduct arising from the handling of a state prosecution—as the DA defendants have been sued here—is considered to be a state official and is protected by the same Eleventh Amendment immunity that belongs to the state, itself. *See, e.g.*, *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993). The Eleventh Amendment prohibits a claim for damages against a state official so sued, *id.*, as well as a claim

---

[11] It is apparent from the sequence of events that the nature of the disagreement between the parties was not, as Mees now characterizes it, an alleged *Brady* violation, but rather, whether the photos—which were known and available to both sides—had the significance that the criminal defense ascribed to them. The October 2014 letters sent by Mees' attorneys to the DA's Office do not actually accuse the DA's Office of suppressing *Brady* material; instead, the letters argue that subsequent events made clear the alleged exculpatory and impeachment value of the photos. Ex. B at 2; Ex. C at 2.

for declaratory relief that is retrospective in nature—i.e., a claim that, like the one raised by Mees in this case, seeks a declaratory judgment that a state official violated federal law in the past. *Green v. Monour*, 747 U.S. 64, 73-74 (1985).[12]  Accordingly, Mees cannot pursue damages or declaratory relief against the DA defendants in their official capacities.

A prosecutor sued in his individual capacity—as the DA defendants have also been sued here—is shielded by absolute immunity for "virtually all acts, regardless of motivation," that are associated with his judicial function as an advocate. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).  The individual immunity of a prosecutor is one component of the "cluster of immunities" that protect the various participants in the judicial system, all of which share the purpose of enabling "judges, advocates, and witnesses to perform their respective functions without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978).  These immunities act as a bar to claims for damages brought against judicial actors in their individual capacities, *see, e.g.*, *Dory*, *supra*, at 83; *Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001), as well as to claims for declaratory relief that are retrospective in nature. *Wilson v. Wilson-Polson*, 2010 U.S. Dist. LEXIS 100425, *26 (S.D.N.Y. Sept. 22, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009) ("[T]o the extent Plaintiffs' declaratory claims are retrospective in nature in that they seek a

---

[12] *See also Ifill v. New York Cty. D.A.*, 2014 U.S. Dist. LEXIS 197430, *8-9 (S.D.N.Y. July 8, 2014) (finding that the Eleventh Amendment barred a claim for "retrospective declaratory relief" against a prosecutor sued in his official capacity); *Colon v. Vance*, 2019 U.S. Dist. LEXIS 111476, *2 (S.D.N.Y. July 3, 2019) (same).

declaration that the Justices' past enforcement of the Town's rental law has violated the Constitution, they are barred by the doctrine of absolute immunity"). [13]

In this case, the decision whether to disclose the alleged *Brady* material—i.e., the nude photos—during plea discussions or prior to the expiration of the ACD undoubtedly relates to the DA defendants' advocacy functions. The Second Circuit has consistently applied absolute immunity to both types of conduct, namely, engaging in plea negotiations and identifying and disclosing *Brady* material. *See, e.g.*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995); *Hill v. City of New York*, 45 F.3d 653, 662 (2d Cir. 1995); *Parkinson, supra*, at 152-53; *Warney v. Monroe County*, 587 F.3d 113, 122-25 (2d Cir. 2009). Because Mees' claims seeking damages and retrospective declaratory judgment against the DA defendants in their individual capacities implicate the defendants' prosecutorial functions, absolute immunity acts as a bar to suit.

## V.   Mees has not plausibly alleged a *Brady* violation

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (*en banc*) (quotation omitted). Prejudice is measured by the materiality of the evidence to guilt or punishment. *Brady*, 373 U.S. at 87; *see also Poventud, supra*, at 134 ("The scope of a defendant's *Brady*-based constitutional right is ultimately defined retrospectively, by reference to the likely

---

[13] *See also Johnson v. Carrasquilla*, 2018 U.S. Dist. LEXIS 176578, *29-30 (D. Conn. Oct. 15, 2018) (finding that absolute immunity barred a claim for "retrospective declaratory relief" against prosecuting attorneys sued in their individual capacities); *LeDuc v. Tilley*, 2005 U.S. Dist. LEXIS 12416, *21 (D. Conn. Jun. 21, 2005) (same).

effect that the suppression of particular evidence had on the outcome of the trial") (alteration and quotation omitted).  Evidence is not suppressed within the meaning of *Brady* if the defendant "either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (quotation omitted).

