UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

HELEEN MEES,                                          :
                Plaintiff,                        :
                                 :

      v.                                              :      19 Civ. 7346 (AJN)(KNF)
                                 :

CITY OF NEW YORK                                     :
MANHATTAN DISTRICT ATTORNEY'S OFFICE                 :
CYRUS VANCE JR.                                      :
NITIN SAVUR                                          :
JEANINE LAUNAY                                       :
SAMANTHA SCHOTT,                                     :
                  Defendants.                       :
------------------------------------------------------------------X

MEMORANDUM IN OPPOSITION TO MOTION PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND (B)(6)

HELEEN MEES
WEESPERZIJDE 12-4
1091 EB AMSTERDAM
THE NETHERLANDS
heleen@heleenmees.com
+31-6-4130-2222

*Plaintiff Pro Se*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………..………..…………… ii

INTRODUCTION………………………………………………..……………….……… 1

STANDARD OF REVIEW…………………………………………………….....……… 2

ARGUMENT……………………………………………………………….……...……3

    I.    I Have Standing To Seek Declaratory Relief …...…………………………….....… 3

    II.    The Declarations That I Seek Are Cognizable Under § 1983 And Not Barred
    By The *Rooker-Feldman* Doctrine…………………………………………………… 4

    III.    My Claims Are Timely……………………………………………………………… 5

    IV.    The DA Defendants Should Not Be Immune From Suit…………....……………… 7

    V.    I Have Plausibly Alleged A *Brady* Violation…...………………………………… 7

    VI.    I Have Plausibly Alleged A *Monell* Claim…………………………………...…… 10

        (A) There Is An Underlying Constitutional Violation…………………………..…….. 10

        (B) I Plausibly Allege A Practice Or Custom Sufficient To Establish Municipal
        Liability……………………………………………………………………... 10

            2)    I Plausibly Allege An Action By A Government Official That Caused The
            Constitutional Violation…………..……………………………………….. 11

            3)    I Plausibly Allege A Widespread Pattern Of Prosecutorial Misconduct………... 12

            4)    I Plausibly Plead A "Failure To Train" Claim………..……………………… 14

    VII.    Defendants' Attempt To Recast My Claims As Insufficient Assistance Of Counsel
    Claims is Improper…………………………………………………………….…...16

CONCLUSION……………………………………………………………………..… 16

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 157 (1970) ............................... 2

*Amnesty Am. v. Town, of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004).................................... 15

*Anderson*, 477 U. S. ............................................................................................. 2

*Arbutina v. Babuleyan*, 428 N.Y.S.2d 99, 100 (1980) ......................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................... 2, 11

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)................................ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................... 2

*Board of Regents v. Tomanio*, 446 U.S. 478 (1980) ............................................... 6

*Brady*, 373 U.S. at 87 .......................................................................................... passim

*Case v. City of N.Y.*, 233 F. Supp. 3d 372 (S.D.N.Y. 2017) .............................. 14

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ......................... 13

*Connick v. Thompson*, 563 U.S. 51, 60-61 (2011)................................................ 14

*Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569 (E.D.N.Y. 2017) ......................... 5

*Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993).................................... 15

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 (2005) ............................ 5

*Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) ................... 3

*Gomez v. City of New York*, 15-CV-7524 (JPO) (S.D.N.Y. Aug. 29, 2017) .............................. 12

*Green v. City of New York*, 359 F. App'x 197 (2d Cir. 2009) ............................ 15

*Green v. Mattingly*, 585 F.3d 97, 99 (2d Cir. 2009) ........................................... 4, 5

*Hayes v. Perotta*, 751 F.Supp.2d 597, 598 n. 1 (S.D.N.Y. 2010)............................ 3, 13

*Heck, 512 U.S.*...................................................................................................................... 5

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ............................... 4, 5

*Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) ........................................... 14

*Johnson v. N.Y. City Police Dep't,* 651 F. App'x 58, 3 (2d Cir. 2016) ............................... 5

*Kiernan*, 619 N.Y.S.2d .................................................................................................. 6

*Kroemer v. Tantillo*, 2017 U.S. Dist. LEXIS 218622, *20- 14 21 (W.D.N.Y. Jun. 14, 2017) ..................... 4

*Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 167-68 (1993)........... 15

*Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) ...................................................... 8

*Liberty Lobby*, supra, at 255, 106 S.Ct. 2505 .............................................................. 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) .......................................... 3

*McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983) ................................................. 12

*Mees v. Buiter*, No. 14-1866 (2d Cir. 2015)............................................................... 1

*Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) ......................................... 12

*Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) ................................................ 9

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ........................... 6, 10, 12, 13

*People v. Colon*, 13 N.Y.3d 343 (2009)................................................................. 13

*People v. Desselle*, 86 N.Y.S.3d 887 (1st Dept., 2018) ................................................. 13

*People v. Gantt*, 13 A.D.3d 204 (1st Dep't 2004)..................................................... 13

*People v. McCutheon*, 946 N.Y.S.2d 570 (1st Dept., 2012) ............................................. 13

*People v. McGhee*, 2019 N.Y. Slip Op. 9116 (1st Dept., 2019).......................................... 13

*People v. Mees* (2013) .................................................................................. 13

# TABLE OF AUTHORITIES (CONT'D)

Page(s)

*People v. Montgomery*, 69 N.Y.S.3d 601 (1st Dept., 2018) ............................................................................. 13

*People v. Ortiz*, 85 A.D.3d 588 (1st Dept., 2011) .............................................................................................. 13

*People v. Peque*, 3 N.E.3d 617 (N.Y. 2013) ....................................................................................................... 13

*People v. Pierides*, Index No. 732/18 (Sup. Ct. New York Cty, 2018) ............................................................. 13

*People v. Sinha*, 19 N.Y.3d 932 (N.Y. 2012) .................................................................................................... 13

*People v. Ulerio*, 27 N.Y.S.3d 558 (1st Dept., 2016) ....................................................................................... 13

*People v. Williams*, 7 N.Y.3d 15 (2006) ........................................................................................................... 13

*Pinero v. Casey*, 10 Civ. 4803 (JSR) (JCF) (S.D.N.Y. 2012) ............................................................................ 3

*Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) ................................................................ 7, 9

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000) ......................................................................... 3

*Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ................................................................................ 12

*Robinson v. City of N.Y.,* 265 N.Y.S.2d 566, 569-70 (1965) ............................................................................. 6

*Simcuski v. Saeli*, 44 N.Y.2d 442, 448-49 (1978) ............................................................................................. 6

*Sung Cho*, 910 F.3d ........................................................................................................................................... 4

*Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) .......................................................................... 3, 4

*United States v. Avellino*,136 F.3d 249, 255 (2d Cir.1998) ............................................................................... 9

*United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) ............................................................................ 8

*United States v. Persico*, 164 F.3d 796, 804–05 (2d Cir.1999) ......................................................................... 9

*Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015) ............................... 11

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

Page(s)

**LAWS**

28 U.S.C. § 1782 ................................................................................................................... 1

42 U.S.C. § 1983 ........................................................................................................... passim

Federal Rule of Civil Procedure Rule 12(b)(1) .............................................................. 2

Federal Rule of Civil Procedure Rule 12(b)(6) .............................................................. 2

Federal Rule of Civil Procedure Rule 56(a) .................................................................... 2

New York Civil Practice Law and Rules § 203(b) ......................................................... 6

New York Civil Practice Law and Rules § 203(f) .......................................................... 6

New York Civil Practice Law and Rules § 205(a) ......................................................... 6

New York Criminal Procedural Law § 1.20(13) ............................................................. 5

New York Criminal Procedural Law § 1.20(15) ............................................................. 4

New York Criminal Procedural Law § 160.50 ................................................................ 4

New York Criminal Procedural Law § 440.10(1)(h) ..................................................... 16

New York Penal Law § 250.45 ................................................................................... 2, 9

**OTHER AUTHORITIES**

Final Report on Wrongful Convictions of the New York Bar Association ................. 11, 12, 13, 14, 15

# INTRODUCTION

Jeff Bezos, the founder, CEO, and president of technology company Amazon, last year claimed that he was being "blackmailed" by the *National Enquirer* over a compromising picture. Bezos took the compromising picture himself and sent it to his girlfriend Lauren Sanchez who forwarded it to her brother (!). Nonetheless, these facts sufficed for both the FBI and prosecutors to begin an in-depth criminal investigation into the claims of Jeff Bezos.

