UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELEEN MEES,

                Plaintiff,

-against-

CITY OF NEW YORK, MANHATTAN DISTRICT ATTORNEY'S OFFICE, CYRUS VANCE, JR., NITIN SAVUR, JEANINE LAUNAY, SAMANTHA SCHOTT,

                Defendants.

19 Civ. 7346 (AJN)(KNF)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO DISMISS THE AMENDED COMPLAINT**

CYRUS R. VANCE, JR.
District Attorney of New York County
One Hogan Place
New York, New York 10013
(212) 335-9000
*Counsel for the DA defendants*

Elizabeth N. Krasnow
Assistant District Attorney

JAMES E. JOHNSON
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 356-2384
*Attorney for the defendant City of New York*

William T. Gosling
Assistant Corporation Counsel

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………………..1

ARGUMENT………………………………………………………………………………………..1

    I. Plaintiff lacks standing to seek a declaration…………………………………………..1

    II. The declaration that plaintiff seeks is not cognizable under §1983 and is barred by the *Rooker-Feldman* doctrine……………………………………………………………………….2

    III. Any §1983 claim based on an alleged *Brady* violation is untimely………………………3

    IV. The DA defendants are immune from suit…………………………………………….4

    V. Plaintiff has not plausibly alleged a *Brady* violation……………………………………5

    VI. Plaintiff has not plausibly alleged a §1983 *Monell* claim agains the City………………….5

        A. Plaintif fails to allege an underlying constitutional violation……………………..5

        B. Plaintiff fails to allege a practice or custom suggestive of municipal liability……..5

            1. Plaintiff has not alleged a formal policy endorsed by the City……………6

            2. Plaintiff fails to allege plausible facts suggesting that DA Vance caused any alleged constitutional violation…………………………………………..6

            3. Plaintiff does not allege a widespread custom sufficient to state a municipal liability claim……………………………………………………………..8

            4. Plaintiff does not adequately plead a failure to train claim………………..9

CONCLUSION……………………………………………………………………………..10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anti-Monopoly, Inc., v. Hasbro, Inc.*, 958 F. Supp. 895 (S.D.N.Y. 1997) ...................................... 6

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................................................. 8, 9-10

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ...................................................................... 2

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ............................................. 3

*Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009) ............................................................................... 3

*Hunt-Watts v. Nassau Health Care Corp.*, 2014 U.S. Dist. LEXIS 116728 (E.D.N.Y. Aug. 21, 2014) ............................................................................................................................ 6

*Isaac v. City of New York*, 2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6, 2018) ..................... 8

*Langdell v. Marcoux*, 2009 U.S. Dist. LEXIS 26200 (D. Vt. Mar. 30, 2009) ............................. 2, 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 2

*Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989) .................................................................. 7

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ............................................. passim

*Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, 2003 U.S. Dist. LEXIS 9193 (S.D.N.Y. June 2, 2003) ................................................................................................................... 1

*Peterec v. City of New York*, 2015 U.S. Dist. LEXIS 28504 (S.D.N.Y. Mar. 6, 2015) .................. 8

*Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004) ........................................................................ 2

*Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014) .................................................................. 2

*Walker v. City of New York*, 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015) ......... passim

*Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) ....................................................................... 1

*Yanez v. City of New York*, 29 F. Supp. 2d 100 (E.D.N.Y. 1998) ................................................. 8

## STATE CASES

*People v. Desselle*, 167 A.D.3d 418 (1st Dept. 2018) .................................................................... 9

*People v. Peque*, 22 N.Y.3d 168 (2013) ......................................................................................... 9

*People v. Ulerio*, 137 A.D.3d 639 (1st Dept. 2011) ....................................................................... 9

**INTRODUCTION**

In her opposition papers, plaintiff fails to raise any argument or allegations to suggest that the amended complaint contains cognizable, timely, or viable claims. In response to defendants' argument about the availability of a federal declaration "vacat[ing]" a disposition entered in state court, plaintiff simply cites the fact that the amended complaint also contains a damages claim. Because each cause of action must be independently viable, the addition of a damages claim is irrelevant to defendants' argument. Plaintiff's responses to our other arguments about the various immunity defenses that apply to the DA defendants and the timeliness and merit of her civil *Brady* claim are non-existent or inconsistent. The inconsistencies exist both internally, within the confines of her opposition brief, as well as in relation to the allegations in the amended complaint and facts reflected in contemporaneous records appended thereto. Finally, with respect to her *Monell* claim pled against the City, plaintiff has not plausibly alleged the existence of an underlying constitution violation—let alone the existence of a municipal custom or policy that caused the alleged violation. For these reasons, as well as the reasons set forth in defendants' moving brief, the amended complaint should be dismissed in its entirety, with prejudice.

