UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/25/2021

Heleen Mees,

      Plaintiff,

   –v–

City of New York, *et al.*,

      Defendants.

19-cv-7346 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

  Charged with misdemeanor stalking and harassment, Dr. Heleen Mees accepted an "adjournment in contemplation of dismissal"—a type of bargained-for disposition available in criminal proceedings in New York courts. Dr. Mees now alleges that the prosecutors in her state-court case failed to disclose exculpatory evidence. She asks this Court to declare their conduct unlawful, vacate the criminal disposition, and award damages against the prosecutors and the City of New York. Whatever the merits of Dr. Mees's allegations, the Court lacks the power to grant her the relief she seeks. It thus dismisses her claims.

**I. Background**

  For purposes of this motion, the Court takes as true all factual allegations in Dr. Mees Verified First Amended Complaint ("FAC"), Dkt. No. 45, and draws all reasonable inferences in her favor.

  Dr. Mees is an economics professor, columnist, and author who resides in the Netherlands. FAC ¶ 6. For about four years, she maintained a romantic relationship with Willem H. Buiter, a prominent economist in New York. *Id.* ¶¶ 13–14, 24. On July 1, 2013,

police arrested Dr. Mees in New York City after Buiter accused her of harassing him by sending him nude pictures. *Id.* ¶ 14. She spent four days detained at Rikers Island and lost her job as a result of the highly publicized arrest. *Id.* ¶ 15.

In February 2014, Dr. Mees agreed to accept an adjournment in contemplation of dismissal under New York Criminal Procedural Law § 170.55. An adjournment in contemplation of dismissal—or "ACD"—is a bargained-for disposition available for misdemeanor charges in New York courts. Within six months or a year of the adjournment (depending on the type of case), the court may restore the criminal case to its calendar; if it does not do so, the charges are automatically dismissed and sealed. N.Y.C.P.L. § 170.55(2). "Section 170.55 creates a procedure not unlike probation, designed as a special break, given usually to first offenders. The six-month hiatus between adjournment and dismissal is especially significant: It is a period of observation, during which time the defendant's behavior may be observed to determine whether the prosecutor's acquiescence in the adjournment was justified." *Singleton v. City of New York*, 632 F.2d 185, 194 (2d Cir. 1980) (cleaned up).

Dr. Mees formally accepted the ACD on March 10, 2014. FAC, Ex. J, at *3. As part of Dr. Mees's ACD, the court entered a protective order requiring her to attend mandatory counseling sessions as a condition of the dismissal. FAC, Ex. K, at *16; *see* N.Y.C.P.L. § 170.55(3). The ACD expired without any party seeking to restore the case to the court's calendar, and the case was dismissed and sealed on March 9, 2015. FAC, Ex. J, at *3.

According to the complaint, Buiter's allegations were false. FAC ¶ 14. Dr. Mees filed a civil complaint for defamation against Buiter in June 2014. *Id.* ¶ 18. Buiter filed a motion to dismiss, which included four PDF files with 1,251 nude photographs of Dr. Mees. *Id.* Dr. Mees later obtained those photographs in JPEG format through an application for discovery for use in

2

a foreign proceeding. *Id.* ¶ 22; *see Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015). Forensic analysis concluded that Dr. Mees did not take those photos (and thus could not have sent them to Buiter to harass him); instead, Buiter surreptitiously took them during Skype video calls with Dr. Mees. FAC ¶¶ 18, 23.

Following Buiter's motion to dismiss in the defamation case—but before Dr. Mees had been able to obtain or review JPEG versions of the photos—Dr. Mees's attorneys demanded the prosecutors in her case turn over the nude photos they had in their possession. *Id.* ¶¶ 19–21. They refused to do so. Defense counsel also requested, in light of the questions raised by the nude photos about the truth of Buiter's allegations, that the prosecutors dismiss the case in the interest of justice rather than proceeding with the ACD. *Id.* ¶¶ 19–20. Again, they refused. However, Executive Assistant District Attorney Nitin Savur told defense counsel that Dr. Mees could seek to have the case reopened if she obtained additional evidence. *Id.* ¶ 20. Dr. Mees ultimately learned through a Freedom of Information Law request in December 2015 that the prosecutors' criminal file contained about 1200 photos of Dr. Mees that Buiter appears to have surreptitiously taken. *Id.* ¶ 21. Dr. Mees would not have accepted the ACD had she known of these photos. *Id.* ¶ 33.