Assuming *arguendo* that any nude photos in the prosecution file had the exculpatory or impeachment value that Mees ascribes to them and were material to the charges against her, the photos were not suppressed.[14]  The document that initiated the prosecution stated that Mees sent Buiter "naked pictures" of herself.  Ex. 1.  Mees, as the only other party to the exchange, had personal knowledge of the accuracy of this statement and was in position to deny it, which Mees claims that she did, via a motion to dismiss filed in advance in the plea discussions.  AC ¶29 ("I specified on the motion to dismiss of October 14, 2013, that I only sent Buiter one selfie, and attached evidence showing that Buiter responded with gratitude").  Mees' awareness in this regard is fatal to her *Brady* claim.  *Cf. People v. Sebak*, 270 A.D.2d 166, 167 (1st Dept. 2000) ("[T]he Grand Jury minutes and police reports regarding an unrelated incident between defendant and the complainant did not constitute *Brady* material since defendant obviously was aware of the incident and based his defense upon it").[15]  Further,

---

[14] Relevant to the issue of materiality, as the Criminal Court noted in denying Mees' first petition for a writ of *error corum nobis*, the superseding information that supplanted the Criminal Court complaint made "no mention of [the 1,250 nude photographs], and therefore, those photographs, if they existed at all, were not the basis of for any of the charges." Ex. J at 4.

[15] *See also People v. McClain*, 53 A.D.3d 556, 557 (2d Dept. 2008) ("Defendant…knew of the possibility that [his] arrest was captured by a surveillance camera from a nearby housing project…[and] consistently claimed the surveillance videotape would be exculpatory.  Since defendant knew of the possibility that a tape existed, it was not *Brady* material even if exculpatory"); *People v. Singh*, 5 A.D.3d 403 (2d Dept. 2004) ("In any event, since the defendant knew of the evidence [an audiotape of a

Mees' attorneys independently obtained copies of the same images prior to the expiration period of the ACD, and continued to advance the position that Mees did not send the photos. Perhaps, as Mees later claimed, her attorneys at the time were ineffective for failing to abide by her request to move to dismiss the charges at this point, Ex. J at 14; Ex. L at 7, but, for purposes of her *Brady* claim, the DA's Office cannot be said to have "suppressed" the photos where, as here, "the defendant knew of, or should reasonably have known of, the evidence and its exculpatory nature." *People v. Doshi*, 93 N.Y.2d 499, 507 (1999).

## VI.   Mees has not plausibly alleged a §1983 *Monell* claim

Mees does not allege a plausible municipal liability claim.  First, there is no underlying constitutional violation.  Second, Mees does not allege any plausible policy, practice, or custom sufficient to establish municipal liability, and instead pleads conclusory and speculative allegations which are insufficient to state this claim.

### A. *Mees fails to allege an underlying constitutional violation*

As the amended complaint fails to state facts sufficient to allege any constitutional deprivation, Mees cannot establish a claim against the City for municipal liability.  To succeed on a *Monell* claim, a plaintiff must first establish that a municipal agent committed an underlying constitutional violation.  *See, e.g., Simpson v. Town of Warwick Police Dept.*, 159 F. Supp. 3d 419, 434 (S.D.N.Y. 2016).  When a plaintiff fails to "allege a valid underlying constitutional deprivation, [her] claim against New York City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), must also fail." *Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir.

---

pertinent 911 telephone call] and its exculpatory nature well in advance of trial, it was not *Brady* material") (citation omitted).

2014).  Mees alleges broadly that the DA defendants failed to disclose *Brady* material and that this was consistent with the practice of the DA's Office.  However, as argued above, she cannot establish her claim under the facts alleged and thus, fails to satisfy the threshold requirement for a *Monell* claim as there is no underlying constitutional violation.  Therefore, defendant City should be dismissed.