I was arrested on the false allegation that I sent Willem H. Buiter ("Buiter") "naked pictures" of myself that severely annoyed or alarmed Buiter. When I found out on October 13, 2014, that Buiter had used more than a thousand unlawful surveillance images to incite my arrest and prosecution, my attorneys immediately contacted ADA Samantha Schott ("Schott") and DA Cyrus Vance Jr. ("Vance") to demand that the pending charges be dropped and the unlawful surveillance images investigated.

Instead of investigating my claims, ADA Nitin Savur ("Savur") told my attorneys that we could come back if we had more evidence. Savur refused to produce any of the unlawful surveillance images nor the metadata and claimed that my case could still be dismissed in the interest of justice after the ACD had expired. The defendants do not dispute these factual allegations in the Amended Complaint ("AC"). Instead, the defendants berate me for not taking legal action over Savur's refusal to produce the unlawful surveillance in November 2014 and for trusting Savur that the charges could still be dismissed in the interest of justice after the ACD had expired.

My attorneys were already appealing the decision by Chief Justice Loretta Preska of the U.S. District Court for the Southern District of New York, denying me discovery pursuant to 28 U.S.C. § 1782. The Second Circuit overturned that decision on July 17, 2015. *See Mees v. Buiter*, No. 14-1866 (2d Cir. 2015). At the time, I had spent more than $250,000 on attorney's fees. How much more money was I supposed to spend for justice to be done? Also, such legal action would not have stopped the ACD from expiring.

It is striking that the FBI and prosecutors leave no stone unturned to investigate the claims of the world's richest man, which do not even amount to blackmail on their face, whereas the DA defendants declined to investigate my claim of surreptitious recording of private parts, which constitutes a felony crime under New York Penal Law § 250.45. It is outright malicious that the DA defendants suppressed material exculpatory and impeachment evidence and lied to my attorneys to dissuade me from moving the criminal court to vacate the ACD before it expired.

My arrest and prosecution over Buiter's false accusations have led to the total destruction of my career, earning capacity, and personal life. This is an ongoing injury for which I am entitled to a remedy under 42 U.S.C. § 1983.

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment . . .  a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *See Anderson*, 477 U. S., at 249. Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. Rule Civ. Proc. 56(a). In making that determination, a court must view the evidence "in the light most favorable to the opposing party." *See Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 157 (1970).

"[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence . . . "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, supra, at 255, 106 S.Ct. 2505. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000).

Where a plaintiff is proceeding *pro se,* her pleadings "are held to a lesser standard than those drafted by attorneys." *Hayes v. Perotta*, 751 F.Supp.2d 597, 598 n. 1 (S.D.N.Y. 2010) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008)). *See Pinero v. Casey*, 10 Civ. 4803 (JSR) (JCF) (S.D.N.Y. 2012).

## ARGUMENT

## I.     I HAVE STANDING TO SEEK DECLARATORY RELIEF

To establish standing, a plaintiff must have suffered an "injury in fact" that is (1) "concrete and particularized" and "actual or imminent," (2) "fairly trace[able] to the challenged action of the defendant," and (3) "redressable by a favorable ruling." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). The defendants conflate "injury in fact" with "the challenged action."

The loss of my livelihood and my psychological injuries constitute the "injury in fact" under *Lujan. See* AC, ¶58. My injuries are concrete and particularized. My injuries are ongoing and thus actual and imminent. *Id.* The defendants' suppression of *Brady* evidence constitutes the "challenged action." My injuries are traceable to the challenged action. *Id.* The declaration I seek will alleviate my injuries. *See* Decl., ¶1. The injuries are thus redressable by a favorable ruling. *See Lujan v. Defenders of Wildlife*.

The Second Circuit held that where a plaintiff seeks simply a declaration that there was a past injury but claims no damages or an injunction against future behavior, there is no § 1983 claim because there is no true case or controversy. *See Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014). Not

3

only are my injuries actual and imminent, I also claim damages and seek an injunction against future

behavior. AC, ¶¶58, 59, F. There is thus a true case or controversy under the Second Circuit's holding

in *Teichmann* and I do have standing to seek the declarations sub B and C of the Amended Complaint.

## II.     THE DECLARATIONS THAT I SEEK ARE COGNIZABLE UNDER § 1983 AND NOT BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

Contrary to defendants' assertion, the declarations that I seek sub B and C of the Amended

Complaint are cognizable under § 1983.

The Second Circuit expressly recognized in *Teichmann* that § 1983 is broad in its equitable and

legal remedies. Unlike the plaintiffs in *Teichmann* and *Kroemer*, I do not seek a declaration of innocence

nor does my demand for declaratory relief stand alone. *See Teichmann v. New York*, at 826; *Kroemer v.