**ARGUMENT**

**I.    Plaintiff lacks standing to seek a declaration**

A plaintiff lacks standing to seek a declaration that derives exclusively from past events, as plaintiff does here. "[D]eclaratory relief is intended to operate prospectively;" its purpose is to enable parties to adjudicate claims *before* either side suffers damages. *Nat'l Union Fire Ins. Co. v. Int'l Wire Group, Inc.*, 2003 U.S. Dist. LEXIS 9193, at *15 (S.D.N.Y. June 2, 2003); *see also Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (declaratory relief is inappropriate for past actions because all damages already have accrued). Accordingly, there is "no basis for declaratory relief where only past acts are involved." *Nat'l Union Fire Ins. Co.*, *supra*, *15; Def. Br. 13 (collecting cases). Plaintiff argues that her claim for

1

damages creates a live case-or-controversy in relation to her claim for a declaration "vacating" the ACD entered in Criminal Court in March 2014. Pl. Br. 3-4; AC at ¶¶64-66. That is incorrect: standing must exist independently for each form of relief sought. Def. Br. 13, citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "A claim for declaratory relief cannot rely upon past injury alone, and [plaintiff's] claim are premised upon a single series of events that took place in [2014]. Therefore, the only legitimate relief being sought in the [amended] complaint is damages." *Langdell v. Marcoux*, 2009 U.S. Dist. LEXIS 26200, *6-7 (D. Vt. Mar. 30, 2009).[1]

## II.     The declaration that plaintiff seeks is not cognizable under §1983 and is barred by the *Rooker-Feldman* doctrine

A declaration "vacating" the ACD is precisely the type of relief that the Second Circuit found in *Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014), is not cognizable under 42 U.S. § 1983, *see* Def. Br. 14-15, and nothing in plaintiff's opposition brief suggests otherwise. In response to defendants' argument that her claim for declaratory relief is also barred by the *Rooker-Feldman* doctrine, plaintiff argues that an "ACD is a favorable disposition" and "no state court judgment was rendered" in her case. Pl. Br. 4-5. Neither premise is correct. An ACD is not favorable; it is a "bargained-for-dismissal." *Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004). "Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." *Id.* Plaintiff lost in state court upon the entry of the ACD with its conditions of counseling sessions and a full and final order of protection in favor of Buiter, and lost again when her motions to vacate or reopen the ACD were denied. *See* Exs. J, K, and L. Moreover, the entry of the ACD is not the only state court judgment at issue: plaintiff's request for a declaration vacating the ACD is, in effect, an appeal not just from the

---

[1] To the extent plaintiff alleges ongoing injury in the form of the loss of her livelihood and psychological ramifications, the "injury" requirement in standing doctrine is not damages, but rather, the legal claim itself—in other words, the ongoing "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

disposition entered in Criminal Court in March 2014, but from the subsequent orders denying her motions that similarly sought to "undo" that result. *Id.* Indeed, had plaintiff's state court appeal been successful, it would have produced the same result sought here: vacatur of the ACD and reinstatement of the prosecution. Pl. Br. 4. Thus, it is thus plain that plaintiff has "repaired to federal court to undo [a state court] judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (quotation omitted).[2]

### III.     Any §1983 claim based on an alleged *Brady* violation is untimely

Any §1983 claim arising from an alleged *Brady* violation is untimely because plaintiff knew as early as October 2014 that Buiter had provided the DA's Office with the photos that she alleges Buiter took without her knowledge. Plaintiff admits as much on the first page of her brief: "When <u>I found out on October 13, 2014, that Buiter had used more than a thousand unlawful surveillance images to incite my arrest and prosecution</u>, my attorneys immediately contacted [the DA's Office] to demand that the pending charges be dropped and the unlawful surveillance images investigated." Pl. Br. 1 (emphasis added). Not only is plaintiff's brief internally inconsistent as to what was known at the time, her position cannot be squared with her counsel's contemporaneous letters, which are appended to the amended complaint. *See* Ex. B ("Buiter has advised us that he provided these records to you to support his accusations of harassment"). The record is clear that by October 2014 plaintiff possessed copies of the photos—which Buiter had appended to his motion to dismiss the state court defamation suit—and thus knew of their alleged exculpatory nature and impeachment value while the charges against her remained pending. AC ¶18. Although it is similarly clear from the allegations in the amended complaint that plaintiff and her counsel were aware that Buiter had provided the photos to

---

[2] To the extent plaintiff relies on *Green v. Mattingly*, 585 F.3d 97 (2d Cir. 2009), to suggest otherwise, defendants respectfully refer the Court to fn.9 of their moving brief, which explains why *Green* does not apply here.