In May 2016, counsel for Dr. Mees sent a letter to District Attorney Cyrus Vance demanding dismissal of the charges against Dr. Mees based on forensic analysis of the photos. *Id.* ¶ 34. Executive Assistant District Attorney Audrey Moore declined to do so. *Id.* ¶ 35. Dr. Mees then pursued several attempts beginning on January 24, 2018, to unseal her case and vacate the ACD in state court. *Id.* ¶¶ 40–43. Those courts ruled that there was no mechanism under New York law to unseal and reopen a case dismissed pursuant to an ACD. FAC, Ex. I–L.

Dr. Mees filed this suit pro se on August 6, 2019. Dkt. No. 1. Her amended complaint asserts claims under 42 U.S.C. § 1983 against the City of New York and four prosecutors, including Vance and Savur.[1] The gravamen of her claims is that her ACD was obtained in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and should therefore be set aside. She also seeks damages against all defendants.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a complaint states a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Id.* A defendant may raise the affirmative defense that a claim is time-barred in a motion to dismiss if that defense appears on the face of the complaint. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

"Federal courts 'are courts of limited jurisdiction whose power is limited strictly.'" *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 64 (2d Cir. 2012) (quoting *Ahmed v. Holder*, 624 F.3d 150, 154 (2d Cir. 2010). "A party seeking a declaratory

---

[1] Dr. Mees also named the District Attorney's Office as a defendant, but it is not a suable entity. *See Woodward v. Off. of Dist. Atty.*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010). She does not defend her claims against the District Attorney's Office in her briefing and so the Court deems them abandoned.

4

judgment bears the burden of proving that the district court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993)).  A district court must dismiss an action at any time if it determines it lacks subject matter jurisdiction.  Fed. R. Civ. P. § 12(h)(3); *see Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).

**III.  Discussion**

    **A.  The Court Lacks Jurisdiction to Overturn a State-Court Judgment**

Principles of judicial federalism counsel strongly against a federal district court's intrusion into state judicial process.  While a state-court prosecution is ongoing, both the Anti-Injunction Act and the Constitution generally forbid interference by federal courts.  *Younger v. Harris*, 401 U.S. 37, 54 (1971); *see* 28 U.S.C.A. § 2283.  Once a state court has reached final judgment, the Full Faith and Credit Clause and its implementing statute require federal courts to respect the result.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81–82 (1984).  The Supreme Court has also held—apart from rules of preclusion—that federal district courts lack jurisdiction to overturn state-court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).  Under 28 U.S.C. § 1257, which implements the Supreme Court's appellate jurisdiction under Article III, that power is reserved to the Supreme Court alone.  *Id.* (citing *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644, n.3 (2002)).

The Supreme Court's opinions in *Rooker* and *Feldman* "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  The

5

doctrine applies when four requirements are met: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (cleaned up). The doctrine may occasionally ensnare cases where plaintiffs do not ask for vacatur of a state-court judgment. *See, e.g.*, *Hoblock*, 422 F.3d at 88. However, the "core" of the doctrine are those "cases of the kind from which the doctrine acquired its name," *id.* at 85— that is, those where plaintiffs seek "to have a judgment of a state court, adverse to the federal court plaintiffs, 'declared null and void.'" *Exxon*, 544 U.S. at 283 (quoting *Rooker*, 263 U.S. at 414).

Dr. Mees's claims for relief directed to the state-court judgment fall within the core of the *Rooker–Feldman* doctrine, and so the Court lacks jurisdiction. She does not ask only for collateral relief. She requests "an order vacating the order" of the state court, which she says would restore her "to the position of criminal defendant." FAC at 21; Opp. Br., Dkt. No. 74, at 4. This Court lacks the power to vacate a state-court order and compel the state court to reopen her case. Appellate review of that decision was available only by direct appeal to the higher courts of New York and, by certiorari, to the United States Supreme Court. *See Exxon*, 544 U.S. at 292.

Closer review of the four factors set forth in *Green* and *Hoblock* leads to the same result. The second, third, and fourth factors are not reasonably debatable. Dr. Mees seeks redress for the state-court judgment itself, not for independent actions by a third party (otherwise, as

discussed below, her claims are untimely)—that is the reason she requests vacatur. *See Hoblock*, 422 F.3d at 88. She seeks review and rejection of the state court's order not by implication, but by direct order. And there is no dispute that all relevant state proceedings ended long before she filed her federal suit.