### B. Mees fails to plead any municipal policy, practice, or custom sufficient to establish a §1983 Monell claim

Assuming *arguendo* that Mees' constitutional right to receive *Brady* material was violated, she has not pled facts sufficient to establish the existence of a municipal policy, practice, or custom.  It is well-established that a municipality "may only be held liable where the entity *itself* commits a wrong."  *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) (emphasis in original).  "When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing.  The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights."  *Price v. City of New York*, 2018 U.S. Dist. LEXIS 105815, *16-17 (S.D.N.Y. June 25, 2018).  In this case, Mees merely alleging that the DA defendants were "acting under the color of state law," is insufficient by itself to establish municipal liability against Defendant City.  AC ¶¶51, 82.

A municipality is subject to liability under §1983 when an official policy, custom, or practice contributes to a constitutional deprivation.  *Monell*, 436 U.S. at 694.  Pursuant to *Walker v. City of New York*, a plaintiff can satisfy the policy, practice, or custom element by alleging:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for established municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

2015 U.S. Dist. LEXIS 91410, at *14-15 (S.D.N.Y. July 14, 2015). In this case, as discussed below, Mees does not allege sufficient facts in the complaint to satisfy any of the prongs discussed in *Walker*.

### 1. Mees does not allege a formal policy endorsed by the City

Municipalities can be liable under §1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In this case, Mees does not allege any facts illustrating a formal policy that was officially adopted by the City. In the amended complaint, Mees points to a rule issued by Chief Justice of the New York Court of Appeals Janet DiFiore on November 8, 2017, requiring prosecutors to "comb through their file and disclose all evidence favorable to the defense at least 30 days before major criminal trials." AC ¶47, fn.2. However, Mees accepted an ACD so her case did not proceed to trial, nor is there any suggestion that this misdemeanor prosecution, which ended in an offer that rendered the prosecution a nullity, is the kind of "major criminal trial" being contemplated. AC ¶16. To the extent Mees intends to allege that the rule put the City on notice, the "rule" was promulgated well after Mees' prosecution and thus cannot be used to

allege municipal liability. *Id.* Therefore, since Mees fails to allege any formal policy adopted by defendant City, the claim against defendant City should be dismissed.

### 2. Mees fails to allege any action by a government official that caused the alleged constitutional violation

Mees also fails to satisfy the second prong in *Walker*. As the Supreme Court has explained, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Additionally, "the official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83. In a complaint, "[p]laintiffs must provide more than conclusory allegations; they must add specific factual support to show the existence of a pattern." *McCray v. City of New York*, 2007 U.S. Dist. LEXIS 90875, *93 (S.D.N.Y. Dec. 11, 2007).

There are no plausible facts that DA Vance was involved, in his final decision-making authority, in the alleged actions taken or decisions made by the other DA defendants. The mere fact that DA Vance sent plaintiff a letter tasking an Assistant District Attorney to investigate the matter, *see* Ex. G, is insufficient to show that DA Vance was personally involved in any alleged constitutional depravation. *See O'Connor v. Barnes*, 1998 U.S. Dist. LEXIS 3386, *6 (N.D.N.Y. Mar. 18, 1998) (noting that a county policymaker "must be personally and directly involved in the constitutional deprivation for the municipality to be considered the 'moving force' behind the deprivation" and open the county to *Monell* liability). Moreover, Mees does not allege that DA Vance had any involvement with this case other than assigning an ADA to handle the case, thus, DA Vance lacks personal involvement in the alleged *Brady* violation. *See Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir. 2004)

(finding that no personal involvement exist without any "allegation that [the defendant] engaged directly in any discriminatory conduct").

The mere fact that Mr. Vance is the District Attorney of New York County is also insufficient to establish municipal liability. The Second Circuit has ruled that "a defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). "'[S]upervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act.'" *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983). Here, Mees does not allege any facts demonstrating that DA Vance had actual or constructive notice of any alleged unconstitutional practices, nor does the amended complaint allege that DA Vance demonstrated gross negligence or deliberate indifference by failing to act.