Tantillo*, 2017 U.S. Dist. LEXIS 218622, *20- 14 21 (W.D.N.Y. Jun. 14, 2017). Unlike *Teichmann* and

*Kroemer*, I ask for a declaratory judgment vacating the ACD, which would bring me back to the position

of criminal defendant. I also seek damages and injunctive relief. Hence, I do not seek a "naked

declaration of innocence" as *Teichmann* and *Kroemer* did.

My claims are also not barred by the *Rooker-Feldman* doctrine. The Second Circuit established

a four-part test to determine whether the *Rooker-Feldman* doctrine applies. *See Sung Cho*, 910 F.3d at

645 citing *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005):

> (1) the federal-court plaintiff must have lost in state court; (2) the
> plaintiff must complain of injuries caused by a state-court judgment;
> (3) the plaintiff must invite district court review and rejection of that
> judgment; and (4) the state-court judgment must have been rendered
> before the district court proceedings commenced.

First, I am not a state-court loser as the ACD is a favorable disposition. *See* CPL § 160.50, *see

also Green v. Mattingly*, 585 F.3d 97, 99 (2d Cir. 2009). Second, my injuries are not caused by a state-

court judgment. *See* CPL § 1.20(15). Third, I had neither practical reason nor legal basis to appeal the

state-court order as my motion for leave to appeal was denied. *See* AC, ¶45. Fourth, no state-court

judgment was rendered in my case. *See* CPL § 1.20(15). Under *Exxon Mobil Corp.*, the *Rooker-Feldman* doctrine must be applied narrowly to state court judgments only, not to interlocutory orders.[1]

To paraphrase the Second Circuit in *Green v. Mattingly*, which also concerned an ACD: I am not a "state-court loser [ ]" and, in addition, my § 1983 claims do not "invit[e] district court review and rejection" of a state court "judgment." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005). Accordingly, the *Rooker-Feldman* doctrine does not bar my claims in this action.

### III.    MY CLAIMS ARE TIMELY

The defendants argue that I knew from the inception of the prosecution that the photos were a point of contention because the criminal complaint falsely accused me of sending Buiter "naked pictures" of myself. However, Buiter dropped that very accusation in the superseding information so I did not know that the sending of naked pictures of myself was a point of contention after August 5, 2013, other than for the purpose of impeaching Buiter for falsely accusing me.

The defendants assert that I knew as early as October 2014 that Buiter had provided the DA's Office with copies of the unlawful surveillance images. That is incorrect. As of October 2014, I only knew that Buiter *claimed* that he had provided the DA's Office with copies of the unlawful surveillance images. But the facts in the Amended Complaint aver to that Buiter is a persistent liar and Savur refused to say whether the criminal file contained indeed copies of the images that Buiter had attached to his motion to dismiss in the civil action. *See* AC, ¶ 31. Therefore, I could not credibly allege a *Brady* violation. The first time I knew that the criminal file contained about 1200 unlawful surveillance images was when I received the FOIL-production on December 1, 2015. *Id.*, ¶ 21.

---

[1]    My claim for damages is also not barred by *Heck, 512 U.S.* at 487 because an ACD is not a conviction under state law. *See* CPL § 1.20(13), *also Johnson v. N.Y. City Police Dep't,* 651 F. App'x 58, 3 (2d Cir. 2016).

At all events, whether 42 U.S.C. § 1983 and *Monell* claims are tolled is a matter of state law. See *Board of Regents v. Tomanio*, 446 U.S. 478 (1980). New York State has generous tolling and saving statutes, expressing a strong desire to decide cases on their merits. A state savings statute stops the running of the applicable limitations period for claims timely filed but subsequently dismissed for improper venue, for want of jurisdiction or for other reasons not related to the merits. My 42 U.S.C. § 1983 claims are saved under New York Civil Practice Law and Rule §§ 203(b), (f), and 205(a) because the defendants are united in interest and I alleged a *Brady* violation in state court in January 2018, that is, within the statute of limitations for *Brady* violations. *See Dacosta v. City of N.Y.*, 296 F. Supp. 3d 569 (E.D.N.Y. 2017).

My claims are also equitably tolled until at least August 13, 2016, as I relied on Savur's assurance that I could come back if I had more evidence and that my case could still be reopened, and the charges dismissed in the interest of justice after the ACD had expired. *See* AC, ¶ 31.