3

the DA's Office, *see* AC ¶19 (alleging that plaintiff's attorneys "alerted" ADA Schott in October 2014 that the prosecution "had suppressed material exculpatory evidence" in the form of the photos), that fact was doubly-confirmed in December 2015 through the production of the FOIL response, which plaintiff alleges contained the photos. Pl. Br. 5. As this lawsuit was not filed until August 2019, it is untimely.

Plaintiff's argument regarding equitable tolling is unavailing. Whether or not ADA Savur told plaintiff's counsel in November 2014 that the criminal prosecution could be reopened is irrelevant to the issue of whether she had a viable civil *Brady* claim—which is the only "legitimate relief" sought in the amended complaint. *Langdell*, *supra*. A free-standing claim for a declaration to "vacate" the ACD does not exist, nor, as argued in defendants' motion and reiterated above, is such a claim cognizable under §1983. Plaintiff does not allege that the events of November 2014 dissuaded her from filing a civil *Brady* claim; instead, she alleges that she was dissuaded from "mov[ing] to vacate the ACD before it expired," AC ¶33—a form of relief that is not available through a collateral suit filed in federal court. Equitable tolling cannot be based on a claim that was not viable in the first instance. In any event, the amended complaint alleges that plaintiff's counsel at the time had a *second* meeting with ADA Savur, in February 2015, at which time he allegedly "refused" to dismiss the charges against her or to "produce any of the unlawful surveillance images [provided by Buiter]," and instead instructed counsel to submit a FOIL request to obtain the photos. AC ¶¶20, 21. It is thus clear that ADA Savur did not conceal the existence of the photos from plaintiff or her counsel; he simply disagreed with their position that the photos had the value that plaintiff attributed to them, or warranted a different disposition for the case.

### IV. The DA defendants are immune from suit

Plaintiff offers no meaningful response to the argument that her claims for damages and equitable relief against the DA defendants in their individual and official capacities are barred by

4

Eleventh Amendment immunity and absolute prosecutorial immunity. These defenses are the crux of the motion with respect to the DA defendants; should the Court agree with our argument on this point, the DA defendants should be dismissed from this lawsuit entirely.

**V.        Plaintiff has not plausibly alleged a *Brady* violation**

For the same reason that plaintiff's civil *Brady* claim is untimely, it fails on the merits: the photos were not "suppressed." Plaintiff and her counsel independently obtained copies of the same images prior to the expiration period of the ACD, and the allegations in the amended complaint and counsel's contemporaneous letters make clear that they were aware that Buiter had provided the images to the DA's Office in support of his allegations of stalking and harassment. Indeed, their knowledge in this regard prompted a series of letters and meetings in and at which plaintiff and her attorneys expressed their position that the existence of the photos warranted dismissal of the charges and an investigation into Buiter's alleged culpability. Plaintiff was thus, at the time, in a position to argue—as she does in the amended complaint and her opposition brief—that she and Buiter were in a consensual relationship through April 2011, based on timing of her purchase of the dress depicted in the photos, and that the photos did not constitute evidence of her criminality, but instead, Buiter's. AC ¶¶18, 24; Pl. Br. 8.

**VI.       Plaintiff has not plausibly alleged a §1983 *Monell* claim against the City**

> **A.       *Plaintiff fails to allege an underlying constitutional violation***

Plaintiff makes the conclusory argument that an underlying constitutional violation exists. Pl. Br. 10. But because plaintiff has failed to plead any plausible underlying constitutional violation, the municipal liability claim must be dismissed.

> **B.       *Plaintiff fails to allege a practice or custom suggestive of municipal liability***

Plaintiff argues that she has plausibly alleged a practice or custom sufficient to establish municipal liability under prongs of the test established in *Walker v. City of New York*, 2015 U.S. Dist.

5

LEXIS 91410 (S.D.N.Y. July 14, 2015). Pl. Br. 10-11. Plaintiff is mistaken and neither the AC nor her opposition satisfies any of the four *Walker* prongs.