Dr. Mees nonetheless contends that although she asks this Court to review and reverse a state-court order, *Rooker–Feldman* does not apply because she was not a "state-court loser." *Green*, 585 F.3d at 102. The Court concludes that Dr. Mees lost in state court for purposes of her claims here. To begin with, the operative inquiry under the first procedural *Rooker–Feldman* factor is whether the plaintiff was a party to the state-court case whose result they now seek to challenge, not whether the plaintiff won or lost in some abstract sense. *See Hoblock*, 422 F.3d at 89. What's more, Dr. Mees has argued (and the Court agrees) that the ACD was an unfavorable disposition because the state court imposed mandatory counseling sessions as a condition of dismissal. *See* FAC, Ex. K, at *16; *see also Singleton*, 632 F.2d at 194 (describing an ACD as analogous to probation).

The Second Circuit's opinion in *Green* supports this conclusion. There, a New York family court ordered a mother's child removed from her home under a temporary order. *Green*, 585 F.3d at 100. The family court ordered the child returned home four days later after a hearing. *Id.* Neglect proceedings terminated under an ACD, and the mother then sought damages for the four days during which her child was removed from the home. *Id.* The Second Circuit held that *Rooker–Feldman* did not bar her claim because she did not lose in state court, and thus did not seek review and rejection of a state-court order—to the contrary, the state court itself held, following a hearing, that the child should not have been removed. *Id.* 102. The plaintiff in *Green* did not seek vacatur of any state-court order. Her claim was permissible

7

precisely because she had already "secured the reversal of the one form of interlocutory relief entered against her." *Id.*  Dr. Mees won no such relief from the state courts, which have repeatedly denied her requests to vacate her ACD.  *See* FAC, Ex. J, K, L.  The *Rooker–Feldman* doctrine bars her from relitigating those claims here.

The Court thus concludes that it lacks jurisdiction to vacate the state-court order in Dr. Mees's criminal case and restore that case to the calendar of a New York court.  Article III and its implementing statutes carefully divide the responsibilities of the state courts, lower federal courts, and Supreme Court.  *Rooker* and *Feldman* forbid this Court from departing from that structure to review a state-court judgment.

### B. Dr. Mees's Remaining Claims Are Time-Barred and Cannot Succeed

Not all of Dr. Mees's claims seek review and rejection of a state-court order.  The *Rooker–Feldman* doctrine does not deprive this Court of jurisdiction over Dr. Mees's claims for damages and equitable relief against the prosecutors and City.  These claims seek a remedy for the prosecutors' *Brady* violations, not for injuries flowing from the ACD.  *See Hoblock*, 422 F.3d at 88; *see, e.g.*, *Green*, 585 F.3d at 100 (allowing damages claim to proceed).  The Court has jurisdiction to hear these claims.  The Court nonetheless concludes that these claims are time-barred and cannot succeed.

The limitations period for a claim under § 1983 depends on state law, and in New York is three years.  *Okure v. Owens*, 488 U.S. 235, 251 (1989).  As a matter of federal law, a § 1983 claim accrues "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (cleaned up).  State tolling law applies to claims under § 1983 so long as that law is not inconsistent with federal law.  *Bd. of Regents of Univ. of N. Y. v. Tomanio*, 446

8

U.S. 478, 486 (1980). The parties disagree both about when Dr. Mees's claims accrued and about whether equitable tolling applies.

Drawing all reasonable inferences in Dr. Mees's favor, the allegations in her complaint compel the conclusion that her *Brady* claims accrued no later than October 2014. Dr. Mees reviewed the photos Buiter attached to his motion to dismiss the defamation case on October 13, 2014. FAC ¶ 18. She alleges that on October 20, 2014, her attorneys "sent a letter to Assistant District Attorney Samantha Schott to alert her to the fact that the Manhattan District Attorney's office had suppressed material exculpatory evidence that goes to [Dr. Mees's] innocence or guilt." *Id.* ¶ 19. In the October 20, 2014 letter, which Dr. Mees attaches as an exhibit to her complaint, her attorneys wrote that "Buiter has advised us that he provided these records to you to support his accusations of harassment." FAC, Ex. B, at *2. Thus, she was aware—and had evidence—that the prosecutors held exculpatory evidence in October 2014. Indeed, a central prong of her complaint is that the prosecutors refused to dismiss her case when she confronted them with the photos the following month. FAC ¶ 20.