Therefore, since Mees fails to allege that DA Vance was personally involved with Mees' case such that he caused any alleged constitutional deprivation, the municipal liability claim against defendant City should be dismissed.

### 3. Mees fails to allege a widespread pattern of misconduct

Mees inadequately pleads that there is a pattern of misconduct so persistent and widespread as to constitute a custom or practice of which defendants must have been aware and ignored. "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."

28

*Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  The pattern of misconduct must be "sufficiently widespread as to acquire the force of law." *Id.*  "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).  Additionally, "[i]t is well settled that the mere assertion that a municipality has a custom, policy, or practice that led to the alleged unconstitutional deprivation is 'generally insufficient to establish *Monell* liability.'" *Ezaqui v. City of New York*, 726 F. Supp. 2d 275, 284 (S.D.N.Y. 2010).

Mees' attempt to support a claim of widespread *Brady* misconduct such that there is municipal liability is unavailing.  The amended complaint references a report from the New York State Bar Association on wrongful/reversed convictions.  AC ¶48.  Mees' attempt to attribute municipal liability against defendant City by merely attaching a report from the New York State Bar Association to the amended complaint is in and of itself insufficient to establish municipal liability. *See Aguirre v. City of New York*, 2017 U.S. Dist. LEXIS 155422, *15 (E.D.N.Y. Sept. 22, 2017) (Plaintiff's sole reliance on "reports and articles . . . are 'inadequate to allege a policy or custom of the City'") (citing *Peterec v. City of New York*, 2015 U.S. Dist. LEXIS 28504, *18 (S.D.N.Y. Mar. 6, 2015)).  Notably, Mees misses the pleading mark by failing to allege facts in the amended complaint that specifically connects the facts of her case to the Bar Association's Report. *See Isaac v. City of New York*, 2018 U.S. Dist. LEXIS 132995, *51-52 (E.D.N.Y. Aug. 6, 2018); *see also Gomez v. City of New York*, 2017 U.S. Dist. LEXIS 38100, *28-29 (E.D.N.Y. Mar. 16, 2017) ("Research reports may be used to bolster *Monell* claims, but only if those reports are sufficiently connected to the specific facts of the case and

are of relatively recent vintage."). Therefore, the Bar Association's Report is insufficient to establish a custom on behalf of the City.

Second, Mees attempts to establish a municipal policy, custom, or practice by citing to numerous state law decisions, which is also insufficient to establish municipal liability. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22-23 (2d Cir. 2012) (the "citation to various lawsuits . . . is not probative of the existence of an underlying policy"). Additionally, in a footnote, AC ¶56, fn4, Mees cites to thirteen state court decisions for the proposition that such cases are sufficient to establish a policy, custom, or practice by the New York County DA's Office for failing to produce *Brady* material or information. However, those cases are distinguishable from the present matter before the Court. Nine of the state court decisions Mees cites to were prosecuted by the other District Attorney's Offices. *People v. Hunter*, 11 N.Y.3d 1 (2008); *People v. Pressley*, 91 N.Y.2d 825 (1997); *People v. Thompson*, 54 A.D.3d 975 (2d Dep't 2008); *People v. Phillips*, 55 A.D.3d 1145 (3d Dep't 2008); *People v. Williams*, 50 A.D.3d 1177 (3d Dep't 2008); *People v. Harris*, 35 A.D.3d 1197 (4th Dep't 2006); *People v. Leon*, 23 A.D.3d 1110 (4th Dep't 2005); *People v. Hendricks*, 4 A.D.3d 798 (4th Dep't 2004); *People v. Garcia*, 46 A.D.3d 461 (1st Dep't 2007); *People v. Knight*, 2007 N.Y. Misc. LEXIS 8958, 2007 WL 4896695 (Sup. Ct. Queens County 2007). Any state court decision regarding actions taken by other prosecutorial offices is insufficient to establish any alleged policy, practice, or custom by the New York County District Attorney's Office. With regard to the three remaining opinions cited by Mees, *People v. Williams*, 7 N.Y.3d 15 (2006); *People v. Colon*, 13 N.Y.3d 343 (2009); *People v. Gantt*, 13 A.D.3d 204 (1st Dep't 2004), none involve the failure to turn over photographs to a criminal defendant and thus, all are inapplicable to the present action.