Under New York State law, a plaintiff can establish entitlement to estoppel one of two ways. Either the plaintiff must show she was induced by fraud, misrepresentation, or deception to refrain from commencing a timely action; or that the defendant engaged in conduct, which was calculated to mislead plaintiff, and that the plaintiff in reliance thereon, failed to timely commence the action. *See Kiernan*, 619 N.Y.S.2d at 724; *Simcuski v. Saeli*, 44 N.Y.2d 442, 448-49 (1978) ("It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."); *Robinson v. City of N.Y.,* 265 N.Y.S.2d 566, 569-70 (1965) ("where the agreement, representations or conduct of a defendant have caused a plaintiff to delay suit on a known cause of action until the statute of limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use by the defendant of the statute as a defense."); *Arbutina v. Bahuleyan*, 428 N.Y.S.2d 99, 100 (1980) ("Plaintiff need not prove that defendant is guilty of actual fraud or intent to deceive. If defendant's conduct was calculated to mislead

and plaintiff relied upon it, that is enough, and the estoppel is imposed to prevent him from obtaining an unconscionable advantage.").

Savur's conduct was calculated to mislead and I relied upon it. As long as I had reason to believe that my injury would be remedied based on Savur's assurance that case could still be reopened and dismissed in the interest of justice, I justly postponed the commencement of suit.

The DA defendants do not deny that they continue to suppress the metadata of the 1200 unlawful surveillance images. My claims are thus more than timely.

## IV.   THE DA DEFENDANTS SHOULD NOT BE IMMUNE FROM SUIT

Prosecutorial immunity is highly undesirable because it leads to injustice being done.  As Judge Block of the Eastern District of New York wrote in the case of Jabbar Collins: "the withholding of evidence or the introduction of illegally seized evidence at trial are … truly 'deplorable' intentional acts." Concluding that "the time has come to create some level of accountability," Judge Block argued that the veil of immunity should be "judicially or legislatively lifted," that state bars and courts enforce ethical canons against prosecutors and that prosecutors who intentionally withhold *Brady* material be "prosecuted for obstruction of justice." Insofar as the declaratory judgment sub B of the Amended Complaint against Vance, Savur, Launay, and Schott is barred by prosecutorial immunity, I seek an order declaring the City of New York's conduct unconstitutional. *See* Decl., ¶2.

## V.   I HAVE PLAUSIBLY ALLEGED A BRADY VIOLATION

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *See Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (*en banc*) (quotation omitted).

The evidence is favorable to me because it is both exculpatory and impeaching. The evidence shows that Buiter and I were in a consensual relationship through at least April 6, 2011. *See* AC, ¶24-28. The accusatory instrument of August 5, 2013, alleges that the conduct complained of occurred from November 7, 2009, until July 1, 2013. [2] The *Brady* material shows, amongst others, that I am innocent of the crimes I was charged with at the very least until April 6, 2011. *Id.* The evidence thus goes to my guilt, innocence, or punishment. *See Brady*, 373 U.S. at 87.

The defendants disingenuously allege that I was or should have been aware of the existence of the unlawful surveillance images as the criminal complaint of July 1, 2013, stated that I sent Buiter "naked pictures." At the time, I only knew that Buiter falsely accused me of sending him naked pictures. The criminal complaint was rife with false accusations. Buiter also falsely accused me of sending his children emails but the criminal file does not contain a single email to his children.

Moreover, Buiter dropped the allegation that I sent him "naked pictures" in the information. As the information superseded (i.e., completely replaced) the criminal complaint, the accusation that I sent Buiter "naked pictures" no longer existed as of August 5, 2013.[3] Hence, I was not nor should have been aware of the unlawful surveillance images in the criminal file. *See* AC, ¶70. The images were thus suppressed within the meaning of *Brady. See Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001).

"*Brady* material that is not 'disclos[ed] in sufficient time to afford the defense an opportunity for use' may be deemed suppressed within the meaning of the *Brady* doctrine." *See United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008). To be produced in time, the DA defendants should have produced the *Brady* material during the plea discussions in February 2014.

---

[2]   The defendants falsely claim that the information does not allege that the emails that Buiter received from November 2009 were unwanted. *See* defendants' brief, at 3. The last paragraph of the superseding information clearly states that "defendant's actions caused me severe annoyance and alarm." Because the last paragraph is a separate paragraph, it refers to all the factual allegations in the superseding information.