### 1. Plaintiff has not alleged a formal policy endorsed by the City

While plaintiff argues that the amended complaint satisfies the second, third, and fourth prongs of the *Walker* test, Pl. Br. 11, she does not even attempt to address defendants' position that the amended complaint does not satisfy the first *Walker* prong: alleging "a formal policy which is officially endorsed by the municipality." *Walker*, *supra*, *14-15. Thus, plaintiff has abandoned the issue and the Court should determine that she has not satisfied the first *Walker* prong. *See Anti-Monopoly, Inc., v. Hasbro, Inc.*, 958 F. Supp. 895, 907 (S.D.N.Y. 1997) ("The failure to provide argument on a point at issue constitutes abandonment of the issue"); *Hunt-Watts v. Nassau Health Care Corp.*, 2014 U.S. Dist. LEXIS 116728, *11-12 (E.D.N.Y. Aug. 21, 2014) (same).

### 2. Plaintiff fails to allege plausible facts suggesting that DA Vance caused any alleged constitutional violation

Plaintiff's attempts to allege that DA Vance caused any alleged constitutional violation are unavailing. By way of example, it does not follow from plaintiff's claim that, simply because her case was "highly publicized" and the victim was a "big-ticket Wall Street banker," the District Attorney himself was involved in her prosecution. Indeed, plaintiff admits that ADAs Launay and Schott handled her criminal prosecution and that those ADAs offered her an ACD, which she accepted. AC at ¶16. Thus, by plaintiff's own allegations, DA Vance was not the prosecutor handling her criminal prosecution and she cannot show that he was personally and directly involved in any alleged constitutional violation.

Similarly unavailing is the argument that DA Vance was personally involved in the alleged constitutional violation because correction officers purportedly told plaintiff "that they had received specific orders from the Manhattan District Attorney's Office to discharge me quickly." Pl. Br. 11.

This is a drastic leap supported by an incorrect assumption. First, referring to the "Manhattan District Attorney's Office," as a whole, could refer to anyone employed by that office and does not mean that DA Vance personally ordered Mees' release. Even if one were to accept the hearsay allegation that DA Vance, in particular, called DOC personnel to direct that plaintiff be released from custody, and that he (as opposed to the Criminal Court) has the authority to direct that any inmate held by court order be released, that does not lead to the conclusion that DA Vance was personally and directly involved with the alleged, and unrelated, *Brady* violation.

Plaintiff next argues that DA Vance failed to adopt procedures based on the Final Report on Wrongful Convictions by the New York State Bar Association ("Final Report") and this purported failure "caused the constitutional violation in [her] case." Pl. Br. 11. This argument is conclusive and speculative. In a last ditch attempt, plaintiff cites *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989), to argue that supervisory liability must be imposed because DA Vance allegedly (a) had actual or constructive notice of unconstitutional practices and (b) demonstrated "gross negligence" or "deliberate indifference" by failing to adopt internal procedures for preventing *Brady* violations following the Final Report. Pl. Br. 12. But, unlike *Meriweather,* the amended complaint lacks plausible, specific facts suggesting that DA Vance had any "actual or constructive notice" of a practice of *Brady* violations within the DA's Office and failed to implement responsive procedures, and the amended complaint certainly does not set forth any facts showing DA Vance acted with gross negligence or deliberate indifference.

Accordingly, plaintiff has failed to satisfy the second *Walker* prong as she has not plausibly suggested that DA Vance was personally and directly involved with the alleged constitutional violation that is the basis of her claims.

### 3. Plaintiff does not allege a widespread custom sufficient to state a municipal liability claim

In an attempt to allege a widespread custom, plaintiff cites *Isaac v. City of New York*, 2018 U.S. Dist. LEXIS 132995, *51 (E.D.N.Y. Aug. 6, 2018), which held that "research reports may be used to bolster *Monell* claims, but only if those reports are sufficiently connected to the specific facts of the case and are of relatively recent vintage." Plaintiff argues that the Final Report bolsters her *Monell* claim since the report is "sufficiently connected" to the specific facts of this case and is "of relatively recent vintage." Pl. Br. 12-13. But the Final Report does not involve allegations of a *Brady* violation similar to the one alleged in this case, i.e., photos provided by a victim of stalking and harassment that allegedly constituted evidence of the victim's own unlawful surveillance of the defendant. *Cf. Yanez v. City of New York*, 29 F. Supp. 2d 100, 112 & n. 6 (E.D.N.Y. 1998) (dismissing plaintiff's *Monell* claim when the connection between the "report" and the "events in the instant case are too remote"); *Peterec v. City of New York*, 2015 U.S. Dist. LEXIS 28504, *18-19 (S.D.N.Y. Mar. 6, 2015) (granting motion to dismiss because "plaintiff's references to unconnected, irrelevant litigation are patently inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to plaintiff's alleged violation").