Dr. Mees filed her federal suit on August 6, 2019. Thus, since her claims accrued no later than October 20, 2014, her claims are untimely unless the limitations period was tolled. Dr. Mees contends that the limitations period was tolled for two reasons. First, because ADA Savur told her that the case could be reopened if Dr. Mees found more evidence. Second, because she initially moved in state court to unseal her case in January 2018. Accepting all Dr. Mees's factual allegations and drawing all reasonable inferences in her favor, neither basis supports tolling.

As the Court explained, it has jurisdiction only over Dr. Mees's *Brady* claims. It lacks jurisdiction to review the ACD. Both of these asserted grounds for tolling might be relevant for

9

claims challenging the ACD. But neither supports tolling her *Brady* claims for damages and injunctive relief against the prosecutors and the City. Although Savur's statement that the ACD could be reopened later could have induced Dr. Mees to delay moving to dismiss her criminal case, it is wholly irrelevant to any civil claim for damages. Similarly, neither Dr. Mees's January 24, 2018 motion to vacate her ACD nor any of her subsequent state-court petitions asserted civil claims against the prosecutors or City for *Brady* violations. *See* FAC, Ex. I–L. They sought only to obtain vacatur of the ACD—a remedy that is unavailable here. *Id.* "No section of [New York's law tolling claims during the pendency of an action] provides, however, that the time for filing a cause of action is tolled during the period in which a litigant pursues a related, but independent cause of action." *Bd. of Regents*, 446 U.S. at 486. Thus, the Court concludes that these factors—which should have had no bearing on any delay in a suit seeking damages or injunctive relief for Dr. Mees's *Brady* claims—do not support tolling the limitations period for those claims.

The Court also observes that Dr. Mees's claims would face further insurmountable obstacles on the merits even if timely. Prosecutors are absolutely immune "from § 1983 liability for virtually all acts, regardless of motivation" within the scope of their duties. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994). Although the Court appreciates—and sees merit—in Dr. Mees's arguments that prosecutorial immunity should be curtailed, this Court is bound to follow precedent. Dr. Mees does not contest that precedent dictates dismissal of the damages claims against the prosecutors. The allegations against the City also do not approach those necessary to plausibly support claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). They consist solely of one conclusory statement that the City failed to train its prosecutors and the intimation, further developed in Dr. Mees's briefing, that because her case was high profile

10

the decision to withhold evidence must have been made by the District Attorney himself. *See* FAC ¶ 57; Opp. Br. at 11. Thus, the Court would be forced to grant the motion to dismiss even if the claims were timely.

    **C.**    **Leave to Amend is Unwarranted**

Under this Court's individual rules, plaintiffs have an opportunity following a motion to dismiss to amend their complaint to cure any defects made apparent by the motion or to rest on their existing pleadings and oppose the motion. The Court notified Dr. Mees of this rule, and she amended her complaint. *See* Dkt. Nos. 27, 45. Dr. Mees has not sought leave to amend her complaint again. She has therefore waived any right to further amend to correct defects made apparent by the motions to dismiss. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*, 797 F.3d 160, 190 (2d Cir. 2015) (leaving "unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility"). The Court also finds that amendment would be futile because of the jurisdictional and state-of-limitations defects in this case. The Court therefore will not grant further leave to amend.

**Conclusion**

For the foregoing reasons, the Court concludes that it lacks jurisdiction over Dr. Mees's claims directed to her state-court judgment and that her remaining claims are untimely. It thus GRANTS the motion to dismiss (Dkt. No. 58). The Clerk of Court is respectfully directed to enter judgment and close the case.

Dr. Mees also filed a letter motion in which she states that she requested the Defendants refer to her by her honorific in their briefing and that they refused to do so. Dkt. No. 76. She

asks the Court to order the Defendants to re-file their briefs with this correction. Because the Court has resolved the motion to dismiss, it DENIES the request.

The Court finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Dr. Mees and to note the mailing on the public docket.

This resolves Docket Numbers 58 and 76.

SO ORDERED.

Dated: March 25, 2021
      New York, New York

                                       ALISON J. NATHAN
                                   United States District Judge