Even if the Court accepts Mees' allegation that the DA defendants failed to disclose *Brady* material during the plea discussions, a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]." *Hayes v. Perotta*, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*").

Lastly, Mees does not plausibly allege "a practice that is so widespread such that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials." *Walker*, 2015 U.S. Dist. LEXIS 91410, *14-15. Mees' allegations that "defendant Cyrus Vance Jr. had actual knowledge of the violation of my right to due process and acquiesced in that violation," *see* AC ¶49, is speculation without any supporting facts. In fact, it is the type of boiler plate conclusory statement that is disfavored. *See Abreu v. City of New York*, 657 F. Supp. 2d 356, 361 (E.D.N.Y. 2009). Accordingly, Mees has failed to plead sufficient facts such that the Court can plausibly find a widespread pattern of misconduct as to constitute a policy or custom that directly caused her alleged injury. Therefore, defendant City should be dismissed.

### 4. Mees fails to plausibly plead a "failure to train" claim

Mees also does not plead any facts alleging that the City "failed to train" the DA defendants. To establish such a claim, the failure to train must amount to deliberate indifference. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011)

(quotation omitted).  Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain employees about their duty to avoid violating citizens' rights  rise to the level of an official government policy for purposes of § 1983." *Id.* (noting that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train").  To succeed on a "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." *Id.*  With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." *Id.*  (noting that, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

Here, Mees does not allege any plausible facts questioning the validity of the training at the DA's Office and does not satisfy deliberate indifference under *Connick*.  First, other than asserting a conclusory allegation, AC ¶ 57, Mees fails to allege any facts showing that the DA's Office did not provide proper training to Assistant District Attorneys on producing *Brady* material.  To that point, the Second Circuit has held that "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support at least circumstantially, such an inference." *Dwares*, 985 F.2d at 100; *Salgado v. Carlo*, 2019 U.S. Dist. LEXIS 53139, *19 (S.D.N.Y. Mar. 28, 2019) ("Generally, merely asserting, in the absence of factual allegations in support, that a municipal entity has a custom

or policy that denies a plaintiff a constitutional right is insufficient to establish a plausible claim").

Furthermore, Mees does not allege any facts *explaining* that a failure to train will cause the deprivation of a citizen's constitutional rights.  Instead, Mees proffers a bald conclusory allegation, without any supporting facts, that such a policy at the New York County DA's Office exists.  However, "[t]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injures." *Dwares*, 985 F.2d at 100.  As such, it cannot be construed from the amended complaint that the City and/or the DA's Office failed to train its attorneys regarding *Brady* and Mees cannot satisfy the stringent requirement of establishing deliberate indifference.

Therefore, since Mees fails to plead plausible facts sufficient to establish a municipal liability claim, this claim must be dismissed.

## **CONCLUSION**

For the above reasons, defendants respectfully request that the Court enter an order pursuant to Rule 12(b)(1) and (b)(6) dismissing the amended complaint as pled against the City and the DA defendants, with prejudice.

Dated: Stamford, Connecticut
      April 21, 2020

Dated: New York, New York
      April 21, 2020


CYRUS R. VANCE, JR.
District Attorney of New York County
One Hogan Place
New York, New York 10013
(212) 335-9000
*Counsel for the District Attorney's Office*

JAMES E. JOHNSON
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 356-2384
*Counsel for the City of New York*


By:   *Elizabeth Krasnow /s*
      Elizabeth N. Krasnow
      Assistant District Attorney

By:   *William T. Gosling /s*
      William T. Gosling
      Assistant Corporation Counsel