[3]   The defendants falsely claim that I acknowledged in the motion to dismiss of October 13, 2013, that I sent Buiter nude photos. *See* defendants' brief, at 3. The motion says nothing of the kind.

It is settled law that "a [ ] plea that was "knowing" and "intelligent" may be vulnerable to challenge if it was entered without knowledge of material evidence withheld by the prosecution." *See Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). "The Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead [ ]; the defendant is entitled to make that decision with full awareness of favorable [exculpatory and impeachment] evidence known to the Government." *See United States v. Persico*, 164 F.3d 796, 804–05 (2d Cir.1999).

"The government's obligation to make such disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead [ ]. The defendant is entitled to make that decision with full awareness of favorable material evidence known to the government." *See United States v. Avellino*,136 F.3d 249, 255 (2d Cir.1998).

Prejudice is measured by the materiality of the evidence to guilt or punishment. *See Brady*, at 87; *see also Poventud*, at 134. The scope of a defendant's *Brady*-based constitutional right is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial. "Materiality" means that the evidence must have a reasonable probability of affecting the outcome. *See Poventud v. City of New York*, at 121.

The evidence is material because I would never have accepted the ACD if I had known that I was the victim of the felony crime of Unlawful Surveillance in the Second Degree pursuant to New York Penal Law § 250.45 (1,250 counts). *See AC, ¶33.*[4, 5] My quest to be returned to the position of criminal defendant suffices to prove that the evidence is material within the meaning of *Poventud.*

---

[4]    No person can be forced to accept an ACD.

[5]    The defendants falsely claim that the materiality requirement is not met because the criminal court judge noted that the superseding information made "no mention of [the 1,250 photographs]". *See* defendants' brief, p. 23. Materiality within the meaning of *Poventud* does not hinge on the question whether the accusatory instrument makes mention of the *Brady* evidence or the charges are based on the *Brady* evidence. As a rule, *Brady* evidence is not mentioned in the accusatory instrument nor are the charges based on it.

## VI.      I HAVE  PLAUSIBLY ALLEGED A § 1983 MONELL CLAIM

I have plausibly alleged a *Monell* claim as (a) there is an underlying constitutional violation; (b) I allege a practice or custom sufficient to establish municipal liability, and (c) I plead sufficient specific facts to make the allegations plausible. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### (A) There is an underlying constitutional violation

As argued above, the Amended Complaint states facts sufficient to plausibly allege a constitutional deprivation, i.e. a *Brady* violation. To wit, the evidence at issue was favorable to me, the DA defendants suppressed the evidence, and prejudice ensued. Hence, there is an underlying constitutional violation to succeed on my *Monell* claim.

### (B) I plausibly allege a practice or custom sufficient to establish municipal liability

A municipality is subject to liability under § 1983 when an official policy, custom, or practice contributes to a constitutional deprivation. *Monell*, 436 U.S. at 694. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury, [  ] the government as an entity is responsible under § 1983." *Id.*

A municipality is subject to liability under § 1983 when an official policy, custom, or practice contributes to a constitutional deprivation. *Id.* A plaintiff can satisfy the policy, practice, or custom element by alleging:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for established municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015).

I plausibly allege the second, third, and fourth prong of *Walker*. *Id.*

### 2) I plausibly allege an action by a government official that caused the constitutional violation

First, I allege that Vance was involved, in his final decision-making authority, from the very beginning in the actions taken or decisions made by the other DA defendants. *See* AC, ¶¶68, 73. In support of my allegation, I allege that my case was highly publicized, and the complaining witness was a big-ticket Wall Street banker. *Id.* Moreover, upon my release from Rikers on July 4, 2013, the correction officers told me that they had received specific orders from the Manhattan District Attorney's Office to discharge me quickly. It took 30 minutes to discharge me whereas it normally takes many hours. S*ee* Decl., ¶3. Schott nor Launay nor Savur has the authority to give specific orders to Rikers personnel without the prior authorization of Vance. Hence, Vance gave that order, which shows his personal involvement in my case. *Id.* Therefore, I plead sufficient facts in support of my allegation that Vance was personally involved with my case other than assigning an ADA to handle the case under *Back* to render my allegation plausible under *Ashcroft v. Iqbal. See Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004).