None of cases cited in the amended complaint or in plaintiff's declaration submitted with her opposition are sufficiently related to the facts in this case, and thus do not suggest a custom for purposes of municipal liability. Pl. Br. 13. Under the Supreme Court's decision in *Connick v. Thompson*, a *Monell* claim based on alleged deliberate indifference to the requirements of *Brady* requires facts from which it can be plausibly inferred that a municipality failed to take action in response to "similar" *Brady* violations. 562 U.S. 51, 62 (2011). In order to be relevant, *Connick* requires that the prior violations be of the same "sort" as the one alleged by the plaintiff. For example, in *Connick*, although the plaintiff alleged several *Brady* reversals, those cases did not involve "blood evidence" or "a crime lab report," which was the allegation in his case. *Id.* at 62-63. Further, some of the cases cited in the Final Report

8

do not even address a *Brady* violation. *See People v. Desselle*, 167 A.D.3d 418 (1st Dept. 2018); *People v. Ulerio*, 137 A.D.3d 639 (1st Dept. 2011); *People v. Peque*, 22 N.Y.3d 168 (2013). As plaintiff has not articulated a plausible custom on behalf of the City, she fails to satisfy the third *Walker* prong.

### 4. Plaintiff does not adequately plead a failure to train claim

In an effort to satisfy the fourth *Walker* prong, plaintiff argues that the DA's Office was deliberately indifferent for failing to adopt the Final Report. Pl. Br. 14. Yet again, plaintiff's reliance on the report is misplaced. Nowhere in that report does it conclude that the Manhattan DA's Office failed to train ADAs on *Brady*, or recommend that the Manhattan DA's Office implement different training guidelines for ADAs with respect to *Brady*. While plaintiff argues that the report "specifically proposed that law enforcement officials be trained and supervised in the application of the *Brady* rule," the "law enforcement" referenced in the report refers to police officers and other law enforcement officials, not prosecutors. This is evidenced in the report where the author distinguishes prosecutors from law enforcement. *See* Ex. O at 15, 39. Further, plaintiff's argument that "city policymakers failed to implement the proposals included in the Final Report," Pl. Br. 14, is mere conjecture. The report does not suggest that *Brady* training at the Manhattan DA's Office fails to exist. Instead, the report explains that training for prosecutors with respect to disclosing *Brady* evidence does exists and is conducted by the "District Attorney's Association and the Prosecutors Training Institute." Ex. O at 38-39. Moreover, the report explains that prosecutors can obtain continuing legal education credits by attending training programs in place for *Brady*. *Id.*

Similarly misplaced is plaintiff's reliance on *Connick*; in fact, as explained above, that decision undermines her position. The speculation and conclusory allegations in the amended complaint are insufficient to suggest deliberate indifference on behalf of the City under *Connick*, which instructs that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequences of his action." 563 U.S. at 60-61. This standard is

perhaps most stringent where, as here, the municipal employees at issue are prosecutors because, as acknowledged in both *Connick* and the Final Report, prosecutors—as licensed attorneys—are already "trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limitations, and exercise legal judgment." *Id.* at 64. Although inaction by a municipality may sometimes result in deliberate indifference, plaintiff does not allege plausible facts sufficient to suggest that the City failed to train its ADAs with respect to *Brady* or that such training at the Manhattan DA's Office is inadequate. Plaintiff has not sufficiently alleged that a failure by policy-makers to properly train or supervise subordinates exists to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

Having failed to establish any of the *Walker* prongs, plaintiff's municipal liability claim fails as a matter of law and should be dismissed.

## CONCLUSION

For the above reasons, defendants respectfully request that the Court enter an order pursuant to Rule 12(b)(1) and (b)(6) dismissing the amended complaint as pled against the City and the DA defendants, with prejudice.

Dated: Stamford, Connecticut
       July 9, 2020

Dated: New York, New York
       July 9, 2020

CYRUS R. VANCE, JR.
District Attorney of New York County
One Hogan Place
New York, New York 10013
(212) 335-9000
*Counsel for the District Attorney's Office*

JAMES E. JOHNSON
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
(212) 356-2384
*Counsel for the City of New York*

By:   <u>Elizabeth Krasnow /s</u>
      Elizabeth N. Krasnow
      Assistant District Attorney

By:   <u>William T. Gosling /s</u>
      William T. Gosling
      Assistant Corporation Counsel