Second, the Final Report on Wrongful Convictions of the New York Bar Association, which was adopted mere months before Vance was elected into office, specifically proposed that prosecutors put in place appropriate internal procedures for preventing *Brady* violations. *See* Ex. O at 9. As it is inconceivable that Vance did not know the Final Report on Wrongful Convictions, I allege upon information and belief that Vance decided not to put in place appropriate internal procedures for preventing *Brady* violations. *See* Decl., ¶4. Vance's failure to implement the proposals in the Final Report on Wrongful Convictions caused the constitutional violation in my case. Hence, I do allege Vance's personal involvement in the *Brady* violation under *Back*. *Id.*

11

Supervisory liability must be imposed because Vance (a) had actual or constructive notice of unconstitutional practices and (b) demonstrated 'gross negligence' or 'deliberate indifference' by failing to put in place appropriate internal procedures for preventing *Brady* violations following the Final Report on Wrongful Convictions. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) quoting *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir. 1983).

### 3) I plausibly allege a widespread pattern of prosecutorial misconduct

"*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).

The Amended Complaint cites the Final Report on Wrongful Convictions of the New York Bar Association, which was published on April 4, 2009. Research reports may be used to bolster *Monell* claims if those reports are of relatively recent vintage and are sufficiently connected to the specific facts of the case. *See Gomez v. City of New York*, 15-CV-7524 (JPO) (S.D.N.Y. Aug. 29, 2017). At the time of my arrest, the Final Report on Wrongful Convictions of the New York Bar Association was only 4 years old and thus of relatively recent vintage. *Id.* It concludes that the suppression of *Brady* evidence is the leading cause of wrongful convictions in New York. *See* Ex. O. As I allege a *Brady* violation, the Final Report on Wrongful Convictions is sufficiently connected to the specific facts of my case to bolster my *Monell* claim under *Gomez v. City of New York*.

Defendants' argument that the other *Brady* cases don't concern the suppression of photos and are thus not connected to the specific facts of my case is too silly for words. A *Brady* violation is a *Brady* violation, whether the prosecution suppresses audio tapes, surveillance videos, or photos.

12

In the Amended Complaint, I cite four cases of *Brady* violations by Vance's office: *People v. Williams*, 7 N.Y.3d 15 (2006)*; People v. Colon*, 13 N.Y.3d 343 (2009); *People v. Gantt*, 13 A.D.3d 204 (1st Dept., 2004); *People v. Mees*, No. 2013NY050589 (2013). *See* AC, ¶65 *et seq.*

In the Declaration, I cite an additional nine cases of *Brady* violations by Vance's office: *People v. McGhee*, Slip Op. 9116 (1st Dept., 2019); *People v. Desselle*, 86 N.Y.S.3d 887 (1st Dept., 2018); *People v. McCutheon*, 946 N.Y.S.2d 570 (1st Dept., 2012); *People v. Ulerio*, 27 N.Y.S.3d 558 (1st Dept., 2016); *People v. Sinha*, 19 N.Y.3d 932 (N.Y. 2012); *People v. Ortiz*, 85 A.D.3d 588 (1st Dept., 2011); *People v. Peque*, 3 N.E.3d 617 (N.Y. 2013); *People v. Montgomery*, 69 N.Y.S.3d 601 (1st Dept., 2018); *People v. Pierides et al.*, Index No. 732/18 (Sup. Ct. New York Cty, 2018). *See* Decl., ¶5.

On February 5, 2020, Manhattan Supreme Court Justice Obus dismissed the bribery charges against Kyriacos Pierides, citing "staggering" series of *Brady* violations by Vance's office. *See* Ex. P, at 14. The staggering series of *Brady* violations affect at least seven cases prosecuted by Vance's office. *See* Ex Q, at 2. While the ADA responsible for the violations left the Manhattan District Attorney's Office in January, her departure must be understood in the context of Vance fighting off calls for his own resignation over his handling of the cases of Harvey Weinstein and Jeffrey Epstein. *Id.*, at 3.

Rather than pointing to a "single" incident, I cite 19 cases of *Brady* violations emanating from the Manhattan District Attorney's Office. These *Brady* violations are more than enough to show a widespread pattern of prosecutorial misconduct, amounting to a custom or policy and imposing liability under *Monell. See Hayes v. Perotta*, 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010), *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

### 4) I plausibly plead a "failure to train" claim

If city policymakers had cared a whiff about the constitutional rights of criminal defendants in New York City, they would have properly trained and supervised law enforcement officials right after the publication of the Final Report on Wrongful Convictions of the New York Bar Association on April 4, 2009, to prevent further abuses. *See Case v. City of N.Y.*, 233 F. Supp. 3d 372 (S.D.N.Y. 2017). The defendants allege nothing of the kind. Instead, defendants resort to boilerplate language to argue that my allegations are conclusory and speculative. They are not.

The Final Report on Wrongful Convictions of the New York Bar Association specifically proposed that law enforcement officials be trained and supervised in the application of the *Brady* rule. *See* Ex. O, at 9. I allege that city policymakers failed to implement the proposals included in the Final Report on Wrongful Convictions of the New York Bar Association. *See* Decl., ¶6.

City policymakers' failure to train and supervise law enforcement officials in the application of the *Brady* rule after the publication of the Final Report on Wrongful Convictions of the New York Bar Association evidences a `deliberate indifference' to the rights of its inhabitants. Such a shortcoming constitutes a city `policy or custom' that is actionable under § 1983. *See Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007). While `deliberate indifference' is a stringent standard of fault, the Final Report on Wrongful Convictions of the New York Bar Association suffices to prove that city policymakers disregarded a known or obvious consequence of their (in)action. *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).

I succeed on a "deliberate indifference" theory under *Conninck* as (i) the Final Report on Wrongful Convictions of the New York Bar Association put city policymakers on actual or constructive notice that the omission in their training program caused city employees to violate citizens' constitutional rights by suppressing *Brady* evidence, and notwithstanding such notice, (ii) the policymakers chose to retain the [deficient] program. *Id.*

I have sufficiently established a "pattern of similar constitutional violations by the City's untrained employees" by citing dozens of cases of *Brady* violations in New York City both before and after 2009. *Id.* As city policymakers were since 2009 on notice that their course of training was lacking in respect to *Brady* violations, decisionmakers have shown "deliberate indifference" by retaining a deficient training program that caused the violations of my constitutional rights. *Id.*

The defendants' reliance on *Dwares* is misplaced. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). The Supreme Court held that there is no heightened pleading requirement for claims of municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 167-68 (1993). Also, I do allege sufficient facts to show that a failure to train caused the deprivation of my constitutional rights.

The committee that authored the Final Report on Wrongful Convictions, consisting of New York State's top judges, prosecutors, defense counsels, legal scholars, and experts in the field of criminal justice, clearly believed that specific training and supervision could prevent *Brady* violations. *See* Ex. O. Therefore, city policymakers' failure to train law enforcement personnel caused the *Brady* violation in my case. *See Dwares*, at 100.

The failure of city policymakers to train and supervise law enforcement officials in the application of the *Brady* rule following the publication of the Final Report on Wrongful Convictions of the New York Bar Association on April 4, 2009, caused DA defendants' failure to disclose the unlawful surveillance images in my case in 2013, depriving me of my constitutional rights. *See Green v. City of New York*, 359 F. App'x 197 (2d Cir. 2009) at 65, 81 (quoting *Amnesty Am. v. Town, of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)).

## VII. DEFENDANTS' ATTEMPT TO RECAST MY CLAIMS AS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS IS IMPROPER

Opposing counsels disingenuously suggest that the constitutional violation in my case is ineffective assistance of counsel rather than a failure to disclose *Brady* evidence. In the state court proceedings, I have always made clear that this case concerns first and foremost a *Brady* violation. However, post-conviction relief pursuant to CPL 440.10(1)(h) relief is not available because the ACD is not a conviction under state law. Writ of error *coram nobis* relief is also not available for a *Brady* violation, only for ineffective assistance of counsel.

As limited by state law, I eventually sought relief for ineffective assistance of counsel. My counsel's failure to move the lower court to vacate the ACD before it expired must be seen in the context of Savur's assurance that we could come back if we had more evidence and that my case could still be reopened and dismissed in the interest of justice after the ACD had expired. My counsel clearly did not think that Savur would lie straight to his face either.

## CONCLUSION

For the reasons cited above and in the pleadings, I respectfully request that the Court denies defendants' motion.

Dated: June 18, 2020
         Amsterdam, The Netherlands

Respectfully submitted,

*Heleen Mees s/*
_____
Dr. Heleen Mees
Plaintiff *Pro Se*